HARTLEY LLP
Jason S. Hartley (SBN# 192514)
Jason M. Lindner (SBN# 211451)
101 West Broadway, Suite 820
San Diego, CA 92101
Telephone: (619) 400-5822
Facsimile: (619) 400-5832
*hartley@hartleyllp.com*
*lindner@hartleyllp.com*

*Attorneys for Plaintiffs and the Putative Class and Collective*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA O'DELL, HANNAH BAILEY, and HOLLY ZIMMERMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AYA HEALTHCARE, INC.,<br><br>Defendant. | Case No. **'22CV1151 BEN BLM**<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs Laura O'Dell, Hannah Bailey, and Holly Zimmerman ("Plaintiffs") bring this class and collective action complaint against Aya Healthcare, Inc. ("Aya" or "Defendant"), on behalf of themselves and all others similarly situated. Plaintiffs make the following allegations based upon personal knowledge as to their own actions and upon information and belief as to all other matters.

## NATURE OF THE ACTION

1.     Travel nurses serve a valuable role in our nation's healthcare system. Hospitals, clinics, and other healthcare facilities rely on skilled travel employees to

fill short-term nursing employment gaps on a temporary basis. To fill these roles, healthcare facilities utilize intermediary staffing agencies to employ the travelers, negotiate pay rates, and schedule assignments. Traveling nurses have played an especially critical role since the start of the COVID-19 pandemic, as many facilities experienced severe staffing shortages that required temporary assistance in order to continue providing quality healthcare.

2. But a troubling practice has emerged. Aya is offering contracts to travel nurses with a fixed-term assignment at an agreed-upon pay rate. After the nurse accepts the position and starts the assignment, Aya makes a "take-it-or-leave-it" demand to accept less pay or be terminated. Of course, most nurses have no choice but continue working the assignment at the lower rate because they have no reasonable alternatives for comparable employment: they have already incurred travel expenses, secured short-term housing, and uprooted their lives to accept the assignment.

3. Aya's "bait-and-switch" practices are so widespread that it appears to be a core tenet of the company's business model. Hundreds if not thousands of nurses employed by Aya across the country have reported experiencing mid-contract pay reductions after starting an assignment with Aya, with many reporting that Aya reduced their pay multiple times within the same assignment or slashed their pay by 50% or more than what was originally promised. Many are afraid to speak out against the practice because they believe Aya will blacklist them from Aya's growing network of healthcare providers where it serves as the primary staffing agency.

4. Aya is knowingly engaging in these "bait-and-switch" practices to maintain the significant profit margins it had become accustomed to during the COVID-19 pandemic and to gain a competitive advantage that will allow it to become the exclusive staffing agency for more hospitals and healthcare providers.

This lawsuit seeks recovery for the pay losses Plaintiffs and other travelers experienced as the result of Aya's predatory business practices.

5.    Additionally, Aya is underpaying its travel employees for overtime hours worked. By law, employers must pay their employees one-and-a-half times their "regular rate" for all hours worked over forty in a workweek. But in determining this "regular rate", Aya has only included its employees' direct hourly cash wage among other items, and has excluded, in violation of the law, other parts of its employees' compensation packages, thereby resulting in an artificially low rate of pay for overtime hours worked.

**JURISDICTION, VENUE, AND PARTIES**

6.    Plaintiff Laura O'Dell is a citizen of Indiana who accepted a travel assignment from Aya to work at a healthcare facility located in California. Plaintiff O'Dell's written Consent to Join this case is attached and incorporated as **Exhibit 1**.

7.    Plaintiff Hannah Bailey is a citizen of Georgia who accepted a travel assignment from Aya to work at a healthcare facility located in Virginia. Plaintiff Bailey's written Consent to Join this case is attached and incorporated as **Exhibit 2**.

8.    Plaintiff Holly Zimmerman is a citizen of Florida who accepted a travel assignment from Aya to work at a healthcare facility located in New Jersey. Plaintiff Zimmerman's written Consent to Join this case is attached and incorporated as **Exhibit 3**.

9.    Aya Healthcare, Inc. is a Delaware corporation with a principal place of business located at 5930 Cornerstone Court West, Suite 300, San Diego, CA 92121.

10.    This Court has subject matter jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a proposed class action in which: (1) there are at least 100 class members; (2) the combined claims of

class members exceed $5,000,000.00, exclusive of interest, attorneys' fees, and costs; and (3) Aya and at least one class member are citizens of different states.

11.    This Court has personal jurisdiction over Aya as to all claims asserted by Plaintiffs herein because Aya is "at home" in California and is therefore subject to general jurisdiction in this forum.

12.    This Court also has subject matter jurisdiction over the FLSA claims of Plaintiffs and all others similarly situated pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, and over all related state law claims pursuant to 28 U.S.C. § 1367.

13.    Venue is proper in this District under 28 U.S.C. § 1391(b) because this is the District in which Aya resides and a substantial part of the conduct at issue in this case occurred in this District.

## STATEMENT OF FACTS

### A. Aya's Bait-and-Switch Tactics and Improper Pay Rate Reductions

14.    On its company website, Aya holds itself out as "an employer our team members are proud to work for" and declares that "we strive to provide the best service in the industry to our clinicians and clients."[1] Aya's CEO has also stated that he "believes that treating clinicians well directly and positively impacts patient care. If our clinicians are happy and well taken care of, that will trickle down to patients and their families", and that "[b]ecause of this belief, we work hard to create exceptional experiences for our clinicians, clients and corporate employees while revolutionizing the healthcare workforce industry."[2] The company also trumpets its role in the "fight against COVID-19", claiming that it has "filled tens of thousands

---

[1] https://www.ayahealthcare.com/reviews

[2] https://topworkplaces.com/company/aya-healthcare/sandiego/

of crisis positions and continue to place high-quality clinicians, ensuring life-saving patient care is available when and where it's needed most."[3]

15.    To fill temporary positions, healthcare facilities in need of temporary employment offer staffing agencies like Aya a "bill rate" which is a total amount they are willing to pay the staffing agency for every hour worked by a traveling nurse. The staffing agency then deducts costs, overhead, and profit margin from the bill rate and advertises the hourly rate it is willing to pay a traveling nurse to accept the facility assignment.

16.    Aya utilizes form employment agreements for its traveling employees that include the following material terms: the facility name and address along with the start and end date for the assignment, the traveler's hourly pay rate, with on-call and charge adjustments, and scheduled hours per week, as well as the traveler's daily meals, incidentals, and housing stipends.

17.    After accepting a travel assignment, Aya knows that travel employees must move to the location of the facility, secure short-term housing, and incur other travel and housing related costs at their own expense in order to comply with their obligations under the agreement.

**Plaintiff Laura O'Dell**

18.    On or before January 25, 2022, Aya made an employment offer to Plaintiff Laura O'Dell which included a fixed-term travel assignment in Santa Rosa, California.

19.    The employment agreement offered Laura O'Dell a position at Sutter Santa Rosa Regional Hospital in Santa Rosa, California from February 8, 2022, until May 8, 2022, with the following compensation package: a base hourly pay rate of $51.00 with a minimum of 36 scheduled hours per week; an overtime hourly pay

---

[3] *Id.*

rate of $76.50; a holiday hourly pay rate of $140.00; an hourly call-back rate of $76.50; a daily meals and incidentals stipend of $71.00; and a daily housing stipend of $157.00.

20.    In reliance on the foregoing material terms, Laura O'Dell accepted Aya's offer of employment by executing Aya's form employment agreement on January 25, 2022. To comply with her duties under the agreement, Laura O'Dell incurred expenses traveling away from her home in Indiana to Santa Rosa, California, secured short-term living arrangements, and forwent other employment opportunities.

21.    On or before March 23, 2022, about seven weeks through her assignment, Aya made Laura O'Dell a "take-it-or-leave-it" demand to accept less pay or be terminated. Specifically, Aya demanded that she accept a more than 50% reduction of her base hourly pay rate from $51.00 to $25.00; a reduction in her overtime hourly pay rate from $76.50 to $37.50; a reduction in her holiday hourly pay rate from $140.00 to $95.00; and a reduction in her call-back hourly pay rate from $76.50 to $37.50 in order to complete the previously agreed-upon assignment.

22.    Having already spent substantial time and money securing the assignment and taking the steps necessary to ensure compliance with her obligations under the agreement, and unable to find comparable employment in such a short period of time, Laura O'Dell had no real choice but to continue working the assignment at the lower rate.

23.    Plaintiff Laura O'Dell completed her assignment in accordance with her duties. As a result, Laura O'Dell suffered monetary losses. At a minimum, the difference between the value of the original agreement and the unilateral pay reduction was more than $5,000.

**Plaintiff Hannah Bailey**

22.     On or before March 2, 2022, Aya made an employment offer to Plaintiff Hannah Bailey which included a fixed-term travel assignment in Fredericksburg, Virginia.

24.     The employment agreement offered Hannah Bailey a position at Mary Washington Hospital in Fredericksburg, Virginia from March 29, 2022, until June 25, 2022, with the following compensation package: a base hourly pay rate of $85.86 with a minimum of 36 scheduled hours per week; an overtime hourly pay rate of $155.50; a holiday hourly pay rate of $155.50; an hourly call-back rate of $155.50; a daily meals and incidentals stipend of $59.00; and a daily housing stipend of $96.00.

25.     In reliance on the foregoing material terms, Hannah Bailey accepted Aya's offer of employment by executing Aya's form employment agreement on March 2, 2022. To comply with her duties under the agreement, Hannah Bailey traveled away from her home in Georgia to Fredericksburg, Virginia, largely at her own expense, secured short-term living arrangements, and forwent other employment opportunities.

26.     On May 5, 2022, approximately 5 weeks through her assignment, Aya made Hannah Bailey a "take-it-or-leave-it" demand to accept less pay or be terminated. Specifically, Aya demanded that she accept a more than 40% reduction of her base hourly pay rate, from $85.86 to $50.85; and a nearly 51% reduction in her overtime hourly pay rate, holiday hourly pay rate, and call-back hourly pay rate from $155.50 to $76.28 in order to complete the previously agreed-upon assignment.

27.     When Hannah Bailey questioned her Aya recruiter about this shocking development, she received the following response: "Rates changing mid-contract is challenging but I'm here to navigate these waters with you. Rest assured we have thousands of jobs in our system and have anticipated rates and job orders normalized.

I'll work closely with you to plan for this current contract and all future contracts. You're in good hands with Aya! As always, I am your advocate and I'm here to support you through these changes."

28.     Hannah Bailey refused to sign the revised agreement. Nevertheless, Aya cut her pay rate anyways.

29.     On June 5, 2022, approximately six weeks into her assignment and one month after the first pay reduction, Aya reduced Hannah Bailey's base hourly pay rate again from $50.85 to $34.25 per hour. Again, Hannah Bailey did not sign an agreement purporting to "consent" to the reduction but the pay reduction was implemented regardless. In total, Hannah Bailey's base hourly pay rate was reduced more than 60% from her original contract.

30.     Having already spent substantial time and money securing the assignment and taking the steps necessary to ensure compliance with her obligations under the agreement, and unable to find comparable employment in such a short period of time, Hannah Bailey had no real choice but to continue working the assignment at the lower rate.

31.     Plaintiff Hannah Bailey completed her assignment in accordance with her duties. As a result, Hannah Bailey suffered monetary losses. At a minimum, the difference between the value of the original agreement and the unilateral pay reductions was more than $10,000.

**Plaintiff Holly Zimmerman**

32.     On or before December 22, 2021, Aya made an employment offer to Plaintiff Holly Zimmerman which included a fixed-term travel assignment in Jersey City, New Jersey.

33.     The employment agreement offered Holly Zimmerman a position at Jersey City Medical Center Rapid Response in Jersey City, New Jersey from January 18, 2022, until April 16, 2022, with the following compensation package: a base

hourly pay rate of $85.00 with a minimum of 48 scheduled hours per week; an overtime hourly pay rate of $127.50; a holiday hourly pay rate of $127.50; an hourly call-back rate of $127.50; a daily meals and incidentals stipend of $69.00; and a daily housing stipend of $147.00.

34.    In reliance on the foregoing material terms, Holly Zimmerman accepted Aya's offer of employment by executing Aya's form employment agreement on December 22, 2021. To comply with her duties under the agreement, Holly Zimmerman traveled away from her home in Florida to Jersey City, New Jersey, secured short-term living arrangements, and forwent other employment opportunities.

35.    On or before March 3, 2022, about six weeks through her assignment, Aya made Holly Zimmerman a "take-it-or-leave-it" demand to accept less pay or be terminated. Specifically, Aya demanded that she accept a nearly 35% reduction of her base hourly pay rate from $85.00 to $56.50; her overtime hourly pay rate from $127.50 to $84.75; her holiday hourly pay rate from $127.50 to $84.75; and her call-back hourly pay rate from $127.50 to $84.75 in order to complete the previously agreed-upon assignment.

36.    Having already spent substantial time and money securing the assignment and taking the steps necessary to ensure compliance with her obligations under the agreement, and unable to find comparable employment in such a short period of time, Holly Zimmerman had no real choice but to refuse the pay reduction and continue working until its effective date, at which time she was prevented from working as previously agreed.

37.    Plaintiff Holly Zimmerman completed her assignment in accordance with her duties until she was prevented from doing so and forced to return home. As a result, Holly Zimmerman suffered monetary losses including the entire value of her contract from March 20 until April 16, 2022. At a minimum, the difference

between the value of the original agreement and the unilateral pay reduction was more than $15,000.

38.     Plaintiffs are not alone. Hundreds if not thousands of traveling nurses and other healthcare workers employed by Aya have reported experiencing similar "take-it-or-leave it" pay cuts in the middle of their contracts. In fact, the practice has become so pervasive that that it appears to be a core tenet of Aya's business model. For example, when Aya must compete with other staffing agencies to fill a travel position, it advertises higher pay packages that are more likely to entice travel employees and increase its likelihood of filling the position knowing that it will never actually pay that amount after the employees begin the assignment. In other instances, Aya positions itself to be the exclusive staffing agency for hospitals and other healthcare providers by marketing its ability to successfully fill positions of need at a lower cost, a value proposition that hinges on its "bait-and-switch" business model. In certain parts of the country, like San Diego, Aya's reach is becoming so great (through use of exclusive contracts and other means) that if a travel employee refuses to complete an assignment at a reduced rate, the employee will be blacklisted from working all facilities in the region.

39.     As set forth above, Plaintiffs relied on the material terms of their agreements including: the fixed assignment term, the payment package, and the guaranteed hours or days in accepting their offers; as the assignment had to be worth foregoing other employment, relocating, and incurring the associated professional and personal costs of accepting the travel assignment. In addition, Plaintiffs relied on the fact the foregoing material terms could not be changed without additional consideration and the reasonable expectation that Aya would act in good faith and fair dealing and honor its promises or representations. Plaintiffs would not have accepted the agreement had they known that Aya would violate the terms and spirit of the agreement.

40. By making the take-it-or-leave-it demands described above, after Plaintiffs relied on Aya's representations and undertook obligations under their agreements, Aya breached its contracts with Plaintiffs—specifically the promises of employment at a specified rate of pay for a fixed-term assignment. Aya made this take-it-or-leave-it-demand in breach of the express terms of the contracts and implied duty of good faith and fair dealing.

41. There is no legal justification for Aya conduct. Even if Aya's client no longer needed as much staff or decided to reduce the bill rate, for example, nothing in the terms of the form agreement authorizes Aya to unilaterally adjust pay rates to account for new circumstances, whether foreseeable or not.

42. The "revised" agreements that Plaintiffs and other similarly situated employees were (sometimes) coerced to sign are not enforceable because an effective contract modification or accord requires the exchange of new consideration.[4] As alleged herein, there was no exchange of new consideration because Plaintiffs were compelled to undertake the same obligations for less pay. Consequently, Aya cannot relieve itself of its contractual obligations under one contract by coercing acceptance of a second contract with less favorable terms.

**B. Aya's Miscalculation of Its Employees' Regular Rate of Pay and Resulting Failure to Lawfully Pay Overtime**.

43. By law, employers must pay their employees one-and-half times their "regular rate" for all overtime hours (*i.e.*, hours over 40 in a single workweek) worked. In addition to the bait-and-switch tactics discussed above, the reduced overtime rate that Aya paid Plaintiffs failed to compensate them at 1.5 times their

---

[4] In some instances, Aya's conduct was so brazen that that it would slash employees' pay without even telling them or purporting to seek their "agreement" first. The employees would discover the pay reduction only *after* they received reduced paychecks.

regular rate of pay in violation of the Fair Labor Standards Act and state overtime statutes.

44.    As a general matter, an employee's "regular rate" is "deemed to include all remuneration for employment paid to, or on behalf of, the employee," but excludes, *inter alia*, "reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment." 29 U.S.C. § 207(e).

45.    In calculating the overtime rate paid to its employees, Aya wrongfully excluded from their regular rate various stipends and allowances paid to its employees, including a "Holiday" pay, "Charge" pay, "On Call" pay, "Call Back" pay, "Meals and Incidentals Stipend," and "Housing Stipend," even though these payments functioned as a form of compensation as part of its' employees' pay package. For instance:

a.    Prior to her rate reduction, Plaintiff Laura O'Dell was paid overtime at a rate of $76.50 per hour, or 1.5 times her base hourly pay rate of $51.00. Similarly, after her pay was reduced, she was still paid overtime at a rate of 1.5 times her new base hourly rate. Her Daily Meals & Incidentals Stipend of $71.00 and her Daily Housing Stipend of $157.00 were never included in the calculation of her regular rate;

b.    Prior to her rate reduction, Plaintiff Hannah Bailey was paid overtime at a rate of $155.50 per hour, or 1.5 times a regular rate of $103.66. Similarly, after her pay was reduced, she was still paid overtime at a rate of 1.5 times her new base hourly rate. Her Daily Meals & Incidentals Stipend of $59.00 and her Daily Housing Stipend of $96.00 were never included in the calculation of her regular rate;

c. Prior to her rate reduction, Plaintiff Holly Zimmerman was paid overtime at a rate of $127.50 per hour, or 1.5 times her base hourly pay rate of $85.00. Similarly, after her pay was reduced, she was still paid overtime at a rate of 1.5 times her new base hourly rate. Her Daily Meals & Incidentals Stipend of $69.00 and her Daily Housing Stipend of $157.00 were never included in the calculation of her regular rate.

46. Plaintiffs, and each of them, worked more than 40 hours in multiple workweeks during their contracts with Aya during which these forms of compensation were not included in their regular rate of pay in violation of federal and state law.

47. Aya's exclusion of the various pay rates, stipends, and allowances paid to its employees, including the "Holiday" pay, "Charge" pay, "On Call" pay, "Call Back" pay, "Meals and Incidentals Stipend," and "Housing Stipend" from said employees' "regular rate" in calculating overtime was wrongful and in violation of the law, in that:

a. Said payments functioned as compensation for the employees' hours of employment;

b. Said payments were tied to the number of hours worked, rather than the amount of expenses actually incurred;

c. Said payments varied with the number of hours worked per week, such that if an employee missed one or more shifts, said payments would be reduced a corresponding amount;

d. Said payments did not vary with the amount of expenses an employee actually incurred, nor were they calculated to approximate actual expenses. Employees were not required to document expenses, nor provide any attestation that he or she actually incurred a particular amount of expenses in a given period;

e. Upon information and belief, said payments were not limited to employees who were actually traveling, but instead could be received by local employees who worked proximate to their residence; and

f. Upon information and belief, employees could roll over extra shifts worked in a previous week avoid a *pro rata* reduction in said payments occasioned by having missed one or more shifts in a given week.

48. Aya classified this form of compensation as expense reimbursement to avoid paying payroll taxes on these wages and to avoid paying materially increased overtime rates, particularly given that many travel nurses are guaranteed more than 40 hours per week.

49. As a result of Aya's failure to properly calculate its employees' regular rates, Plaintiffs and other similarly situated employees were not paid for all overtime worked in accordance with the law.

50. At all times material herein, Plaintiffs and other similarly situated employees have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

51. The FLSA regulates, among other things, the payment of overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 206(a); 29 U.S.C. § 207(a)(1).

52. At all relevant times, Aya has been an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of 29 U.S.C. § 203(s)(1), and, upon information and belief, has an annual gross volume of sales made or business done of not less than $500,000.

53. During all relevant times to this action, Aya acted as the "employer" of Plaintiffs and other similarly situated employees within the meaning of the FLSA. 29 U.S.C. § 203(d).

54. During all times relevant to this action, Plaintiffs and other similarly situated employees were Aya's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

55. Pursuant to the FLSA, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek. 29 U.S.C. § 207(a).

56. Although the FLSA contains some exceptions (or exemptions) from the overtime requirements, none of those exceptions (or exemptions) applies here.

57. Plaintiffs and other similarly situated employees are victims of uniform and unlawful compensation policies.

58. Plaintiffs and other similarly situated employees are entitled to damages equal to the mandated overtime premium pay within the three (3) years preceding the filing of this Complaint, plus periods of equitable tolling, because Aya acted willfully and knew, or showed reckless disregard of whether, its conduct was prohibited by the FLSA.

59. Aya has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result, Plaintiffs and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b). Alternatively, should the Court find Aya acted in good faith or with reasonable grounds in failing to pay overtime compensation, Plaintiffs and other similarly

situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

60.     As a result of these violations of the FLSA's overtime pay provisions, compensation has been unlawfully withheld by Aya from Plaintiffs and other similarly situated employees. Accordingly, pursuant to 29 U.S.C. § 216(b), Aya is liable for the unpaid minimum wages and overtime premium pay along with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

## CLASS ACTION ALLEGATIONS

61.     Class Definitions: Plaintiffs bring this action individually and on behalf of other similarly situated individuals. Pursuant to Federal Rules of Civil Procedure 23(b)(3), 23(b)(2), and/or 23(c)(4), Plaintiffs seek certification of the foregoing classes and subclasses, defined as follows:

> The Class: All persons who entered into a travel agreement with Aya and whose total compensation was reduced before the end of the agreed upon term.

> State Wage Payment Laws Class: All persons who entered into a travel agreement with Aya to work at a facility or location in Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Massachusetts, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, or Wyoming and whose total compensation was reduced before the end of the agreed upon term.

> The California Class: All persons who entered into a travel agreement with Aya to work at a facility or location in California, or who traveled from California to an assignment in another state, and whose total compensation was reduced before the end of the agreed upon term.

<u>State Unpaid Overtime Class</u>: All persons who entered into a travel agreement with Aya to work at a facility or location in Alaska, California Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Kentucky, Michigan, Minnesota, Missouri, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, Vermont, Virginia, Washington, West Virginia, or Wisconsin who worked more than 40 hours in a workweek and whose regular rate of pay did not include the "Holiday" pay, "Charge" pay, "On Call" pay, "Call Back" pay, "Meals and Incidentals Stipend," or "Housing Stipend" (or their equivalents by any other name).

62.    Excluded from the Class are the Court and its officers, employees, and relatives; Aya and its subsidiaries, officers, and directors; and governmental entities.

63.    <u>Numerosity</u>: the Class consists of members so numerous and geographically dispersed that joinder of all members is impracticable, as Aya employs thousands of similarly situated individuals across the United States.

64.    All members of the Class are ascertainable by reference to objective criteria, as Aya has access to addresses and other contact information for Class members that can be used for notice purposes.

65.    <u>Common Questions of Law and Fact Predominate</u>: There are many questions of law and fact common to Plaintiffs and the Class, and those questions substantially predominate over any questions that may affect individual members of the Class. Common questions include:

a.    Did Aya make actionable misrepresentations or omissions?

b.    Were Aya's promises, representations, or omissions false or misleading?

c.    Did Aya intend for Plaintiffs and the Class to rely on its promises, representations, or omissions?

d.    Should Aya have known that such promises or representations would cause justifiable or reasonable reliance?

e.  Did Aya owe a duty to disclose to Plaintiffs and the Class to not conceal the truth?

f.  Did Aya's conduct in reducing compensation packages breach the travel assignment agreements?

g.  Did Aya act in bad faith?

h.  Did Aya engage in fraudulent concealment?

i.  Did Aya's conduct violate state wage payment statutes?

j.  Did Aya fail to include certain forms of non-discretionary compensation in Plaintiffs and class members' regular rate of pay?

k.  Did Aya's failure to include forms of compensation such as "Holiday" pay, "Charge" pay, "On Call" pay, "Call Back" pay, "Meals and Incidentals Stipend," and "Housing Stipend" in calculating its employees' regular rates result in said employees not being adequately compensated for overtime work?

66.  <u>Typicality</u>: Plaintiffs' claims are typical of other members of the Class because all of the claims arise from the same course of conduct by Aya, the same fraudulent business practice, and are based on the same legal theories.

67.  <u>Adequacy of Representation</u>: Plaintiffs are adequate class representatives because their interests do not conflict with the interests of the Class members whom they seek to represent. Plaintiffs have retained counsel with substantial experience in prosecuting complex and class action litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of Class members and have the financial resources to do so. The Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

68.  <u>Superiority of Class Action</u>: Class treatment is superior to individual treatment, as it will permit a large number of similarly situated persons to prosecute their respective class claims in a single forum, simultaneously, efficiently, and without unnecessary duplication of evidence, effort, and expense that numerous individual actions would produce.

69.     To the extent not all issues or claims, including the amount of damages, can be resolved on a class-wide basis, Plaintiffs invoke Federal Rule of Civil Procedure 23(c)(4), reserving the right to seek certification of a class action with respect to particular issues, and Federal Rule of Civil Procedure 23(c)(5), reserving the right to divide the class into subclasses.

## COLLECTIVE ACTION ALLEGATIONS

70.     Plaintiffs bring their tenth cause of action, the FLSA claim arising out of Aya's overtime violations, as an "opt in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and the following collective action class:

> All persons currently or formerly employed by Aya who worked more than forty (40) hours in a workweek and whose regular rate of pay did not include the "Holiday" pay, "Charge" pay, "On Call" pay, "Call Back" pay, "Meals and Incidentals Stipend," or "Housing Stipend" (or their equivalents by any other name) at any time from three (3) years prior to the filing of the initial Class and Collective Action Complaint to the present.

Plaintiffs' FLSA claim may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b).

71.     Plaintiffs, individually and on behalf of all others similarly situated, seek relief on a collective basis challenging Aya's above-described FLSA violations. The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined from Aya's records, and potential opt-in plaintiffs may easily and quickly be notified of the pendency of this action.

## FIRST CAUSE OF ACTION: BREACH OF CONTRACT

### *On Behalf of Plaintiffs and the Class*

72.     Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the  foregoing allegations with the same force and effect as if set forth herein.

73.   Aya offered Plaintiffs and class members employment by certain written terms in the agreement.

74.   As consideration for their agreement, Aya agreed, among other things, to employ, pay, and provide certain benefits to Plaintiffs and class members under their respective agreements; and Plaintiffs and class members agreed, among other things, to provide undertake certain obligations.

75.   The parties mutually assented to the agreement.

76.   Plaintiffs and class members accepted Aya's offer of employment by executing the agreement.

77.   Plaintiffs and class members did all or substantially all of the significant things that the agreement required.

78.   After the parties entered the agreement, Aya materially breached the agreement by failing to pay Plaintiffs and class members the amounts they promised.

79.   In making take-or-leave-it pay reductions under circumstances where Aya knew Plaintiffs and class members would have no choice but to continue working despite the unilateral pay reduction, Aya also deliberately breached the implied covenant of good faith and fair dealing inherent in the parties' agreements.

80.   Before the breaches, all conditions precedent had been fulfilled.

81.   Plaintiffs' and class members' damages would not have occurred but for Aya's breaches and Aya's breaches proximately caused Plaintiffs' and class members' damages.

82.   Following the breaches, Plaintiffs and class members made all reasonable efforts to mitigate resulting damages.

83.   Plaintiffs' and class members' damages include the difference in compensation agreed to under the agreement and the actual compensation Plaintiffs and class members received, as well as the costs, expenses, and losses Plaintiffs and

class members incurred as a natural and foreseeable result or consequence of Aya's breaches.

### SECOND CAUSE OF ACTION: PROMISSORY ESTOPPEL

*On Behalf of Plaintiffs and the Class*

84.    Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein.

85.    Aya made clear and unambiguous promises to Plaintiffs and class members regarding their pay rates that it knew or should have known would induce Plaintiffs and class members to enter into employment agreements with Aya and incur certain costs and expenses associated with relocation and housing.

86.    Aya did not intend to perform its promises when those promises were made and in fact did not perform them.

87.    Plaintiffs and class members reasonably relied on such promises in entering into employment agreements, relocating, and incurring certain expenses, costs, and losses.

88.    Aya's promises in fact induced Plaintiffs and class members to enter into employment agreements, relocate, and incur certain expenses, costs, and losses. Aya knew and intended for Plaintiffs and class members to rely on these promises, and Plaintiffs' reliance on these promises was foreseeable on the part of Aya.

89.    It would be unjust to allow Aya to profit from making such inducing promises and not fulfilling them.

90.    This injustice can only be avoided by forcing Aya to fulfill these promises.

## **THIRD CAUSE OF ACTION: QUASI-CONTRACT**

### *On Behalf of Plaintiffs and the Class*

91.     Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein.

92.     Plaintiffs and class members conferred a benefit upon Aya by filling open healthcare positions that permitted Aya to profit as an intermediary staffing agency.

93.     Aya appreciated and had knowledge of the benefit Plaintiffs and class members conferred on it.

94.     Aya, by making take-it-or-leave-it demands to reduce Plaintiffs' and class members' pay rates or total compensation in the middle of their contractual terms, kept money that was contractually promised to Plaintiffs and class members and, therefore received, accepted and retained benefits under such circumstances as to make it inequitable and unjust for Aya to retain such benefits without payment of its value.

95.     Under the circumstances, Aya should in justice and fairness be compelled to give its benefit to Plaintiffs and class members.

## **FOURTH CAUSE OF ACTION: FRAUDULENT INDUCEMENT**

### *On Behalf of Plaintiffs and the Class*

96.     Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein.

97.     Aya made material representations of fact as true to Plaintiffs and class members about their pay rates and total compensation that were false or misleading.

98.     At the time it made such representations, Aya knew that its representations were false and it would pay Plaintiffs and class members less than the amounts it promised if it so determined.

99.    Aya's misrepresentations were made with the purpose to defraud Plaintiffs and class members.

100.    At the time it made such representations, Aya knew Plaintiffs and class members would reasonably and justifiably rely on its representations in entering into their travel assignment agreements, relocating, and incurring certain expenses, costs, and losses.

101.    Aya had a duty to disclose its representations were false or misleading because Aya had superior knowledge that was not reasonably available to Plaintiffs and class members, Plaintiffs and class members were entitled to know given the relation of trust and confidence between them, and disclosure was necessary to prevent Plaintiffs and class members from being misled or mistaken.

102.    Plaintiffs and class members did not know Aya's representations regarding their pay rate were false or misleading and had a right to rely on and reasonably relied on them in entering into travel assignment agreements, relocating, and incurring certain expenses, costs, and losses.

103.    As a result of and in reliance upon Aya's fraudulent inducement, Plaintiffs and class members sustained damages as described herein.

**FIFTH CAUSE OF ACTION: FRAUDULENT CONCEALMENT**

*On Behalf of Plaintiffs and the Class*

104.    Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein.

105.    As their prospective employer, Aya owed Plaintiffs and class members a duty to disclose the fact that Aya would unilaterally reduce their pay rates or total compensation after they accepted a position that required relocating, and incurring certain expenses, costs, and losses.

106.   Aya intended to defraud or deceive Plaintiffs and class members and intentionally failed to disclose the fact that Aya would unilaterally reduce their pay rates or total compensation after they accepted a position that required relocating and incurring certain expenses, costs, and losses.

107.   Plaintiffs and the class members did not know that Aya would unilaterally reduce their pay rates or total compensation after they accepted a position that required relocating and incurring certain expenses, costs, and losses.

108.   Plaintiffs and class members justifiably relied on Aya's fraudulent concealment by entering into employment agreements, relocating, and incurring certain expenses, costs, and losses.

109.   As a result of Aya's fraudulent inducement, Plaintiffs and class members sustained damages as described herein, which were substantially caused by Aya's concealment.

## **SIXTH CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION**

### *On Behalf of Plaintiffs and the Class*

110.   Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein.

111.   As their prospective employer, Aya owed Plaintiffs and class members a duty or reasonable care to not make false or misleading statements regarding their employment.

112.   Aya knew, should have known, or recklessly disregarded that its representations to Plaintiffs and class members regarding their pay rates and overall compensation reflected in the travel assignment agreements were false or misleading, because it was reasonably foreseeable that Aya would make a "take-it-or-leave-it" demand to accept less compensation or be terminated after acceptance of the initial offer.

113.   Aya intended for Plaintiffs and class members to act on the false or misleading statements.

114.   Aya knew or should have known that Plaintiffs and class members would rely on the false or misleading statements.

115.   Aya breached its duty of reasonable care by making the false or misleading statements of past or existing material facts which it did not have reasonable grounds to believe to be true, and thus failed to act as a reasonably prudent person would have under the same or similar circumstances by not making those statements.

116.   Plaintiffs and class members were ignorant of the truth with respect to Aya's employment practices, and justifiably relied on Aya's negligent misrepresentations by entering into employment agreements, relocating, and incurring certain expenses, costs, and losses.

117.   As a result of Aya's negligent misrepresentations, Plaintiffs and class members sustained damages as described herein, which were substantially caused by Aya's misrepresentations.

## SEVENTH CAUSE OF ACTION: VIOLATION OF STATE WAGE PAYMENT LAWS

*On Behalf of Plaintiffs and the State Wage Payment Laws Class*

118.   Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein.

119.   At all times relevant to this action, Plaintiffs and class members were employed by Aya.

120.   At all times relevant to this action, Plaintiffs and the class members performed work for Aya.

121. Aya owes Plaintiffs and the class members wages under the terms of the employment.

122. Aya's course of conduct described above violated wage payment laws of the states listed herein by failing to pay all wages due or owed to Plaintiffs and other similarly situated employees for which the company had agreed to pay. Aya's failure to pay all wages due and owing to its employees is in violation of the following state wage payment laws, each of whose relevant terms are materially equivalent such that a common violation may be established on a class-wide basis:

      a. Alaska – Alaska Stat. § 23.05.140 *et seq.*;

      b. Arizona – Ariz. Rev. Stat. Ann. § 23–351 *et seq.*;

      c. Arkansas – Ark. Code Ann. § 11–4–401 *et seq.*;

      d. California – Cal. Lab. Code § 204 *et seq.*;

      e. Colorado – Colo. Rev. Stat. § 8–4–101 *et seq.*;

      f. Connecticut – Conn. Gen. Stat. Ann. § 31–71b *et seq.*;

      g. Delaware – Del. Code Ann. tit. 19, § 1102 *et seq.*;

      h. Florida – Fla. Stat. Ann. § 448.08 *et seq.*;

      i. Georgia – Ga. Code Ann. § 34–7–2 *et seq.*; Ga. Code Ann. § 51-1-6 *et seq.*;

      j. Hawaii – Haw. Rev. Stat. § 388–2 *et seq.*;

      k. Idaho – Idaho Code Ann. § 45–608 *et seq.*;

      l. Illinois – 820 ILCS 115/1 *et seq.*;

      m. Indiana – Ind. Code Ann. § 22–2–5–1 *et seq.*;

      n. Iowa – Iowa Code Ann. § 91A.3 *et seq.*;

      o. Kansas – Kan. Stat. Ann. § 44–314 *et seq.*;

      p. Kentucky – Ky. Rev. Stat. Ann. § 337.020 *et seq.*;

      q. Louisiana – La. Rev. Stat. Ann. § 23:631 *et seq.*;

      r. Massachusetts – Mass. Gen. Laws Ann. ch. 149, § 148 *et seq.*;

s.  Minnesota – Minn. Stat. Ann. § 181.101 *et seq.*;

t.  Mississippi – Miss. Code. Ann. § 71–1–35 *et seq.*;

u.  Missouri – Mo. Ann. Stat. § 290.080 *et seq.*;

v.  Montana – Mont. Code Ann. § 39–3–204 *et seq.*;

w.  Nebraska – Neb. Rev. Stat. § 48–1230 *et seq.*;

x.  Nevada – Nev. Rev. Stat. Ann. § 608.060 *et seq.*;

y.  New Hampshire – N.H. Rev. Stat. Ann. § 275:43 *et seq.*;

z.  New Jersey – N.J. Stat. Ann. § 34:11–4.2 *et seq.*;

aa. New Mexico – N.M. Stat. Ann. § 50–4–26 *et seq.*;

bb. New York – N.Y. Lab. Law § 191 *et seq.*;

cc. North Carolina – N.C. Gen. Stat. Ann. § 95–25.6 *et seq.*;

dd. North Dakota – N.D. Cent. Code Ann. § 34-14-02 *et s–q.*;

ee. Ohio – Ohio Rev. Code Ann. § 4113.15 *et seq.*;

ff.  Oklahoma – Okla. Stat. Ann. tit. 40, § 165.2 *et seq.*;

gg. Oregon – Or. Rev. Stat. Ann. § 652.120 *et seq.*;

hh. Pennsylvania – 43 Pa. Stat. Ann. § 260.3 *et seq.*;

ii.  Rhode Island – R.I. Gen. Laws Ann. § 28–14–2.2 *et seq.*;

jj.  South Carolina – S.C. Code § 41–10–10 *et seq.*;

kk. South Dakota – S.D. Codified Laws § 60–11–1 *et seq.*;

ll.  Utah – Utah Code Ann. § 34–28–3 *et seq.*;

mm.   Vermont – Vt. Stat. Ann. tit. 21, § 342 *et seq.*;

nn. Virginia – Va. Code Ann. § 40.1–29 *et seq.*;

oo. Washington – RCW 49.48 *et seq.*;

pp. West Virginia – W. Va. Code Ann. § 21–5–3 *et seq.*;

qq. Wisconsin – Wis. Stat. Ann. § 109.03 *et seq.*; and

rr.  Wyoming – Wyo. Stat. Ann. § 27-4-101 *et seq.*

123.   Aya maintains a company–wide policy and practice of failing and refusing to pay wages due and owing to Plaintiffs and other similarly situated employees, and said policy is willful in nature and not the result of a good-faith mistake.

## EIGHTH CAUSE OF ACTION: VIOLATION OF
## CALIFORNIA LABOR CODE § 970

### *On Behalf of Plaintiff O'Dell and the California Class*

106.   Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein.

107.   California Labor Code § 970 prohibits employers from influencing or persuading an employee to relocate from one place to another for work, by means of knowingly false misrepresentations regarding, among other things, the kind, character, or existence of such work; the length of time such work will last; or the compensation therefor. Cal. Lab. Code § 970.

108.   Aya made representations to Plaintiff O'Dell and members of the California Class (collectively "Plaintiffs" for purposes of this and the following count) concerning the kind or character of the work, the length of time the work would last, or the compensation therefor.

109.   Aya's representations were false, for the reasons alleged herein.

110.   Aya knew when the representations were made that they were false.

111.   Aya intended that Plaintiffs would rely on its false representations.

112.   Plaintiffs reasonably relied on Aya's false representations and relocated for the purpose of working for Aya.

113.   As a result of Aya's misrepresentations, Plaintiffs were harmed, and their reliance on the Aya's representations was a substantial factor in causing such harm.

## NINTH CAUSE OF ACTION: VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW CAL. BUS. & PROF. CODE § 17200

### *On Behalf of Plaintiff O'Dell and the California Class*

114.    Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein.

115.    The California Unfair Competition Law prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200, *et seq.* Aya has engaged in business acts and practices that, as alleged above, constitute unfair competition in violation of Business and Professions Code section 17200.

### Unlawful

116.    Aya's unlawful conduct under the Unfair Competition Law includes, but is not limited to, violating California Labor Code § 970, and the other statutes and regulations alleged herein.

### Unfair

117.    Aya's business practices, as alleged herein, violate the "unfair" prong of the Unfair Competition Law because they resulted in Plaintiffs and members of the California Class being misled and denied pay for wages they earned and were promised pursuant to their binding employment agreements. Further, said business practices offend established public policy and are immoral, unethical, and unscrupulous or substantially injurious to employees.

118.    Any reasons, justifications, or motives that Aya may offer for the practices described herein are outweighed by the gravity of harm to the victims. The injuries suffered by Plaintiffs and the California Class are substantial and are not outweighed by any countervailing benefits to consumers or competition.

**Fraudulent**

119.    Aya's conduct, as described herein, is fraudulent because it is likely to deceive members of the public.

120.    Aya's bait-and-switch tactics were indeed calculated to deceive—and in fact did deceive—Plaintiffs and members of the California Class into accepting travel nursing assignments at a promised rate of pay, only to have that promised rate reduced after they had undertaken obligations under the agreement.

121.    Plaintiffs and members of the California Class have standing to pursue this cause of action because they suffered injury in fact and lost money as a result of Aya's misconduct described herein.

122.    Furthermore, Plaintiffs and the California Class seek restitutionary disgorgement from Aya and public injunctive relief prohibiting Aya from engaging in the unlawful, unfair, and/or fraudulent conduct alleged herein.

123.    Plaintiffs and members of the California Class seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Aya's unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

**TENTH CAUSE OF ACTION: UNPAID OVERTIME UNDER THE FLSA**

*On Behalf of Plaintiffs and the Nationwide FLSA Collective*

124.    Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein.

125.    At all times relevant to this action, Plaintiffs and other similarly situated employees (collectively "Plaintiffs" for purposes of this count) were employed by Aya.

126.   Aya violated the FLSA by failing to pay Plaintiffs for all overtime hours worked at one and one-half times the regular rate for all hours worked in excess of forty hours in a workweek.

127.   Specifically, the FLSA requires that employees are paid one and one-half times their "regular rate" of pay. The "regular hourly rate of pay of an employee is determined by dividing his or her total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109.

128.   Aya improperly reduced its employees' regular rate when calculating overtime by wrongfully excluding certain forms of compensation, including stipends and allowances.

129.   In so doing, Aya failed to properly compensate Plaintiffs for overtime worked pursuant to the FLSA.

130.   Aya is not eligible for any FLSA exemption excusing their failure to pay overtime.

131.   Plaintiffs are victims of a uniform, company-wide compensation policy.

132.   Plaintiffs are entitled to damages equal to the mandated overtime premium pay within the three years preceding their joining this action, plus periods of equitable tolling, because Aya acted willfully and knew, or showed reckless disregard of whether, its conduct was prohibited by the FLSA.

133.   Aya has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiffs are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay pursuant to 29 U.S.C. § 216(b). Alternatively, should the Court find Aya did act with good faith and

1    reasonable grounds in failing to pay overtime pay, Plaintiffs are entitled to an

2    award of prejudgment interest at the applicable legal rate.

3    **ELEVENTH CAUSE OF ACTION: VIOLATION OF**

4    **STATE OVERTIME STATUTES**

5    *On Behalf of Plaintiffs and the State Unpaid Overtime Class*

6    134.   Plaintiffs hereby repeat, reiterate, and incorporate by reference each of

7    the foregoing allegations with the same force and effect as if set forth herein.

8    135.   At all times relevant to this action, Plaintiffs and other similarly

9    situated employees were employed by Aya and worked overtime hours. Aya knew

10   or should have known that Plaintiffs and other similarly situated employees had

11   worked overtime hours.

12   136.   Aya's course of conduct described herein violated the various

13   overtime statutes of the several states listed in the subsequent paragraph by

14   improperly excluding from its employees' regular rate certain forms of

15   compensation, including stipends and allowances, thereby resulting in unpaid

16   overtime owed to Plaintiffs and other similarly situated employees.

17   137.   Aya's failure to pay overtime to its employees is in violation of the

18   following state overtime laws, each of whose relevant terms are materially

19   equivalent such that a common violation may be established on a class-wide basis:

20                    a.   Alaska – Alaska Stat. § 23.10.060 *et seq.*;

21                    b.   California – Cal. Lab. Code § 510 *et seq.* and Cal. Lab. Code § 1194

22                         *et seq.*;

23                    c.   Colorado – Colo. Rev. Stat. §§ 8–6–101 *et seq.*; 7 Colo. Code Regs

24                         § 1103–1(4) *et seq.*;

25                    d.   Connecticut – Conn. Gen. Stat. Ann. § 31–76c *et seq.*;

26                    e.   Delaware – Del. Code Ann. tit. 19, § 1102 *et seq.*;

27

28

1

2

f.  Florida – Fla. Stat. Ann. § 448.08 *et seq.*; Fla. Stat. Ann. § 488.01 *et seq.*;

3

g.  Georgia – Ga. Code Ann. § 9-3-22 *et seq.*;

4

h.  Hawaii – Haw. Rev. Stat. Ann. § 387–3 *et seq.*;

5

i.  Illinois – 820 Ill. Comp. Stat. Ann. 105/4a *et seq.*;

6

j.  Kentucky – Ky. Rev. Stat. Ann. § 337.285 *et seq.*;

7

k.  Michigan – Mich. Comp. Laws Ann. § 408.414a *et seq.*;

8

l.  Minnesota – Minn. Stat. Ann. § 177.23 *et seq. et seq.*;

9

m.  Missouri – Mo. Ann. Stat. § 290.505 *et seq.*;

10

n.  Montana – Mont. Rev. Code Ann. § 39–3–405 *et seq.*;

11

o.  Nevada – Nev. Rev. Stat. § 608.018 *et seq.*;

12

p.  New Hampshire – N.H. Rev. Stat. Ann. § 279:21 *et seq.*:

13

q.  New Jersey – N.J. Stat. Ann. § 34:11–56a4 *et seq.*;

14

r.  New Mexico – N.M. Stat. Ann. § 50–4–22 *et seq.*;

15

16

s.  New York – N.Y. Comp. Codes R. & Regs. tit. 12, § 142–3.2 *et seq.*;

17

t.  North Carolina – N.C. Gen. Stat. Ann. § 95–25.4 *et seq.*;

18

u.  North Dakota – N.D. Admin. Code 46–02–07–02(4) *et seq.*;

19

v.  Ohio – Ohio Rev. Code Ann. § 4111.03 *et seq.*;

20

w.  Oklahoma – Okla. Stat. Ann. tit. 74, § 840–2.15 *et seq.*;

21

x.  Oregon – Or. Rev. Stat. Ann. §§ 653.055, 653.261 *et seq.*;

22

y.  Pennsylvania – 43 Pa. Stat. Ann. § 333.104 *et seq.*;

23

z.  Rhode Island – 28 R.I. Gen. Laws Ann. § 28–12–4.1 *et seq.*;

24

aa. Vermont – Vt. Stat. Ann. tit. 21, § 384 *et seq.*;

25

bb. Virginia – Va. Code Ann. § 40.1–29.2 *et seq.*;

26

cc. Washington – Wash. Rev. Code Ann. § 49.46.130 *et seq.*;

27

dd. West Virginia – W. Va. Code Ann. § 21–5C–3 *et seq.*; and

28

1          ee. Wisconsin – Wis. Admin. Code DWD § 274.015 *et seq.*

2      138.   Aya maintains a uniform, company-wide policy and practice of

3  miscalculating the overtime rate of Plaintiffs and other similarly situated

4  employees, and said policy is willful in nature and not the result of a good faith

5  mistake.

6

7  **TWELTH CAUSE OF ACTION: ENFORCEMENT OF THE CALIFORNIA**

8  **LABOR CODE PRIVATE ATTORNEYS GENERAL ACT OF 2004**

9          *By Plaintiff O'Dell on Behalf of the State of California*

10     139.   Plaintiffs hereby repeat, reiterate, and incorporate by reference each of

11  the foregoing allegations with the same force and effect as if set forth herein.

12     140.   Plaintiff O'Dell is an "aggrieved employee" within the meaning of

13  California Labor Code § 2699(c) and a proper representative to bring a civil action

14  as a representative of the State of California and on behalf of herself and other

15  current and former employees of Aya in California pursuant to the procedures

16  specified in California Labor Code § 2699.3, because Plaintiff O'Dell was

17  employed by Aya and the alleged violations of the California Labor Code were

18  committed against Plaintiff O'Dell and other aggrieved employees of Aya during

19  the relevant period.

20     141.   Pursuant to the California Private Attorneys General Act of 2004

21  ("PAGA"), Labor Code §§ 2698-2699.5, Plaintiff O'Dell, as a representative of the

22  State of California and on behalf of herself and all other similarly aggrieved

23  employees, seeks to recover civil penalties, including but not limited to penalties

24  under California Labor Code § 2699 for Aya's violation of the following Labor

25  Code sections:

26          a.     Unlawful solicitation of employees by misrepresentation in

27                 violation of California Labor Code § 970;

28

1          b.    Unlawful failure to make timely payment of all wages due upon

2                  termination in violation of California Labor Code §§ 201, 202,

3                  203, and/or 204;

4          c.    Failure to indemnify employees for expenses and losses in

5                  violation of California Labor Code § 2802; and

6          d.    Failure to indemnify employees for want of ordinary care in

7                  violation of California Labor Code § 2800.

8          142.   Pursuant to California Labor Code §§ 2699.3, on July 21, 2022,

9      Plaintiff O'Dell gave written notice by online submission to the California Labor

10     and Workforce Development Agency ("LWDA") and by certified mail to Aya of

11     the specific provisions of the California Labor Code alleged to have been violated,

12     including the facts and theories to support the alleged violations. To date, the

13     LWDA has not provided notice to Plaintiff O'Dell that it intends to investigate the

14     alleged violations. Plaintiff O'Dell reserves the right to amend her pleadings to

15     reflect any possible updated status concerning her pre-suit notice under PAGA.

16         143.   Plaintiff O'Dell has complied with, and will continue to comply with,

17     the requirements set forth in California Labor Code § 2699.3 to commence a

18     representative action under PAGA.

19                    **<u>REQUEST FOR RELIEF</u>**

20         Plaintiffs, individually and on behalf of all others similarly situated,

21     respectfully request that the Court enter judgment in their favor and against Aya as

22     follows:

23         A.    That the Court certify this action as a class action, proper and

24     maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare

25     that Plaintiffs are proper class representatives, and appoint Plaintiffs' counsel as

26     Class Counsel;

27

28

B.    That the Court award Plaintiffs and the Class or Subclass(es) compensatory, consequential, general, nominal, and statutory (along with any other damages available at law) to the extent permitted by law and in an amount to be determined at trial;

C.    That the Court issue notice to all similarly situated employees of Aya informing them of their right to file consents to join the FLSA portion of this action;

D.    That the Court award Plaintiffs and all similarly situated employees damages for unpaid overtime wages under 29 U.S.C. § 216(b);

E.    That the Court award Plaintiffs and all similarly situated employees liquidated damages under 29 U.S.C. § 216(b);

F.    That the Court award statutory and civil penalties according to proof, including but not limited to all penalties authorized by the California Labor Code § 2698 *et seq.*;

G.    That the Court award reasonable attorneys' fees and costs pursuant to California Labor Code § 2699(g)(1), California Civil Code § 1021.5, and/or any other applicable provisions providing for attorneys' fees and costs;

H.    That the Court award to Plaintiffs the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses as provided by law;

I.    That the Court award pre-and post-judgment interest at the maximum legal rate;

J.    That the Court disgorge any unjust enrichment or revenue Aya gained from its unjust business practices, including the practice of making mid-contract take-it-or-leave-it demands without fair and just compensation; and

K.    That the Court grant all such other relief as it deems just and proper.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a jury trial on all claims so triable.

Dated:  August 4, 2022

Respectfully submitted,

**HARTLEY LLP**

*/s/ Jason S. Hartley*
Jason S. Hartley (SBN 192514)
Jason M. Lindner (SBN 211451)
101 West Broadway, Suite 820
San Diego, California 92101
Tel: 619-400-5822
*hartley@hartleyllp.com*
*lindner@hartleyllp.com*

George A. Hanson*
J. Austin Moore*
K. Ross Merrill*
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: 816-714-7100
*hanson@stuevesiegel.com*
*moore@stuevesiegel.com*
*merrill@stuevesiegel.com*
*\*Pro hac vice applications forthcoming*

*Attorneys for Plaintiffs and the Putative Class and Collective*