1  Marie Burke Kenny (Bar No. 183640)
   E-mail: marie.kenny@procopio.com
2  Clint S. Engleson (Bar No. 282153)
   E-mail: clint.engleson@procopio.com
3  Ashley N. Fasano (Bar No. 324949)
   E-mail: ashley.fasano@procopio.com
4  PROCOPIO, CORY, HARGREAVES &
        SAVITCH LLP
5  525 B Street, Suite 2200
   San Diego, CA 92101
6  Telephone: 619.238.1900
   Facsimile: 619.235.0398
7
   Attorneys for Defendant AYA HEALTHCARE,
8  INC.

9              IN THE UNITED STATES DISTRICT COURT

10         FOR THE SOUTHERN DISTRICT OF CALIFORNIA

11  LAURA O'DELL, HANNAH BAILEY,          Case No. 22CV1151 BEN BLM
12  HOLLY ZIMMERMAN, and LAUREN
    MILLER, individually and on behalf of all   **DEFENDANT AYA**
13  others similarly situated,                   **HEALTHCARE, INC.'S**
                                                 **MEMORANDUM OF POINTS**
14          Plaintiffs,                          **AND AUTHORITIES IN**
                                                 **SUPPORT OF MOTION TO**
15  v.                                           **COMPEL ARBITRATION AND**
                                                 **DISMISS COURT ACTION**
16  AYA HEALTHCARE, INC.,
                                                 Hearing Date: November 14, 2022
17          Defendant.                           Time: 10:30 a.m.
                                                 Dept.: 5A
18                                               Judge: Hon. Roger T. Benitez

19                                               Complaint Filed: August 4, 2022
                                                 Trial Date:      None set
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................ 1

II.    FACTUAL BACKGROUND ........................................................ 1

    A.   Plaintiffs Expressly Agreed to Arbitrate All Disputes with Aya. .......... 1

    B.   Plaintiffs' Refusal To Honor Their Arbitration Agreements ................ 3

III.   FEDERAL AND STATE LAW REQUIRE ENFORCEMENT OF PLAINTIFFS' ARBITRATION AGREEMENTS. ................................... 4

    A.   The FAA Governs Plaintiffs' Arbitration Agreements. ....................... 5

    B.   Plaintiffs and Aya Formed Valid Contracts to Arbitrate. .................... 6

        1.   The Arbitration Agreements Evidence Mutual Assent to Arbitrate According to Sufficiently Definite Contractual Terms. ............................................................................... 6

        2.   Valid Consideration Supports Enforcement of the Arbitration Agreements ............................................................................ 9

    C.   The Arbitration Agreements Cannot Be Invalidated by Fraud or Unconscionability. ........................................................................ 9

        1.   The Arbitration Agreements Were Not Procured by Fraud. ........ 9

        2.   The Arbitration Agreements Are Not Unconscionable. ............ 11

    D.   Aya May Enforce the Arbitration Agreement as an Express Beneficiary. ................................................................................ 13

    E.   Plaintiffs' Claims Are Entirely Encompassed By The Arbitration Agreements ................................................................................. 14

    F.   The Arbitration Agreements Require Dismissal of Plaintiff's Class and Collective Action Claims. ..................................................... 15

    G.   Plaintiff O'Dell's PAGA Claims Must Be Dismissed Pursuant to the Arbitration Agreement and *Viking River*. ................................... 15

        1.   The Arbitration Agreement Governs Plaintiff O'Dell's Individual PAGA Claims Pursuant to *Viking River*. ................ 16

        2.   Plaintiff O'Dell's PAGA Claims Must Be Dismissed Under Viking River. ....................................................................... 18

IV.    CONCLUSION ....................................................................... 19

i

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Aguirre-Valdivia v. Mastercorp, Inc.*
   2020 WL 8674049 (S.D. Cal., Mar. 20, 2020, No. 319CV2424CABWVG) ..... 5

*Allied-Bruce Terminix Cos., Inc. v. Dobson*
   513 U.S. 265 (1995) ................................................................................... 5

*American Express Co. v. Italian Colors Restaurant*
   570 U.S. 228 (2013) ................................................................................... 4

*Arthur Andersen LLP v. Carlisle*
   556 U.S. 624 (2009) ................................................................................. 13

*Asfaw v. Lowe's HIW, Inc.*
   No. LA CV14-00697 JAK, 2014 WL 1928612 (C.D. Cal. May 13, 2014) ........ 9

*Ashbey v. Archstone Prop. Mgmt., Inc.*
   785 F.3d 1320 (9th Cir. 2015) ................................................................... 4

*AT&T Mobility LLC v. Concepcion*
   563 U.S. 333 (2011) ......................................................................... 4, 5, 15

*Circuit City Stores, Inc. v. Najd*
   294 F.3d 1104 (9th Cir. 2002) ................................................................... 9

*Dominguez v. Stone Brewing Co., LLC*
   2020 WL 3606396 (S.D. Cal., July 2, 2020, No. 20-CV-251-WQH-BLM) ...... 8

*Epic Sys. Corp. v. Lewis*
   138 S. Ct. 1612 (2018) .......................................................................... 4, 15

*Haisha Corp. v. Sprint Solutions, Inc.*
   2015 WL 224407 (S.D. Cal., Jan. 15, 2015, No. 14CV2773-GPC MDD) ...... 11

*Hamilton Life Ins. Co. of New York v. Republic Nat. Life Ins. Co*
   408 F.2d 606 (2d Cir. 1969) ................................................................... 10

*Kilgore v. KeyBank, N.A.*
   718 F.3d 1052 (9th Cir. 2013) ............................................................ 4, 11

ii

*Klamath Water Users Protective Ass'n v. Patterson*
   204 F.3d 1206 (9th Cir.2000) ..................................................................... 13

*Kramer v. Toyota Motor Corp.*
   705 F. 3d 1122 (9th Cir. 2013) ................................................................... 13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
   460 U.S. 1 (1983) .................................................................................. 4, 14

*Poublon v. C.H. Robinson Company*
   846 F.3d 1251 (9th Cir. 2017) ............................................................. 11, 12

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*
   388 U.S. 395 (1967) ..................................................................................... 10

*Rockridge Trust v. Wells Fargo, N.A.*
   985 F. Supp. 2d 1110 (N.D. Cal. 2013) ....................................................... 6

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*
   925 F.2d 1136 (9th Cir. 1991) ..................................................................... 10

*Viking River Cruises, Inc. v. Moriana*
   596 U.S. ____, 142 S. Ct. 1906 (2022) ................................................. passim

**STATE CASES**

*Armendariz v. Foundation Health Psychcare Servs., Inc.*
   24 Cal. 4th 83 (2000) ..................................................................... 11, 12, 14

*Baker v. Italian Maple Holdings, LLC*
   13 Cal. App. 5th 1152 (2017) ....................................................................... 6

*Brookwood v. Bank of America, NT&SA, et al.*
   45 Cal.App.4th 1667, 1674 (1996) .............................................................. 4

*Diaz v. Sohnen Enterprises*
   34 Cal. App. 5th 126 (2019) ....................................................................... 11

*HM DG, Inc. v. Amini*
   219 Cal. App. 4th 1100, 1110 (2013) .......................................................... 8

*Iskanian v. CLS Transportation Los Angeles, LLC*
   59 Cal. 4th 348 (2014) ......................................................................... 16, 17

*Marin Storage & Trucking, Inc. v. Benco Contracting & Engineering, Inc.*
   89 Cal. App. 4th 1042 (2001) ......................................................... 6

*Martinez v. BaronHR, Inc.*
   51 Cal. App. 5th 962 (2020) ........................................................ 6, 7

*Ronay Family Ltd P'ship v. Tweed*
   216 Cal.App4th 830 (2013) ....................................................... 13, 14

*Saint Agnes Medical Center v. PacifiCare*
   102 Cal.App.4th 647 (2002) ........................................................... 5

*Samaniego v. Empire Today, LLC*
   205 Cal. App. 4th 1138 (2012) ....................................................... 4

*Sonic-Calabasas A., Inc. v. Moreno*
   57 Cal.4th 1109 (2013) ............................................................. 11

**FEDERAL STATUTES, REGULATIONS, AND RULES**

9 U.S.C.
   § 1 ............................................................................... 3, 4
   § 2 ............................................................................... 4, 5
   § 3 ................................................................................. 1
   § 4 ................................................................................. 1

Fed. R. Civ. P.
   § 12(b)(1) .......................................................................... 1

**STATE STATUTES, REGULATIONS, AND RULES**

Cal. Bus. & Prof. Code
   § 17200 ............................................................................ 14

Cal. Code Civ. Proc.
   § 1280 ............................................................................... 3

Cal. Labor Code
   § 2698 ............................................................................. 14

Defendant Aya Healthcare, Inc. ("Aya") respectfully submits this Memorandum of Points and Authorities in Support of its Motion to Compel Arbitration and Dismiss Court Action, pursuant to 9 U.S.C. §§ 3-4 and Fed. R. Civ. P. 12(b)(1).

# I. INTRODUCTION

*This Motion has been made necessary by Plaintiffs' repeated refusal to honor their Arbitration Agreements[1] with Aya.* Plaintiffs Laura O'Dell, Hannah Bailey, Holly Zimmerman, and Lauren Miller ("Plaintiffs") each signed a *bilateral* Arbitration Agreement agreeing to arbitrate *all* of their individual claims against Aya. Plaintiffs further agreed not to pursue *any* claims covered by their Arbitration Agreements as a class, collective, or representative action. Despite these express promises, Plaintiffs filed the instant class, collective, and representative lawsuit against Aya. Plaintiffs do not have any factual or legal grounds to assert that the Arbitration Agreements are unenforceable. Thus, and for the reasons set forth more fully below, Aya respectfully requests the Court: (1) compel Plaintiffs to arbitrate their individual claims against Aya; and (2) dismiss Plaintiffs' class, collective, and representative action, without prejudice, in accordance with Plaintiffs' Arbitration Agreements.

# II. FACTUAL BACKGROUND

## A. Plaintiffs Expressly Agreed to Arbitrate All Disputes with Aya.

Plaintiffs worked for Aya Healthcare Services, Inc. as clinicians[2] during the time period at issue in this lawsuit. Declaration of Amber Zeeb ("Zeeb Decl."), ¶¶ 5, 7, 9 & 11. Aya Services is a staffing company that dispatches travel clinicians to temporary work assignments at approximately 3,300 healthcare facilities or campuses nationwide. *Id.* at ¶ 3. Aya provides various payroll and backend services, among other things, to its client Aya Services. *Id.*

---

[1] Hereinafter, the terms "Arbitration Agreement(s)" or "Agreement(s)" refer to Plaintiffs' individual arbitration agreements, which are identical in substance and form.

[2] The term "clinician" includes all hourly, non-exempt employees placed in clinical and non-clinical positions at healthcare facilities including, but not limited to, nurses, therapists, and technicians.

Plaintiffs agreed to arbitrate any and all potential claims against Aya as a condition of their employment with Aya Services. Plaintiffs O'Dell, Zimmerman, Bailey, and Miller executed identical Arbitration Agreements on October 14, 2020, December 28, 2021, February 28, 2022, and April 27, 2022, respectively. *Id.*, ¶¶ 6, 8, 10 & 12; Exhibits ("Ex.") 1-4. An authorized representative also executed each Agreement binding Aya Services and Aya to the terms of the Agreements. Plaintiffs' Arbitration Agreements provide, in pertinent part:

> You and Aya **mutually agree that any and all claims arising out of or relating to your employment with Aya or the end of such employment, whether asserted during or following your employment with Aya, will be subject to binding arbitration** and not by a lawsuit or resort to court process. You and Aya agree that the binding arbitration required by this Agreement applies to **all** covered claims arising from Your past or current assignments or position, as well as any and all covered claims arising from any future assignments or positions with Aya, regardless of whether there is a break in service between such assignments or positions. The claims covered by this Agreement include, but are not limited to, **contract claims**, **quasi-contract claims**, **equity claims**, **tort claims**, wrongful termination claims, claims of discrimination, harassment or retaliation, **wage claims**, **penalty claims**, any claiming based on or arising out of any offer letter, agreement, handbook, or policy of Aya, claims for breach of confidentiality or misappropriation of trade secrets, claims for injunctive relief, claims alleging breach of privacy rights, and claims based on or alleging violations of the **California Labor Code**, California Fair Employment and Housing Act, the Americans With Disabilities Act, California Pregnancy Leave Law, or any other applicable public policy, federal, state or other governmental law, constitution, statute, regulation or ordinance.

> This Agreement is binding upon, and inures to the benefit of, the Parties and their respective successors and assigns. In addition, You agree that this Agreement is intended to benefit and may be enforced not only by Aya, but also by any of Aya's officers, directors, owners, **clients**, shareholders, employees, managers, agents, attorneys, insurers, sureties, benefit plans, clients, and its affiliated, related, parent, sister,

2

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO COMPEL ARBITRATION/DISMISS ACTION
122978-00000040/6272170.4                                                                '22CV1151 BEN BLM

or associated business entities (**including, but not limited to <u>Aya Healthcare, Inc.</u>**).

Exs. 1-4, § 2 (emphasis added). The Arbitration Agreements further state:

> The binding arbitration and selection of a neutral arbitrator will be conducted in conformity with the procedures of **the Federal Arbitration Act** (9 U.S.C. § 1 et seq.) and the California Arbitration Act (Cal. Code Civ. Proc., § 1280 et seq.), and if You are employed outside of California, in accordance with any other applicable arbitration law.
>
> **TO THE FULLEST EXTENT PERMITTED BY LAW, YOU AND AYA AGREE THAT NO CLAIM COVERED BY THIS AGREEMENT MAY BE PURSUED AS A CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION AND ALL SUCH CLAIMS MUST BE PURSUED ONLY ON AN INDIVIDUAL BASIS.**

Exs. 1-4, §§ 3, 5 (underlining added). Aya is expressly encompassed by Plaintiffs' Arbitration Agreements and thus entitled to seek enforcement of their terms here.

### B.  <u>Plaintiffs' Refusal To Honor Their Arbitration Agreements.</u>

On August 4, 2022, Plaintiffs O'Dell, Zimmerman, and Bailey initiated this class, collective, and representative action lawsuit against Aya. ROA. 1. On August 24, 2022, Aya's counsel sent Plaintiffs' counsel a meet and confer letter which attached Plaintiffs' Arbitration Agreements. Declaration of Ashley N. Fasano ("Fasano Decl.") at ¶ 3. The letter asked Plaintiffs to honor their Arbitration Agreements, dismiss their class, collective, and representative action claims, and submit their individual claims to arbitration. *Id.* Additionally, Aya agreed to cover the entire cost of the pre-arbitration mediation provided for in the Agreements. *Id.* Plaintiffs did not agree to dismiss their lawsuit or submit their individual claims to arbitration. *Id.* Instead, while Aya's Motion to Compel Arbitration was pending, Plaintiffs filed the operative First Amended Complaint ("FAC") adding Plaintiff Miller to the lawsuit, among other amendments. ROA 15. Plaintiffs' repeated refusal

to comply with their obligations in the Agreements has necessitated this Motion.

## III.   FEDERAL AND STATE LAW REQUIRE ENFORCEMENT OF PLAINTIFFS' ARBITRATION AGREEMENTS.

Federal law establishes an *incontrovertible* policy favoring *liberal* enforcement of arbitration agreements. 9 U.S.C. § 1, *et seq.*; *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) ("*Concepcion*"); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Indeed, the Federal Arbitration Act ("FAA") *requires* courts to treat arbitration agreements as "valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. California law is in accord. *Samaniego v. Empire Today, LLC*, 205 Cal. App. 4th 1138, 1144 (2012). In fact, California's public policy favoring arbitration is so strong that courts have held an employee is "bound by the provisions of the [arbitration] agreement regardless of whether [she] read it or [was] aware of the arbitration clause when [she] signed the document.'" *Brookwood v. Bank of America, NT&SA, et al.*, 45 Cal. App. 4th 1667, 1674 (1996) (internal quotations omitted).

The FAA mandates courts to compel arbitration where (1) a valid agreement to arbitrate exists and (2) the agreement encompasses the dispute before the court. *Kilgore v. KeyBank, N.A.,* 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc). A party moving to compel arbitration bears the initial the burden of proof with respect to these elements. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). Because arbitration is a highly favored means of settling disputes, any doubts as to the arbitrability of a dispute must be resolved in favor of enforcing arbitration. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25; *Samaniego*, 205 Cal. App. 4th at 1140. Absent proof of a generally applicable contract defense to invalidate the agreement, courts must "rigorously" enforce arbitration agreements according to their terms. *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013); *see also Samaniego*, 205 Cal. 4th at 1150.

4

Here, there is no doubt as to the arbitrability of Plaintiffs' alleged disputes with Aya. Plaintiffs' Arbitration Agreements are valid, enforceable contracts applicable to each and every claim asserted in this lawsuit. There is no evidence of unconscionability, fraud, or any other contract defense sufficient to render the Agreements unenforceable. As a result, an order compelling arbitration pursuant to Plaintiffs' Arbitration Agreements is "mandatory." *Aguirre-Valdivia v. Mastercorp, Inc.*, 2020 WL 8674049, at *2 (S.D. Cal., Mar. 20, 2020, No. 319CV2424CABWVG).

### A.   The FAA Governs Plaintiffs' Arbitration Agreements.

As an initial matter, the parties expressly agreed the FAA governs Plaintiffs' Arbitration Agreements. Exs. 1-4, § 3 ("The binding arbitration and selection of neutral arbitrator will be conducted in conformity with the procedures of the Federal Arbitration Act"). A court must enforce a valid arbitration agreement according to its precise terms. *Concepcion*, 563 U.S. at 344. Thus, the FAA applies here.

To the extent Plaintiffs intend to challenge the FAA's application, they cannot. The FAA itself provides an independent basis for applying its terms to this case. The FAA explicitly governs agreements in contracts involving interstate commerce. 9 U.S.C. § 2. In addition, the FAA preempts any state law to the contrary. *See Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 272 (1995) (it is well established law "that the Federal Arbitration Act pre-empts state law . . . and that state courts cannot apply state statutes that invalidate agreements."). The FAA's requirement for a nexus to interstate commerce is low. Any contract that affects interstate commerce is sufficient. *See, e.g., Saint Agnes Medical Center v. PacifiCare*, 102 Cal.App.4th 647, 651 (2002), *overruled on other grounds* (holding the FAA applied to the arbitration clause in the health services agreement because the medical center had entered into contracts with vendors on a national or interstate basis).

Plaintiffs' Arbitration Agreements have an undeniable nexus to interstate commerce because they were premised on Plaintiffs' employment with Aya Services. Plaintiffs worked for Aya Services as traveling clinicians. Aya Services dispatched

Plaintiffs to work assignments at healthcare facilities throughout the country. Moreover, Aya provides payroll and backend services to facilitate Aya Services' nationwide operations. Zeeb Decl., at ¶ 3. The very nature of Plaintiffs' employment and the healthcare facilities where they performed work are necessarily involved in interstate commerce. For these reasons, Plaintiffs cannot reasonably dispute the FAA governs their Arbitration Agreements.

**B.      Plaintiffs and Aya Formed Valid Contracts to Arbitrate.[3]**

Likewise, Plaintiffs have no legitimate grounds to dispute the formation of their Arbitration Agreements. To form a valid agreement to arbitrate, there must be mutual assent, sufficiently definite contractual terms, and consideration. *Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1142 (N.D. Cal. 2013). The party moving to compel arbitration satisfies its burden to prove these elements by presenting a copy of the agreement to the court, as Aya has done here. *Baker v. Italian Maple Holdings, LLC*, 13 Cal. App. 5th 1152, 1160 (2017); Exs. 1-4. On their face, Plaintiffs' Arbitration Agreements indisputably contain each essential element required to form a contract under California law.

1.      The Arbitration Agreements Evidence Mutual Assent to Arbitrate According to Sufficiently Definite Contractual Terms.

Mutual assent is determined objectively based on the outward manifestations of the parties, *i.e.*, the reasonable meaning of the parties' words and actions. *Martinez v. BaronHR, Inc.*, 51 Cal. App. 5th 962, 967 (2020). Stated differently, the parties' mutual assent can be ascertained solely from the contract language if it is clear and explicit. *Id.* A party's signature is deemed to constitute mutual assent to the agreement's terms. *Marin Storage & Trucking, Inc. v. Benco Contracting & Engineering, Inc.*, 89 Cal. App. 4th 1042, 1049 (2001).

The Arbitration Agreements' explicit and unambiguous language leaves no

---

[3] Notably, several California trial courts have enforced the *exact same* arbitration agreement at issue in this case. Request for Judicial Notice ("RJN"), Exs. 5-7.

room for misinterpretation as to the parties' intent to arbitrate:

> You and Aya mutually agree that any and all claims arising out of or relating to your employment with Aya or the end of such employment, whether asserted during or following your employment with Aya, will be subject to binding arbitration and not by a lawsuit or resort to court process. You and Aya agree that the binding arbitration required by this Agreement applies to all covered claims arising from Your past or current assignments or position, as well as any and all covered claims arising from any future assignments or positions with Aya, regardless of whether there is a break in service between such assignments or positions.

Exs. 1-4, § 2. The Agreements also expressly manifest the parties' intent to waive their right to a jury trial:

> **BY SIGNING THIS AGREEMENT YOU ARE GIVING UP YOUR RIGHTS TO HAVE THE CLAIMS DESCRIBED IN PARAGRAPH 2 ABOVE DECIDED IN A COURT OF LAW BEFORE A JURY OR JUDGE, AND INSTEAD ARE AGREEING TO FINAL AND BINDING ARBITRATION BEFORE A NEUTRAL ARBITRATOR.**

Exs. 1-4, § 4 (emphasis original).  The prominent certification paragraph makes clear, in signing the Agreements, Plaintiffs agreed to be bound the foregoing terms:

> **PLEASE READ THIS DOCUMENT CAREFULLY BEFORE SIGNING!**
>
> By signing below, You acknowledge and agree that You have carefully read this Agreement, you understand it, and that You knowingly and voluntarily agree to it. You further acknowledge that you have been given the opportunity to discuss this Agreement with your own legal counsel and have availed yourself of that opportunity to the extent desired.

Exs. 1-4 (emphasis original).  Where, as here, the agreement explicitly provided that the parties agreed to arbitration, the certification paragraph expressly provided that the employee agreed to be legally bound to all terms of the agreement, and the employee and the employer's representative executed the agreement, *mutual assent is objectively present*. *Martinez*, 51 Cal. App. 5th at 967.

7

Nevertheless, Plaintiffs' FAC asserts the Arbitration Agreements lacked mutual assent because the Agreements were silent as to who should serve as the arbitrator and which rules apply to arbitration between the parties. FAC, ¶ 35. Plaintiffs' specious arguments fail as a matter of law. As this Court has recognized, the FAA empowers courts to designate an arbitrator when no method is provided for selection of the arbitrator in the agreement. *Dominguez v. Stone Brewing Co., LLC*, 2020 WL 3606396, at *7 (S.D. Cal., July 2, 2020, No. 20-CV-251-WQH-BLM). Further, the applicable arbitration rules are "part and parcel of the appointment of the arbitrator[.]" *Id.*, quoting *HM DG, Inc. v. Amini,* 219 Cal. App. 4th 1100, 1110 (2013). Thus, contracting parties may mutually assent to an arbitration agreement that does not elect an arbitral forum or governing arbitral rules, as they did here. *Id.*; *HM DG, Inc.*, 219 Cal. App. 4th at 1107–1110 (the validity of an arbitration agreement is not contingent upon the designation of a specific arbitrator or set rules under California law).

Plaintiffs also contend the parties could not have understood the scope of the Arbitration Agreements because Plaintiffs had not reached an agreement with Aya on the terms of their employment. FAC, ¶ 37. This Court's decision in *Dominguez* is instructive here. Specifically, this Court enforced an arbitration clause in an employment application despite the fact that the plaintiff subsequently executed an offer letter which did not contain an arbitration clause. *Dominguez,* 2020 WL 3606396, at *5. Accordingly, there is no requirement that the parties agree to precise terms of employment *before* entering into an agreement to arbitrate all employment-related disputes. *See, id.* Even if there was such a requirement, the Arbitration Agreements here recite the primary terms of Plaintiffs' *at-will* employment with Aya:

> Your employment with Aya is at-will. Your employment may be terminated by either you or Aya at any time, with or without notice, and with or without cause. Nothing in this Agreement modifies the at-will nature of your employment.

Exs. 1-4, § 1. Moreover, Plaintiffs signed the offer letters for their first work

8

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO COMPEL ARBITRATION/DISMISS ACTION
122757-00000040/6272170.4                                                                                    '22CV1151 BEN BLM

assignments *before* their Arbitration Agreements were executed. Zeeb Decl., ¶¶ 6, 8, 10 & 12. Plaintiffs' attempt to feign confusion as to the scope of the Arbitration Agreements and the terms of their employment are unavailing.

> 2. Valid Consideration Supports Enforcement of the Arbitration Agreements.

Valid consideration is axiomatic here because the parties mutually exchanged promises to arbitrate under the Arbitration Agreements. Exs. 1-4, § 2 ("You and Aya *mutually agree* that any and all claims…will be subject to binding arbitration and not by a lawsuit or resort to court process…." (emphasis added)). Plaintiffs signed the Agreements acknowledging their *voluntary* assent to arbitrate. Zeeb Decl., ¶¶ 6, 8, 10 & 12; Exs. 1-4. Aya's authorized representative also executed the Agreements binding Aya to arbitrate on the *exact* same terms as Plaintiffs. *Id.* The parties' *bilateral* agreement to submit to arbitration constitutes sufficient consideration to form a valid contract. *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002). Moreover, Aya's offer of at-will employment and Plaintiffs' acceptance of that offer provided a secondary form of consideration. *See Asfaw v. Lowe's HIW, Inc.*, No. LA CV14-00697 JAK, 2014 WL 1928612, at *3 (C.D. Cal. May 13, 2014) ("[I]t is undisputed that, in exchange for agreeing to arbitrate disputes, Plaintiff either accepted Defendant's offer of employment or continued working for Defendant [and] [c]ontinued employment constitutes consideration for an agreement to arbitrate."). For these reasons, there is no question that Plaintiffs' Arbitration Agreements are valid, enforceable contracts.

> ## C. The Arbitration Agreements Cannot Be Invalidated by Fraud or Unconscionability.
>
> ### 1. The Arbitration Agreements Were Not Procured by Fraud.

Aya respectfully submits there is no evidence whatsoever to substantiate Plaintiffs' allegations that the Arbitration Agreements were fraudulently induced. As such, the Agreements must be enforced.

Plaintiffs' FAC preemptively argues Plaintiffs were fraudulently induced into executing the Arbitration Agreements. FAC, ¶¶ 38-43. In doing so, Plaintiffs improperly conflate Aya's *alleged* misrepresentations regarding Plaintiffs' *pay rates in their offer letters* with their *standalone Arbitration Agreements*. Indeed, Plaintiffs state, "Aya fraudulently concealed the fact that it did not intend to honor the material terms of its ***employment contracts*** with Plaintiffs."[4] FAC, ¶ 39 (emphasis added). Therefore, "Aya induced Plaintiffs…into entering a vague dispute resolution process ***independently from…the signing of an employment agreement***." FAC, ¶ 40 (emphasis added). *By their own admission*, Plaintiffs are attempting to impute alleged fraud with respect to their "employment contracts" to their separately executed Arbitration Agreements. Plaintiffs' fraud argument is misplaced. If Plaintiffs wish to pursue fraud claims regarding their pay rates, they must do so *in arbitration*.

Fraud or illegality  in inducement of a principal contract, *i.e.*, an employment agreement, does not operate to nullify an agreement to arbitrate. *Hamilton Life Ins. Co. of New York v. Republic Nat. Life Ins. Co,* 408 F.2d 606, 610 (2d Cir. 1969); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403-04 (1967) ("if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it. *But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally*.") (emphasis added). This principle controls regardless of whether the agreement to arbitrate is contained as a clause in an employment contract or a standalone arbitration agreement. "[A] federal court may consider a defense of fraud in the inducement of a contract ***only if the fraud relates specifically to the arbitration clause itself*** and not to the contract generally." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1140 (9th Cir. 1991) (emphasis added); *Prima Paint Corp.*, 388 U.S. at 403-04. Here,

---

[4] As noted above, Plaintiffs were employed on an at-will basis.  *See e.g.,* Exs. 1-4, § 1.  Accordingly, Aya denies that any contract providing for a specific pay rate for a specific term of employment existed between the parties.

Plaintiffs' allege fraud with respect to an entirely different agreement, their offer letters.

2.   The Arbitration Agreements Are Not Unconscionable.

Unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise, the latter on overly harsh one-sided results. *Kilgore*, 718 F.3d at 1059. Courts use a sliding scale approach to analyze these elements. "The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* at 1058. No matter how heavily one side of the scale tips, ***both*** procedural and substantive unconscionability are required for a court to hold an arbitration agreement unenforceable. *Id.* The "party opposing arbitration bears the burden to demonstrate unconscionability." *Haisha Corp. v. Sprint Solutions, Inc.*, 2015 WL 224407, at *4 (S.D. Cal., Jan. 15, 2015, No. 14CV2773-GPC MDD) (*citing Sonic-Calabasas A., Inc. v. Moreno*, 57 Cal.4th 1109, 1148 (2013)).

An agreement to arbitrate is substantively conscionable if it meets certain requirements: (1) the use of a neutral arbitrator; (2) adequate discovery by the employee; (3) a written decision by the arbitrator that permits limited judicial review; (4) the availability of all types of relief otherwise available in court; (5) employees may not be required to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration process; and (6) the agreement to arbitrate is mutual. *Armendariz v. Foundation Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 102-18 (2000); *see also Poublon v. C.H. Robinson Company,* 846 F.3d 1251, 1260-73 (9th Cir. 2017). An agreement is not procedurally unconscionable merely because it is presented as a "take it or leave it" condition of employment. *Id.* In fact, California courts have held that "when an employee continues his or his employment after notification that an agreement to arbitration is a condition of continued employment, that employee has impliedly consented to the arbitration agreement." *Diaz v. Sohnen Enterprises*, 34 Cal. App. 5th 126, 130 (2019); *Poublon*, 846 F.3d at

1260. Here, the Arbitration Agreements contain the required provisions and do not contain any provisions that would render them invalid or unenforceable under *Armendariz*.

First, the agreement provides for a neutral arbitrator. Exs. 1-4, § 3. Second, the agreements do not limit the scope of discovery that Plaintiffs may pursue. Rather, they specifically provide Plaintiffs "shall be entitled to discovery sufficient to adequately arbitrate" their claims. *Id*. The agreements also provide that the arbitrator "may utilize procedural motions challenging the legal sufficiency of a claim or defense," akin to the motion proceedings available to the parties in court. *Id*) Third, the agreements require the arbitrator to "issue a detailed written decision and award resolving the dispute." *Id*. Fourth, the agreements do not limit the scope of relief available to Plaintiffs. *Id*. Fifth, the agreements do not impose the costs of arbitration on Plaintiffs.[5] *Id.* Sixth, the agreements are mutual because they apply to all disputes between the parties and are signed by Plaintiffs and Aya Services. *Id*. For these reasons, Plaintiffs *cannot* contest the validity of the Arbitration Agreements based on any purported substantive unconscionability.

Likewise, Plaintiffs cannot challenge the validity and enforceability of the Arbitration Agreements based on *purported* procedural unconscionability. Plaintiffs were presented with the agreements at the outset of their employment. Aya did not conceal the text of the agreements in any manner that would indicate that it intended to hide the terms from Plaintiffs. In capitalized text, placed right above the signature block, the Arbitration Agreements conspicuously state: "**PLEASE READ THIS DOCUMENT CAREFULLY BEFORE SIGNING!**" Exs. 1-4, p. 2 (emphasis original). The agreements also include an acknowledgment stating:

> By signing below, You acknowledge and agree that You have carefully

---

[5] Aya agreed to cover, in full, any costs associated with the pre-arbitration mediation prescribed in the Arbitration Agreements. As such, Plaintiffs have no reasonable grounds for asserting they are subject to an undue financial burden with respect to arbitration.

read this Agreement, you understand it, and that You knowingly and voluntarily agree to it. You further acknowledge that you have been given the opportunity to discuss this Agreement with your own legal counsel and have availed yourself of that opportunity to the extent desired.

*Id*. Having read the terms, Plaintiffs signed the Arbitration Agreements before commencing their employment. Zeeb Decl., ¶¶ 6, 8, 10, & 12; Exs. 1-4.

On this record, Plaintiffs cannot credibly challenge the enforceability of the Arbitration Agreements because of procedural unconscionability. Thus, the Court should order Plaintiffs to comply with the Arbitration Agreements.

**D.   Aya May Enforce the Arbitration Agreement as an Express Beneficiary.**

Aya anticipates that Plaintiffs may attempt to circumvent their obligations to arbitrate by arguing that Aya was not a signatory to the Arbitration Agreements. However, the United States Supreme Court has held that "a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer v. Toyota Motor Corp.*, 705 F. 3d 1122, 1128 (9th Cir. 2013) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)). Here, California law permits third-party beneficiaries to enforce arbitration agreements. "To sue as a third-party beneficiary of a contract, the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party." *Klamath Water Users Protective Ass'n v. Patterson,* 204 F.3d 1206, 1211 (9th Cir.2000). A "third party beneficiary of an arbitration agreement may enforce it." *Ronay Family Ltd P'ship v. Tweed*, 216 Cal.App4th 830, 838 (2013) ("*Tweed*").

Plaintiffs' Arbitration Agreements *expressly* state that they are enforceable by Aya as an affiliate of Aya Services: "In addition, You agree that this Agreement is intended to benefit and **may be enforced** not only by Aya, but also by any of Aya's […] **affiliated**, related, parent, sister, or associated business entities (including, but not

limited to **Aya Healthcare, Inc.**).” Exs. 1-4, § 2 (emphasis added). Aya is not only an affiliated business of Aya Services as established by the evidence submitted to the Court, it is also an ***explicitly named beneficiary*** in the Arbitration Agreements. Thus, Aya may enforce the Arbitration Agreements. *Tweed*, 216 Cal. App. 4th at 838.

### E.   Plaintiffs' Claims Are Entirely Encompassed By The Arbitration Agreements.

In light of the strong public policy favoring resolution of disputes through arbitration, “any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.”  *Moses H. Cone Memorial Hosp.*, 460 U.S. at 23; *see also Armendariz*, 24 Cal. 4th at 97-98. Nevertheless, all of Plaintiffs' claims are unambiguously encompassed in the Arbitration Agreements.

Plaintiffs' Arbitration Agreements require the parties to submit ***all disputes*** arising out of or relating to Plaintiffs' employment with Aya or the end of such employment to final and binding arbitration. Plaintiffs' primarily assert Aya breached Plaintiffs' employment contracts by imposing a lower pay rate on Plaintiffs after Plaintiffs commenced their employment with Aya. *See e.g.,* FAC, ¶¶ 2-3. Based on this allegation alone, Plaintiffs allege breach of contract, promissory estoppel, quasi-contract, fraudulent inducement, fraudulent concealment, negligent misrepresentation, violations of state wage payment and overtime laws, various violations of the California Labor Code, violation of California Business & Professions Code § 17200, *et seq.*, and unpaid overtime pursuant to the Fair Labor Standards Act (“FLSA”). *See generally,* FAC. Plaintiff O'Dell additionally alleges a claim under the California Private Attorneys General Act of 2004, Labor Code § 2698 *et seq.*, (“PAGA”) arising from Aya's alleged violations of the California Labor Code. *Id.*

Each and every one of Plaintiffs' claims is explicitly identified in the Arbitration Agreements in multiple respects. First, all of Plaintiffs' claims inarguably arise out of or relate to Plaintiffs' employment with Aya. Further, the Arbitration Agreements explicitly name *all* tort- and contract-related claims, violations of the California Labor

14

Code, and violations any other state or federal statute or regulation as claims covered by their terms. The Arbitration Agreements unquestionably incorporate **_all_** of Plaintiffs' claims.

### F. The Arbitration Agreements Require Dismissal of Plaintiff's Class and Collective Action Claims.

Because Plaintiffs' Arbitration Agreements are valid, irrevocable and enforceable, Plaintiff's class, collective, and representative claims must be dismissed. As detailed above, the subject Arbitration Agreements contain express class, collective and representation action waivers. Such waivers are undeniably enforceable contract provisions as established by United States Supreme Court precedent. *Concepcion*, 563 U.S. at 339-40 (finding the FAA preempts state law rules prohibiting class action waivers in arbitration agreements); *Epic Systems Corp.*, 138 S.Ct. at 1622-23, 1631 ("[o]ur precedent clearly teaches" prohibitions on class action waivers are "inconsistent" with the FAA); *Viking River Cruises, Inc. v. Moriana*, 596 U.S. ____, 142 S. Ct. 1906 (2022) ("*Viking River*") (ordering dismissal of non-individual, representative claims under the California Labor Code under terms of arbitration agreement). For these reasons, Plaintiffs cannot maintain their class, collective, and representative action in court.

### G. Plaintiff O'Dell's PAGA Claims Must Be Dismissed Pursuant to the Arbitration Agreement and *Viking River*.

Aya anticipates that Plaintiff O'Dell will argue that her PAGA claim, representative or otherwise, cannot be dismissed. However, Plaintiff O'Dell's Arbitration Agreement specifically provides that "any and all claims arising out of or relating to [Plaintiff's] employment with Aya," including any "claims based on or alleging violations of the California Labor Code" are subject to *individual* arbitration. Ex. 1, § 2. Thus, the Arbitration Agreement requires O'Dell to bring her individual PAGA claims in arbitration. Ex. 1, § 5. Pursuant to the United States Supreme Court's decision in *Viking River,* an employee's *non*-individual PAGA claims **_must be_**

*dismissed* when her individual PAGA claims are pending in arbitration. *Viking River*, 142 S. Ct. at 1925. Because Plaintiff O'Dell's Arbitration Agreement requires her individual PAGA claims to be submitted to arbitration, *Viking River* mandates dismissal of Plaintiff's remaining representative PAGA claims.

1.   The Arbitration Agreement Governs Plaintiff O'Dell's Individual PAGA Claims Pursuant to *Viking River*.

The United States Supreme Court's decision in *Viking River* abrogated the California Supreme Court's leading decision on arbitration of PAGA disputes, *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348 (2014) ("*Iskanian*"), along with *Iskanian*'s progeny. *Iskanian* held that PAGA claims cannot be compelled to arbitration because "an employment agreement [that] compels the waiver of representative claims under the PAGA […] is contrary to public policy and unenforceable as a matter of state law."  59 Cal. 4th at 384. Specifically, *Iskanian* adopted a rule that invalidates agreements to separately arbitrate or litigate "individual PAGA claims for Labor Code violations that an employee suffered," on the theory that resolving victim-specific claims in separate arbitrations does not serve the deterrent purpose of PAGA. 59 Cal.4th at 383. Thus, *Iskanian* and its progeny held that PAGA claims cannot be split into arbitrable individual claims and nonarbitrable "representative" claims. *Id. Viking River* rejected this concept holding that the "*FAA preempts the rule of Iskanian **insofar as it precludes division of PAGA actions into individual and non-individual claims** through an agreement to arbitrate*."  *Viking River*, 142 S. Ct. at 1924 (emphasis added).

Significantly, the Supreme Court went to great lengths to distinguish the "agency" and "non-individual" aspects of PAGA. As it explained:

> In the first sense, PAGA actions are "representative" in that they are brought by employees acting as representatives—that is, as agents or proxies—of the State. But PAGA claims are also called "representative" when they are predicated on code violations sustained by other employees.

*Viking River*, 142 S. Ct. at 1916. To avoid confusion, the Supreme Court used the term

"non-individual" claims to refer to claims "predicated on code violations sustained by other employees." *Id*. Those claims, it held, could be severed from an employee's individual claims through an agreement to arbitrate. *Id*.

The arbitration agreement at issue in *Viking River* "contained a 'Class Action Waiver' providing that in any arbitral proceeding, the parties could not bring any dispute as a class, collective, or representative PAGA action." *Viking River*, 142 S. Ct. at 1916. That language, the Court held, could be interpreted as waiving not only the plaintiff's right to bring non-individual PAGA claims, but to bring any PAGA claims whatsoever. *Id*. at 1924-25. As the Court explained:

> The agreement between Viking and Moriana purported to waive ***"representative" PAGA claims***. Under *Iskanian*, this provision was invalid ***if construed as a wholesale waiver of PAGA claims***. And under our holding, that aspect of *Iskanian* is not preempted by the FAA, so the agreement remains invalid insofar as it is interpreted in that manner.

*Viking River*, 142 S. Ct. at 1924-25. Even then, the Court held that the *potentially* offending provision could be severed, thereby preserving the agreement insofar as it required arbitration of the plaintiff's individual claims. *Id*. Thus, *Viking River* held that an arbitration agreement that requires an employee to bilaterally arbitrate their individual claims, and *only* their individual claims, is enforceable, ***even if it means the employee must arbitrate their individual PAGA claims***. *Id*.

The Supreme Court helpfully answered the question of what trial courts must do with representative (non-individual) PAGA lawsuits after a plaintiff's individual PAGA claims are either compelled to arbitration or otherwise pending in arbitration. It held that the "***the correct course is to dismiss [the] remaining claims***" for lack of standing. *Viking River*, 142 S. Ct. at 1925 (emphasis added). Thus, if a trial court orders a plaintiff's individual PAGA claims to arbitration, or of the plaintiff's individual PAGA claims are already pending in arbitration, the plaintiff "lacks statutory standing" to pursue their claims in court. *Viking River*, 142 S. Ct. at 1925. In such cases, the trial court must dismiss the PAGA claims, both individual and non-

17

1  individual. *Id*.

2          2.    Plaintiff O'Dell's PAGA Claims Must Be Dismissed Under Viking
3                River.

4          Plaintiff's PAGA claims must be dismissed pursuant to *Viking River*.[6]  As the

5  Supreme Court unambiguously held, "PAGA provides no mechanism to enable a court

6  to adjudicate non-individual PAGA claims once an individual claim has been

7  committed to a separate proceeding." *Id*. Thus, the "correct course is to dismiss

8  [Plaintiff's] remaining claims." *Id*. In accordance with *Viking River*'s directive, Aya

9  respectfully submits that Court must compel Plaintiff O'Dell's individual PAGA

10  claims to arbitration and *then* dismiss her individual ***and*** non-individual PAGA claims

11  for lack of standing. By its express terms, the Arbitration Agreement includes all

12  individual disputes for alleged Labor Code violations, and thus encompasses

13  Plaintiff's alleged Labor Code violations for PAGA civil penalties. Ex. 1, § 2. The

14  Agreement also contains an express waiver of non-individual claims:

15          **TO THE FULLEST EXTENT PERMITTED BY LAW, YOU AND
        AYA AGREE THAT NO CLAIM COVERED BY THIS**
16          **AGREEMENT MAY BE PURSUED AS A CLASS,
        COLLECTIVE, OR REPRESENTATIVE ACTION AND ALL**
17          **SUCH CLAIMS MUST BE PURSUED ONLY ON AN
        INDIVIDUAL BASIS.**
18

19  (Exhibit 1, § 5 (emphasis original).) Thus, under *Viking River*, Plaintiff O'Dell must

20  pursue all of her individual Labor Code claims in arbitration and, as a result, Plaintiff's

21  remaining, non-individual claims ***must be dismissed*** for lack of standing. *Viking River*,

22  142 S. Ct. at 1924-25.

23          Importantly, *Viking River* held that the "agency" aspect of PAGA was

24  unwaivable, meaning an arbitration agreement could not bar employees from bringing

25  PAGA claims, but it could bar them from bringing non-individual PAGA claims.

26  ───────────────
27  [6] In accordance with Viking River, at least one California trial court has ordered
     dismissal of the plaintiff's non-individual, representative PAGA claims against Aya
     in conjunction with the court's order compelling the Plaintiff's individual PAGA
28  claims to arbitration. RJN, Ex. 5.

*Viking River*, 142 S. Ct. at 1924-25. The arbitration agreement in *Viking River* purported to waive the employee's right to bring "representative" PAGA claims, which the Court held *could* be interpreted as waiving the employee's right to bring PAGA claims *at all*. *Id*. Nonetheless, the Court held any such *potential* wholesale waiver of PAGA claims could be severed while preserving the remainder of the agreement, which required arbitration of the employee's individual Labor Code claims. *Id*.

Here, the analysis is far simpler than that in *Viking River*. Unlike in *Viking River*, Plaintiff O'Dell's Arbitration Agreement helpfully clarifies that Plaintiff must bring all purported "representative" claims "only on an individual basis." Ex. 1, § 5. Thus, the Arbitration Agreement almost anticipated *Viking River* in that it did not proffer any language which could be interpreted as a waiver of Plaintiff's individual PAGA claim. Nevertheless, to the extent the Court determines the Arbitration Agreement could be read to waive PAGA claims outright (both individual and non-individual), it can follow the same course taken in *Viking River* by severing any such unenforceable waiver of individual PAGA claims under the Agreement's severance clause in section 7 of the Agreement. *Viking River*, 142 S. Ct. at 1924-25.

Aya contends no such severance is needed, given that the Agreement expressly allows Plaintiff O'Dell to pursue non-waivable, individual "representative" claims in arbitration. Accordingly, because Plaintiff's individual PAGA claims must be compelled to arbitration, the Court must dismiss Plaintiff's lawsuit for lack of standing.

## IV.   **CONCLUSION**

For the foregoing reasons, Aya respectfully requests the Court (1) compel Plaintiffs to arbitrate their individual claims against Aya, and (2) dismiss Plaintiffs' class, collective, and representative action, without prejudice, in accordance with Plaintiffs' Arbitration Agreements.

1   DATED: October 7, 2022     PROCOPIO, CORY, HARGREAVES &
                                          SAVITCH LLP

2

3

4                            By:  /s/ *Marie Burke Kenny*
                                   Marie Burke Kenny

5                                   Clint S. Engleson
                                   Ashley N. Fasano

6                                   Attorneys for Defendant
                                   AYA HEALTHCARE, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO COMPEL ARBITRATION/DISMISS ACTION
122757-00000040/6272170.4                                       '22CV1151 BEN BLM