# EXHIBIT 5

## BEFORE THE AMERICAN ARBITRATION ASSOCIATION

HOLLY ZIMMERMAN,                     )      **AAA Case No. 1-23-0002-5465**
                                     )
              Claimant,              )
                                     )      **REASONED RULING AND ORDER**
       v.                            )      **REGARDING UNCONSCIONABILITY**
                                     )      **AND ARBITRABILITY OF CLAIMS**
AYA HEALTHCARE, INC.                 )
                                     )
              Respondent.            )
                                     )
_____     )

### I. Procedural History

The scope of jurisdiction and jurisdiction for this matter arises from Claimant's First Amended Complaint filed September 27, 2022, in United States District Court for the Southern District of California, Case # 3:22-cv-01151-BEN-BLM, ("FAC") and The Honorable Roger Benitez, United States District Court Judge's April 27, 2023 Order Granting-In-Part [Respondent's] Motion to Compel Arbitration to determine the arbitrability of Plaintiff HOLLY ZIMMERMAN's ("Claimant" herein) claims pursuant to Delegation Clause of the Arbitration Agreement signed by Claimant with Respondent AYA HEALTHCARE, INC. ("Respondent" or "AYA" herein) in December, 2021 ("Court Order"), and Claimant's subsequent Demand for Arbitration filed June 7, 2023 with the American Arbitration Association ("AAA") to determine whether the Arbitration Agreement is enforceable or unenforceable as to Claimant's claims. The Demand for Arbitration requested a finding the Arbitration Agreement unenforceable "(1) because it is procedurally and substantively unconscionable and (2) fraudulently induced."

Appearing at the telephonic Scheduling Conference held December 4, 2023, for this arbitration were Attorneys J. Austin Moore, Esq. of Stueve Siegel Hanson, LLP for Claimant, and Ashley

Fasano, Esq. of Procopio, LLP for Respondent[1].  At this Conference, Counsel acknowledged the limited scope of jurisdiction for this arbitration is  to determine arbitrability of Claimant's claims and specifically whether the underlying Arbitration Agreement is enforceable as to Claimant's claims.  Counsel further agreed the arbitrability of this matter was a question of law.  A briefing and hearing schedule was adopted with input from Counsel, and half day hearing and oral argument on Zoom was requested by Counsel, scheduled and duly held April 11, 2024.  Appearing at the oral argument hearing held on Zoom were Attorneys J. Austin Moore, Esq. of Stueve Siegel Hanson, LLP and Jason S. Hartley, Esq. of Hartley LLP for Claimant and Marie Burke Kenny, Esq. of Procopio, LLP for Respondent.   At the conclusion of oral argument, Counsel agreed to provide simultaneous supplemental briefing regarding the effect of the "savings" clauses and "Severability" provision on unconscionability by April 22, 2024.

## II.  Factual Background

Claimant HOLLY ZIMMERMAN is a travel nurse and citizen of Florida employed by AYA to work a short-term assignment at a healthcare facility in New Jersey (Court Order, p.4, lns.17-22).  On December 22, 2021, Ms. Zimmerman electronically executed an Employment Agreement with AYA under which the work assignment was scheduled to last from January 18, 2022, through April 16, 2022, at base compensation rate of $85 per hour and overtime rate of $ 127.50 per hour, with a minimum of 48 hours per week (Claimant's Decl. in Support of Brief on Unconscionability,

---

[1] At the original Scheduling Conference in this matter held October 23, 2023, Counsel presented a threshold issue over whether pattern and practice discovery should be allowed by Claimant before the arbitrability of Claimant's claims under the Arbitration Agreement.  A meet and confer, briefing schedule for this threshold discovery issue, and oral argument hearing was then scheduled for  November 17, 2023.  Consistent with the previous ruling of The Hon. Roger Benitez in the Court Order Granting in part AYA's Motion To Compel Arbitration to determine arbitrability, the Arbitrator ruled after the November 17 oral argument that because there is to be no adjudication of merits of any of Claimant's claims, including Fraudulent Inducement, in this proceeding, and fraud was not alleged with respect to the execution of AYA's Arbitration Agreement, and further that the dispute arising after execution of the Arbitration Agreement and gravamen of claims concern the Employment Agreement itself, rather than the Arbitration Agreement, the pattern and practice discovery was not warranted in this limited proceeding which is solely to determine whether Claimant's claims are arbitrable and the Arbitration Agreement enforceable.

p.2, para. 6). Accepting this assignment required Claimant to travel from Florida to New Jersey and secure housing for the duration of the assignment. After signing the Employment Agreement, AYA sent Claimant a separate two-page Arbitration Agreement via DocuSign for Claimant to sign. Claimant understood signing this Arbitration Agreement was a condition of her employment with AYA, and signed the same via DocuSign on December 28, 2021.

About six weeks into her employment on this assignment with AYA, Claimant received notification from AYA that her compensation would be reduced for the duration of the assignment effective March 20, 2022 by approximately thirty five percent, with base pay reduced from $85 per hour to $56.50 per hour. Claimant provided two weeks' notice and resigned from the assignment effective March 18, 2022, as was her right under the At Will Employment Agreement. (Claimant's Decl. in Support, pg. 2, para.7, and Exhibits 1 and 4 to AYA's Opposition to Claimant's Discovery Demand dated November 8, 2023).

Claimant along with traveling nurse Plaintiffs Laura O'Dell, Hannah Bailey, and Lauren Miller filed the FAC on behalf of themselves and other similarly situated traveling nurses nine causes of action, including breach of contract, promissory estoppel, quasi-contract, fraudulent inducement, fraudulent concealment, negligent misrepresentation, violation of state wage payment laws, violation of the California unfair competition law and other California labor statues, unpaid overtime under the FLSA, and violation of state overtime statutes. In the Court Order issued April 27, 2023, granting-in-part AYA's Motion to Compel Arbitration, The Honorable District Court Judge Roger Benitez stayed the FAC and directed the parties to seek a determination in Arbitration from an Arbitrator as to whether the Claimant's claims in the FAC are arbitrable and the Arbitration Agreement enforceable as to those claims.

### III. QUESTION PRESENTED

The sole question presented in the arbitration briefing submitted is whether the Arbitration Agreement in place between Claimant and Respondent is enforceable as to claims in Claimant's First Amended Complaint presently stayed, or unenforceable on grounds of unconscionability. In the arbitration briefing, Claimant argues the Arbitration Agreement between the parties is Unconscionable, and is permeated with unconscionability, and therefore unenforceable in full. Respondent argues the Arbitration Agreement is "Conscionable" and further that even if any parts of the Agreement are Unconscionable the Agreement is not permeated by unconscionability, and finally any parts deemed Unconscionable should be severed in a manner that keeps the remainder of the Agreement in tact with the claims remaining arbitrable and subject to arbitration. Fraudulent inducement was not raised in the briefing as grounds for unenforceability and is thus no longer at issue in this proceeding.

## IV.  GOVERNING LAW

In the Court Order referring the determination of arbitrability underlying this Arbitration, the Court noted federal substantive law governs the scope of an arbitration agreement, while state law governs issues pertaining to validity and enforceability of an agreement to arbitrate (See Court Order, p. 8 lns. 3-10, citations omitted).  The Court further noted that both parties referenced California law in the Motion to Compel Arbitration, and as such, stated the Court will apply California law to contractual issues (Court Order, p. 8, lns. 14-16).  In this proceeding, Claimant's Brief on Unconscionability asserts at footnote 2, p. 5 there is no dispute that California law applies to AYA's Arbitration Agreement as AYA argued in its Motion to Compel Arbitration that it was enforceable under California Law and the Agreement itself incorporates the California Arbitration Act.  AYA did not oppose this point.

The Federal Arbitration Act ("FAA") provides arbitration agreements "shall be valid, irrevocable and enforceable save upon grounds that exist at law or in equity for the revocation of a contract," 9 U.S.C.§ 2. As a result, "the existence of a valid agreement to arbitrate is determined by reference to state law principles regarding the formation, revocation and enforceability of contracts generally." [See *Kinney v. United HealthCare Servs., Inc.* 70 Cal. App. 4th 1322, 1327-28]. Similar to the FAA, the California Arbitration Act ("CAA") provides "A written agreement to submit to arbitration…. is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." Cal. Code of Civil Proc. § 1281. Moreover, in interpreting this same language set forth in the FAA, *Id.* § 2, the United States Supreme Court has recognized contract defenses such as fraud, duress, or unconscionability may be applied to invalidate arbitration agreements. *Doctor's Associates, Inc. v. Casarotto* (1996) 517 U.S.681, 687.

When determining the rights of parties to enforce an arbitration agreement within the scope of the FAA, "…courts apply state contract law while giving due regard to the federal policy favoring arbitration." *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC (2012)* 55 Cal. 4th 223, 236. Under California law, "the party opposing arbitration bears the burden of proving any defense, such as unconscionability" *Id.*, at 223. See also Cal. Code of Civil Proc.§ 1281.2. Because of California's public policy in favor of arbitration, any doubts regarding the validity of an arbitration agreement are resolved in favor of arbitration. *Armendariz v. Foundation Health Psychcare Service, Inc.* (2000) 24 Cal. 4th 83, 97. Thus, Claimant has the burden of proving whether any unconscionability found in the Arbitration Agreement should render it unenforceable.

## V.  UNDER CALIFORNIA LAW AND IN MOST JURISDICTIONS AN EMPLOYER IMPOSING MANDATORY ARBITRATION MAY NOT REQUIRE AN EMPLOYEE TO BEAR EXPENSES THE EMPLYOYEE WOULD NOT BE FORCED TO BEAR IN BRINGING AN ACTION IN COURT

It is well settled under California law and in a majority of jurisdictions that " when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court." *Armendariz*, supra, at pp.110-111.

## VI.  UNCONSCIONABILITY MAY RENDER AN ARBITRATION AGREEMENT UNENFORCEABLE

Cal. Code of Civil Proc §1670.5(a) states:

"If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause so as to avoid any unconscionable result."

Thus, a court may refuse to enforce a contract it determines was unconscionable at the time it was made.  To invalidate a contract and more specifically, an arbitration agreement, or one of its individual terms therein as unconscionable, there must be both procedural and substantive elements of unconscionability present.  *Armendariz v. Foundation Health Psychcare Services, Inc. (2000)* 24 Cal.4th, 83,114.  "[U]nconsionability has both a procedural and substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Armendariz,* supra, at 114, quoting from *A & M Produce Co. v. FMC Corp.,* (1982) 135 Cal. App. 3d 473, at pp. 486-487.  "Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves." *Armendariz,* supra, at 114 (quoting 15 Williston on Contracts (3d.ed. 1972 § 1763A,pp. 226-227).

"In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable and vice versa." *Armendariz,* supra, at 114.

Claimant argues the Arbitration Agreement ("Agreement") is procedurally and substantively unconscionable for several reasons, and further that unconscionable provisions permeate the Agreement and are thus not properly severable. Respondent argues the Agreement is procedurally and substantively conscionable, is not permeated with unconscionability, and any clauses found to be unconscionable must be severed to allow the Agreement to be otherwise enforced. AYA first argues multiple California and federal trial courts have enforced this exact Agreement (AYA's Opposition to Claimant's Brief on Unconscionability, hereafter "Opposition Brief", p. 7), attaching six separate Orders, Minute Orders, or Tentative Rulings ( Ex.s B-G. to Attorney Fasano Decl.). However, it appears none of the six cases AYA attaches considered whether the Agreement is unconscionable under California law. The lone federal case attached is the stayed federal court action underlying this arbitration. The other five orders or minute orders attached were from various California Superior Courts, none of which involved the issue and challenge raised here over unconscionability. Moreover, unlike this proceeding where Claimant is a citizen of Florida who temporarily worked for AYA in New Jersey, all the California Superior Court matters arose over work performed in California so the issue of unconscionability of venue provision (requiring arbitration in San Diego or to extent required by law, the County work was performed in) would also be distinguishable on that basis. From the underlying Court Order and FAC here it appears only Claimant and Ms. O'Dell worked for AYA outside of California in the underlying federal action and lone federal case cited by AYA. Now we turn to analyzing whether there are elements of procedural unconscionability in the Agreement.

## VII.  ANALYSIS  OF PROCEDURAL UNCONSCIONABILITY WITHIN THE ARBITRATION AGREEMENT

A.  <u>Adhesion and Oppression.</u>

7

The procedural element of unconscionability focuses on "oppression or surprise." *Armendariz,* supra, at 113. "The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Id.*, at 113, quoting *Neal v. State Farm Ins. Cos.* (1961) 188 Cal. App. 2d 690, 694. The procedural element of unconscionability focuses on "oppression or surprise due to unequal bargaining power." *Pinnacle,* supra, at 246. The unconscionability analysis "begins with an inquiry into whether the contract is one of adhesion" and a finding of a contract of adhesion amounts to a finding of at least minimal procedural unconscionability calling for further unconscionability analysis. *Armendariz,* supra, pp.113-115.

AYA does not dispute Claimant's contention that signing the Arbitration Agreement was a condition of temporary employment. Indeed, AYA's offer of employment letter dated December 22, 2021 signed by Claimant called for all claims arising from employment with AYA to be subject to arbitration. Sometime shortly after Claimant signed AYA's offer of employment letter[2], AYA presented the Arbitration Agreement to Claimant via DocuSign for electronic signature. The Agreement is on a standardized form with a revised date of "2/2016" and provides in Section 6 "This Agreement may only be modified by a writing signed by the CEO of Aya." Claimant testified in her Declaration in Support of Brief on Unconscionability she was presented with the Agreement after signing the offer of employment letter via DocuSign, with an electronic link to access and electronically sign the "prepopulated terms" of the Agreement and add her electronic signature at the end of it (ZIMMERMAN Declaration in Support of Brief on Unconscionability,

---

[2] It is not clear from the record precisely when AYA presented Claimant with the Arbitration Agreement to sign. Claimant's Declaration establishes it was sometime after she signed AYA's offer of employment letter December 22, 2021 (ZIMMERMAN Decl. in Support of Brief on Unconscionability, p.1.para. 4.) This question was raised at the Hearing without definitive answer beyond Claimant's Declaration testimony (Rptrs.Transcript, pp. 42-44,lns. 25-7).

hereafter "ZIMMERMAN Decl.", para. 4, pp. 1-2). Claimant further testified she was not presented with an option to edit or revise the Agreement, and further that she understood and believed she was required to electronically sign the Agreement as a condition of her employment with AYA (ZIMMERMAN Decl. para. 4, p. 2). In short, the Agreement was presented on a take it or leave it basis, as a necessary condition for Claimant to obtain the temporary work assignment.

AYA argues in its Opposition Brief essentially that since the font in the Agreement was full sized, and Claimant and all employees are asked in bold font to read the document carefully and acknowledge having been given the opportunity to discuss it with legal counsel that the Agreement is procedurally conscionable. Claimant does not take issue with the font size, or the legibility of the Agreement. Claimant did testify she is not a lawyer, has no legal training and did not hire a lawyer to assist her in reviewing the Agreement and asserts it would not have been reasonable to do so given the Agreement concerned a short-term contract. (ZIMMERMAN Decl. para.5, p.2).

AYA also argues demand for travel nurses was significant in the COVID pandemic when this Agreement was signed. While this may in fact be so, there is no evidence in the record to support this contention. Under the circumstances and competent evidence presented, the Agreement is a quintessential adhesion contract and thus presents the minimum necessary element of oppression and procedural unconscionability to merit further unconscionability analysis.

B. Surprise.

Next, we turn to Claimant's argument advanced in both the briefing and hearing that the Agreement's provision regarding arbitration costs and fees is so jargonistic as to be "indecipherable to a layperson and most lawyers as well, thereby presenting a procedural element of "surprise" (Claimant's Brief on Unconscionability, "Claimants Brief", p. 8). The arbitration cost provision provides:

"For claims determined to involve non-waivable statutory rights and to the extent required by law, You will not be required to pay any administrative fees or costs, including arbitrator's fees, beyond the fees and costs which would have been incurred by you, if any, had the dispute arbitrated under this provision been litigated in state or federal court."

This is the only provision within the Agreement discussing arbitration fees and costs. With respect to the first and qualifying part of this arbitration cost provision "For claims determined to involve non-waivable statutory rights and to the extent required by law…", Claimant testified by Declaration filed with her Opening Brief that "At the time I signed the Agreement and even today, I do not know what constitutes an 'unwaivable statutory right' or what the law does or does not require as to an employee's payment of arbitration costs. I would not be willing to initiate arbitration if there were any possibility that I would be responsible for paying some or all of the arbitrator's fees, which could exceed potential damages." (Zimmerman Decl., p. 3, para. 10). AYA argues in Opposition that this cost provision "clearly articulates in plain English that Claimant will not be required to pay any costs or fees in arbitration in excess of the costs she would have been required to pay if she had pursued her legal claims in court." Interestingly, AYA chose to bold and underline most of the latter part of this cost provision while not adding emphasis to the first and qualifying part of the arbitration cost provision "For claims determined to involve non-waivable statutory rights and to the extent required by law," (AYA Opposition Brief, p. 12, lns. 13-19). Unfortunately, this is the problematic part of the cost provision language.[3] This qualifying language is, at best, confusing, and suggests whether a Claimant will have to pay for some of the arbitration fees and costs depends in part on what claims are actually asserted.

---

[3] In AYA's Supplemental Brief on The Savings and Severability Clauses ("AYA's Supplemental Brief) AYA changes its position taken in the Opposition Brief that this arbitration cost provision "clearly articulates in plain English that Claimant will not be required to pay any fees or costs in excess of the costs or fees she would have been required to pay if she pursued her legal claims in court" acknowledging for the first time in this proceeding this cost provision is unclear and warrants severance stating "Additionally, severance of the phrase '[F]or claims to be determined to involve non-waivable statutory rights' from the Cost Provision would clarify the original intent of the Arbitration Agreement, that Claimant not be responsible to pay any costs of arbitration beyond those she would be required to pay if she was in court." (AYA's Supplemental Brief, p. 9, lns. 22-26). Severance of this arbitration cost provision is analyzed infra.

Claimant's counsel argued at the hearing if AYA wanted to be clear the Agreement meets the requirements of *Armendariz* in California and the majority of jurisdictions that an employer cannot compel arbitration with employees in a manner that could result in employees being forced to bear costs he or she would not be required to bear in bringing the same action in court, AYA could do so in nine simple words; "AYA will pay for the cost of the arbitration" (Reporters transcript "RT herein" p. 22, lns. 18-21.)   In AYA's Supplemental Brief on Savings and Severability Clauses ("AYA's Supplemental Brief") AYA acknowledges the arbitration cost provision is unclear as written and warrants severance stating "Additionally, severance of the phrase '[F]or claims to be determined to involve non-waivable statutory rights' from the Cost Provision would clarify the original intent of the Arbitration Agreement, that Claimant not be responsible to pay any costs of arbitration beyond those she would be required to pay if she was in court." (AYA's Supplemental Brief, p. 9, lns. 22-26).

As written, the arbitration cost provision of the Agreement is far from clear and presents significant element of surprise and procedural unconscionability.   At the time Claimant electronically signed the Agreement as she believed was required to do after accepting AYA's December 22, 2021 offer letter of temporary employment for a thirteen week assignment in New Jersey (ZIMMERMAN Decl. p. 2, para. 4), Claimant did not know what constitutes a "non-waivable statutory right", or to what extent the law would not require her to pay arbitrator's fees on future claims raised (ZIMMERMAN Decl. p. 3, para. 10).   While the Agreement contains a boilerplate acknowledgment that provides in part for the person signing "You acknowledge and agree that You have carefully read this Agreement, you understand it, and that You knowingly…agree to it" it is highly unlikely that any potential temporary health care worker who is not also an experienced employment lawyer would know what a "non-waivable statutory right"

means, or what impact "to the extent required by law" means as far as arbitration fees and costs are concerned. Moreover, expecting temporary employees such as Claimant, a citizen of Florida moving to New Jersey for temporary work with AYA, to review and discuss this Agreement with an employment lawyer to explain the full potential effect and meaning of these terms, which themselves have been developed through decades of case law may not always be practical or reasonable for accepting temporary work assignments.

Under the totality of circumstances presented, I find this sole arbitration cost provision as written creates and raises doubts about arbitration fees and costs that may arise if an employee chooses to assert legal rights down the road, manifesting "surprise" in a manner that is procedurally unconscionable, and has a potential chilling effect on employees asserting their legal rights for fear of incurring unspecified costs to do the same. This procedural unconscionability of the arbitration cost provision as written in the Agreement is well established both by how the provision reads and how it was read and not understood by Claimant (Zimmerman Decl. p. 3, para. 10) who electronically signed the Agreement as she believed was required to after accepting the employment letter offer for a thirteen week assignment from AYA to work in New Jersey. It also fails to meet the requirement for arbitration agreements established by the California Supreme Court in *Armendariz* that an employee cannot be required to bear "any type of expense" that would not be required in court. *Armendariz,* supra, at 111.

Claimant argues the Agreement contains a further element of surprise and procedural unconscionability in that the Agreement fails to identify an arbitration tribunal or provide a roadmap on how to initiate arbitration, or governing arbitration rules. AYA argues in opposition this does not constitute "surprise", citing *Davis v. Kozak* (2020) (finding no element of "surprise" where the arbitration agreement failed to identify a specific arbitration provider). AYA further

12

points out that Section 3 of the Agreement identifies the applicable set of rules as the FAA or, in the alternative, the CAA providing in relevant part: "The binding arbitration and selection of a neutral arbitrator will be conducted in conformity with the procedures of the Federal Arbitration Act ( 9 U.S.C. §1 et. seq) and the California Arbitration Act (Cal. Code Civ.Proc.§1280 et. seq.)" AYA further cites *Alvarez v. Altamed Health Services Corp.* (2021) 60 Cal. App. 5th 572, 590 and *Fuentes v. Empire Nissan, Inc.* (2023) 90 Cal. App. 5th 919, 933-34 as recent authority for the proposition that the fact an arbitration agreement does not explain how to initiate an arbitration, or identify applicable rules beyond being conducted in accordance with the FAA or CAA does not constitute "surprise". Only where arbitration rules contain an element of substantive unconscionability would the failure to attach such rules add a level of procedural unconscionability. *Baltazar v. Forever 21 Inc*., (2016) 62 Cal. 4th 1237, 1246. See also *Alvarez, supra,* at 590. Accordingly, in light of the fact the Agreement expressly incorporates selecting an arbitrator  and arbitration being conducted in conformity with the FAA and the CAA, I find no additional element of surprise or procedural unconscionability in the Agreement's guidance on arbitration tribunal, how to initiate arbitration, or how to select an arbitrator.

The venue provision states:

"The arbitration will take place in San Diego, California, *or to the extent required by law*, the arbitration may take place in the County in which You were employed by Aya." (*Emphasis added.*)

Claimant argues this venue provision is unfair and substantively unconscionable for imposing a burden of requiring an arbitration across the country from where she lives or worked.  As will be discussed more fully in **Section VIII**, if the so called "savings clause" *italized* above is deemed to "save" this provision, it would still be procedurally unconscionable since a layperson would not be expected to know what "or to the extent required by law" means here or whether the law requires the arbitration to take place in San Diego or New Jersey where Claimant was employed.

To summarize, the elements of procedural unconscionability found in the Agreement are as follows. The Agreement is an adhesion contract that was presented in standardized form, on a take it or leave it basis, as a condition of employment.  Thus, it presents a minimum amount of "oppression" and procedural unconscionability warranting further review of unconscionability. The Agreement also contains a significant element of "surprise" and procedural unconscionability in the sole arbitration cost provision and sentence which begins with unclear qualifying language "For claims determined to involve non-waivable statutory rights and to the extent required by law …." suggesting at least a possibility to a lay person health care worker and non-employment lawyer, citizen of Florida that depending on what type of claim might arise in the course of the temporary work assignment, arbitration fees and costs could be incurred by the employee in the event claims arise depending on what claims might ultimately be asserted.  Finally, there may be an additional element of "surprise" in the venue provision if the savings clause therein is applied, as a layperson would not be expected to know what the law requires regarding venue.

## VIII.  ANALYSIS OF SUBSTANTIVE UNCONSCIONABILITY IN THE  AGREEMENT

A.  The Law on What Constitutes Substantive Unconscionability.

"Substantive unconscionability addresses the fairness of the term in dispute." *Pokorny v.Quixtar, Inc.* (9th Cir. 2010) 601 F. 3d 987,997-998 (quoting *Sztelea v. Discover Bank* (2002) 97 Cal. App. 4th 1094, 1101).  Substantive unconscionability focuses on the actual terms of the agreement and evaluates whether they create "overly harsh" or "one-sided" results. *Armendariz v. Foundation Health Psychare Services, Inc.* (2000) 24 Cal. 4th 83, 114.  "The substantive fairness of [a] particular agreement must be considered in terms of what [the employee] gave up and what he received in return." *OTO, L.L.C. v. Kho* (2019) 8 Cal. 5th 111, 136.

Claimant argues the Agreement "is permeated with unconscionable terms that violate California Law and act collectively to erect barriers to an employee's pursuit of her wage and labor rights, chilling its employees from seeking relief." (Claimant's Brief, p. 10). Claimant essentially contends three categories of provisions that include a total of five provisions are substantively unconscionable. These are discussed below in the order they appear in the Agreement.

B. The Pre-Arbitration provisions.

The Agreement provides both parties "agree to make good faith efforts to resolve any dispute on an informal basis." If those efforts fail to resolve the dispute the Agreement then requires mediation, and then binding arbitration. Claimant argues these requirements pose additional barriers to assertion of her legal rights. Since Claimant would not otherwise be required to participate in "good faith efforts" to resolve informally, or participate in mediation before filing a lawsuit in court, these requirements do in fact present additional steps or barriers to Claimant's assertion of her statutory rights, though that in itself does not make these requirements "unfair" or substantively unconscionable. Claimant further argues that while completing the pre-arbitration attempts at dispute resolution will take time, the Agreement does not provide for any tolling of the statute of limitations for time spent complying with these requirements. Claimant cites *MacClelland v. Cellco P'ship* (N.D. Cal. 2022) 609 F. Supp. 3d 1024, 1042 for the proposition that Courts have recognized the combination of pre-arbitration conditions and the absence of tolling provision can obstruct claims from being timely heard, contributing to the overall unfairness of an agreement. While theoretically true, the facts in *MacClelland* are much different from those here. In *MacClelland*, the arbitration agreement required consumers to provide a notice of claim within 180 days and under the Mass Arbitration Provision there, consumers were not allowed to file their claims in arbitration until all preceding tranches were adjudicated. Those in

15

queue who were unable to file within the limitations period would be time barred. The clause contained no tolling provision. The *MacClelland* court held that forfeiture of claimants' entire legal rights was against public policy.

California courts have held that a mutual requirement to satisfy internal grievance procedures before arbitration does not render an agreement substantively unconscionable. *Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 710; *Nguyen v. Applied Medical Resources Corp.* (2016) 4 Cal.App.5th 232, 254. Quoting the *Serpa* case, the Ninth Circuit recently held that specifically spelled out "[p]re-arbitration procedures are commonplace and can be both 'reasonable and laudable.'" *Bielski v. Coinbase, Inc.* (9th Cir., 2023) 87 F. 4th 1003, 1014 (quoting *Serpa*, supra, at 710).

Based on the foregoing case authorities, the pre-arbitration requirement that both parties participate in "good faith efforts to resolve" the dispute, prior to commencing arbitration does not constitute substantive unconscionability. However, in the context here of temporary employment far away from Claimant's state of residence, the compulsory mediation clause requiring Claimant to participate in a mediation even after the temporary employment has ended before asserting any statutory and legal rights by filing arbitration presents a different concern unless the Agreement makes clear Claimant would not have to pay for the mediation, and perhaps not even have to travel to a mediation, at least after her temporary out of state work in New Jersey was completed. The compulsory mediation clause here does just the opposite by providing "If efforts at informal resolution fail, the Parties agree to participate in a non-binding mediation prior to commencement of arbitration with costs of mediation split between the parties unless otherwise required by law."

Even if saved by the so called "savings clause" and severance AYA proposes and is discussed further in the **Sections IX** and **X** infra, requiring an out of state temporary employee such as

Claimant to participate in compulsory mediation before a filing for arbitration is potentially an unfair barrier to assertion of her statutory or employment rights in the context here, after the temporary work assignment has ended. Claimant is domiciled one thousand or more miles from where she worked temporarily for AYA in New Jersey[4]. Accordingly, as written, under the totality of circumstances, and in absence of language indicating AYA will pay for the required mediation, and in absence of Agreement language indicating AYA will be flexible as to venue where the compulsory mediation is held after Claimant completed her temporary work assignment in New Jersey, the compulsory mediation clause is somewhat unfair to Claimant as a burdensome, potentially unclear barrier to asserting any legal rights, presenting a potential minor element of procedural if not substantive unconscionability[5].

C.  The Cost Provisions.

In the seminal case *Armendariz v. Foundation Heath Psychare Services, Inc.* (2000) 24 Cal. 4th 83, 110, 111 discussed previously in **Section V.** herein, the California Supreme Court ruled that in arbitration agreements imposed as a mandatory condition of employment, employers shall not require employees to bear any expense beyond what an employee would bear if free to file an action in court stating in relevant part:

"[C]onsistent with the majority of jurisdictions to consider this issue, we conclude that when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court." *Id.* 111.

---

[4] There is no indication in the Agreement where the compulsory mediation is to occur, or whether it could occur virtually. Claimant cites *Navas v. Fresh Venture Foods, LLC,*(2022) 85 Cal. App. 5th 626, 636, for the general proposition undefined or undescribed pre-arbitration requirements may amount to improper and unconscionable barriers for an employee's assertion of her statutory rights (Claimant's Reply Brief, p.6). While *Navas* does not render the "good faith efforts to resolve any dispute on an informal basis" improper or substantively unconscionable, and does not specifically address a compulsory mediation clause, it did rule that where internal complaint (pre-arbitration) procedures are not described an employee did not know what they were agreeing to. (Citing *OTO,* supra, 8 Cal. 5th at 136).

[5] AYA notes in footnote 1 of its Opp. Brief, p. 4 that it never specifically sought to enforce this compulsory mediation clause of the Agreement. While this is to AYA's counsel's credit and will be discussed further in the next sections, it does not change the unconscionability analysis of the Agreement as written and presented to Claimant for signature.

The *Armendariz* Court noted that it was not simply the actual imposition of such additional costs on a claimant that the Court found problematic, but the deterrence or chilling effect which the risk the claimant may have to bear substantial costs. The Court stated:

"It is not only the costs imposed on the claimant but the risk that the claimant may have to bear substantial costs that deters the exercise of the constitutional right of due process. (*California Teachers Assn.,* supra, 20 Cal. 4th at pp. 357-358.) So with arbitration of statutory claims; if it is possible that the employee will be charged substantial forum costs, it is an insufficient judicial response to hold that he or she may be able to cancel these costs at the end of the process through judicial review. Such a system still poses a significant risk that employees will have to bear large costs to vindicate their statutory rights against workplace discrimination, and therefore chills the exercise of that right." *Id.*, at 110.

See also *Parada v. Superior Ct.* (2009) 176 Cal. App. 4th 1554, 1584 "If the provision, as drafted, would deter potential litigants, then it is unenforceable." (citation omitted). Thus, it is well-settled "imposing arbitration expenses on an employee that he would not otherwise bear in federal court is unconscionable regardless of his ability to pay." *Lim v. TForce Logistics, LLC,* (2021). See also *Shahtout by and through Shahtout v. California* (2022) 562 F.Supp. 3d 913,924-925 (finding requirement that parties split costs of mediation and arbitration both substantively unconscionable under California law).

Here, the mediation fee-splitting clause in the Agreement calls for a compulsory mediation before commencing arbitration "with costs of mediation split by the parties unless otherwise required by law". Under *Armendariz*, supra, and its progeny, this type of expense for a mandatory mediation imposed by an arbitration agreement that is a condition of employment has been deemed unenforceable as unfair, substantively unconscionable, and prohibited for well over twenty years in California. The "mere inclusion of the costs provision in the arbitration agreement produces an unacceptable chilling effect" and is thus substantively unconscionable. *Martinez v. Master Protection Corp.* (2004) 118 Cal.App.4th 107, 116-117. See also *Lhotka v. Geographic*

18

*Expeditions, Inc.* (2010) 181 Cal.App. 4ᵗʰ 816, 826 (requirement that claimants pay half of all mediation fees in a customer contract contributed to unconscionability of entire agreement).

Moreover, Claimant testified the mediation fee-splitting clause here had a chilling effect on her to the point she would not have been willing to incur costs of a mediator before initiating arbitration in this matter (ZIMMERMAN Decl., p. 3 para. 9). Nor is it reasonable to expect Claimant, a layperson and citizen of Florida, accepting a temporary work assignment in New Jersey to know what the law requires concerning mandatory employment mediation and mediation fee-splitting in the context of signing a mandatory arbitration agreement.

AYA's offer to the pay for the entire cost of a mediation after the original filing of the underlying action in Federal Court[6] does not change the unconscionability analysis and question presented here. While this offer reflects well on AYA's counsel, it does not change the way the mediation fee-splitting clause appears in the Agreement. An employer's "after-the-fact expression of willingness to amend the arbitration agreement to conform to law is ineffective" *Martinez v. Master Protection Corporation* (2004) 118 Cal. App. 4ᵗʰ 107, 116-117. *Parada v. Superior Court* (2009) 176 Cal.App.4ᵗʰ 1554, 1584.

AYA argues the clause in the Agreement requiring parties "to participate in  non-binding mediation prior to commencing arbitration with costs of mediation split by the parties unless otherwise required by law" means that Claimant is not required to pay any fees for mediation, and is therefore consistent with *Armendariz.* However,  the Agreement simply does not say that. A lay person domiciled in Florida and accepting temporary work with AYA in New Jersey would not know about *Armendariz* requirements, or the law regarding cost-splitting of compulsory

---

[6] AYA references a  meet and confer letter sent by AYA's Counsel to Claimant's Counsel August 24, 2022, after filing of the underlying lawsuit, where AYA requested  voluntary dismissal of the action and submission to arbitration along with an offer to pay for the entire cost of the pre-arbitration mediation called for in the Agreement.

mediation in the context of an arbitration agreement.  Moreover, it is  the chilling effect of this type of cost-splitting provision the *Armendariz* court and its progeny are so concerned about in prohibiting such terms as in this mandatory mediation cost-splitting provision of this Agreement. Whether this fee-splitting provision is effectively "saved" by the clause "unless otherwise permitted by law" is analyzed in **Section IX** infra.  The chilling effect created by the mediation cost-splitting clause in this Agreement requiring mediation before being able to file for arbitration is most unfair to Claimant and presents an element of substantive unconscionability.

   D.  The Venue Provision.

   The Agreement states:

"The arbitration will take place in San Diego, California, or to the extent required by law the arbitration may take place in the County in which You were employed by Aya."

   Being domiciled in Florida, Claimant argues this venue provision creates another hardship to have to travel across country and incur expensive travel for dispute adjudication citing *Lhotka v. Geographic Expeditions, Inc.* (2010) a consumer case holding a requirement that mediation and arbitration take place in defendant company's choice of venue compounded other one-sided burdens.  AYA argues *Lhotka* is distinguishable because the Court concluded the one-sided provisions were "compounded" by the requirement to arbitrate in California, where the consumers never lived or traveled, and the arbitration agreement did not contain a "savings" clause as the Agreement does here (AYA Opposition Brief, p. 19, lns. 1-4)[7].  Here, Claimant lives in Florida.

_____

[7] AYA also argues in passing that virtual arbitrations have become increasingly standard and any inconvenience to Claimant can be mitigated.  However, this is clearly not written or provided for anywhere in the signed Agreement and is thus beyond the question presented here of whether the Agreement is unconscionable as written at the time it was signed.  Furthermore, the Agreement was presented by AYA to Claimant to sign as written in December, 2021, more than eighteen months after the COVID pandemic started.  While such a good faith post-hoc offer AYA advances here as to virtual arbitrations is commendable, it does not change what the Agreement states.  At the original Scheduling Conference held in this matter October 23, 2023 AYA initially opposed a virtual hearing for this arbitration proceeding before the Scheduling Conference was continued to December, 4, 2023, to allow for briefing and hearing on pattern and practice discovery.   After the November 17, 2023 ruling denying Claimant's motion for pattern and

The effect of AYA's "savings clauses" are analyzed in the next section (**IX**). As noted earlier even if the venue provision is deemed saved by the clause "or to the extent required by law," the provision manifests an element of procedural unconscionability to the extent Claimant cannot as a layperson be reasonably presumed to understand what this so-called savings clause means here.

Because the venue provision on its face adds another burden and expense to Claimant to travel across the country, after already being required to participate in informal dispute resolution efforts, and a compulsory mediation before being able to assert any legal rights in arbitration from temporary employment, it is also unfair and substantively unconscionable to Claimant unless deemed "saved" by the "savings clause". The effect of each of AYA's "savings clauses" in the Agreement are considered and analyzed next.

### IX.  ANALYSIS OF THE EFFECT OF THE "SAVINGS CLAUSES" ON THE UNCONSCIONABLE PROVISIONS IN THE AGREEMENT

AYA argues that the Agreement's cost-splitting requirement for mediation, which is required in the Agreement before an employee may file for any adjudication of rights in arbitration is saved from unconscionability and illegality by the phrase "unless otherwise required by law". This argument for use of similar "savings clause" language in the context of otherwise unconscionable contractual provisions has been rejected by California courts, including the California Supreme Court, on multiple occasions. In the *OTO, L.L.C. v. Kho*, (2019) 8 Cal. 5th 111, the California Supreme Court considered similar qualifying savings clause language. The employment arbitration agreement there adopted Code of Civil Procedure § 1284.2 requiring "each party to the arbitration shall pay his pro rata share of the expenses and fees of the neutral arbitrator." The agreement included qualifying savings language stating "If CCP § 1284.2 conflicts with other

---

practice discovery in this limited proceeding, the parties stipulated and proposed having the oral argument hearing in this limited proceeding to be heard virtually at the December 4, 2023 Scheduling Conference.

substantive provisions or controlling case law, the allocation of costs and arbitrator fees shall be governed by said statutory provisions or controlling case law instead of CCP § 1284.2." *Id.* at 128.

As AYA argues here, the employer, One Toyota, argued the qualifying language there "saved" the agreement from being unconscionable under *Armendariz*, which held that CCP §1284.2 was enforceable in employment disputes. The *OTO, L.L.C.* Court soundly rejected this stating:

"Although the agreement anticipates that the "controlling case law" of *Armendariz* would prevail over the statutory default rule, One Toyota's obligation to pay arbitration-related costs would not be evident to anyone without legal knowledge or access to the relevant authorities. It is difficult to envision that Kho would have had any idea what the cited code section says or that a 13-year old case creates a relevant exception to it. This example illustrates the difficulty a layperson would have in deciphering key terms. It would have been nearly impossible to understand the contract's meaning without legal training and access to the many statutes it references. Kho had neither. Under these circumstances, Kho's signature attesting to have read and understood the agreement appears formulaic rather than informed. We agree with the Court of Appeal that the agreement appears to have been drafted with an aim to thwart, rather than promote understanding." *OTO, L.LC.,*supra, at 128, 129.

Instead of "saving" the agreement, the Court found that the language shifted a burden to the employee to perform a legal analysis that was costly and procedurally unconscionable. Because achieving an understanding of the arbitration agreement would require the assistance of counsel, the agreement was also substantively unconscionable. The Court explained:

"Because the complexity of One Toyota's arbitral process effectively requires that employees hire counsel, there is also force to Kho's argument that the procedure is not an affordable option. An arbitration procedure may not impose such costs or risks on wage claimants that it 'effectively blocks every forum for the redress of disputes, including arbitration itself.'" *Id.*, at 134. (Citation omitted).

In *Hasty v. American Automobile Assn.* (2023) 98 Cal. App. 5th 1041, 1062, the California Court of Appeal considered the effect of "savings" language "to the extent permitted by law", nearly identical to the sole arbitration cost provision savings clause here which has the additional word "or" in front of "to the extent". *Hasty* involved consideration of an arbitration agreement's confidentiality provision that purported to only apply "to the extent permitted by law. As in *OTO,*

supra, the Court in *Hasty* rejected the contention and premise that this nearly identical qualifying language "saved" the clause from being unconscionable ruling stating: "The fact that the provision applies to only the 'extent permitted by law' does not save it because the employee would have no way of knowing what would be covered or not covered by this provision." *Hasty,* at 1062. As in *Hasty*, Claimant submitted declaration testimony here that she does not know what the law allows or disallows as to payment of arbitration costs. (ZIMMERMAN Decl. p. 3, para. 10). See also *Edwards v. Arthur Andersen LLP* (2008) 44 Cal. 4th 937, 955 (rejecting idea that "savings" language could have corrected overbroad release, explaining "[W]e fail to see what difference this would make. The phrase 'except as otherwise prohibited by law' is vague and essentially informs the employee of nothing.")

The idea that an unconscionable provision is "saved" because it is unconscionable and illegal at the time it was drafted has been rejected in other contexts involving employment arbitration agreement. As one court explained, such an argument amounts to a claim the provision "isn't unconscionable because it's illegal, hence, unenforceable. To state the premise is to refute [employer defendant's] logic." *Samaniego v. Empire Today, LLC* (2012) 205 Cal. App. 4th 1138, 1147 (Rejecting argument that an attorney's fees fee shifting provision barred by the Labor Code did not render the provision unconscionable).

Together these cases stand as authority for the proposition that where substantively unconscionable provisions are placed in employment arbitration agreements, adding qualifying language such as "unless otherwise required by law" or "and to the extent required by law" presented in the two cost provisions of this Agreement are too complex for an employee to understand without assistance of legal counsel, and thus increase procedural unconscionability in the Agreement rather than save the Agreement from substantively unfair and unconscionable

provisions. They do nothing to decrease or minimize the chilling effect on assertion of legal rights in workplace disputes that unfair cost provisions or other unfairly burdensome provisions within an arbitration agreement present and which the *Armendariz* court was so concerning prohibiting. See also *MacClelland v. Cellco P'ship* (2022) 609 F. Supp. 3d 1024, 1041. Next, we turn to consideration *whether* unconscionable provisions should be severed pursuant to the Agreement's Severability provision.

## X.  ANALYIS OF WHETHER SEVERANCE OF THE UNCONSCIONABLE PROVISIONS IS APPROPRIATE

In *Armendariz*, the California Supreme Court observed Civil Code section 1670.5, supra, makes the decision on whether to sever a term that is found to be  unconscionable at the time the contract was made, or void the entire contract completely a matter of judicial discretion "so as to avoid any unconscionable result." *Armendariz,* at 114. The Court further noted the legislative history to this provision before concluding the statute contemplates voiding a contract when it is "permeated" by unconscionability and then noted it could find no cases addressing when it is an abuse of discretion to void an entire agreement. *Id.*, at 122. The *Armendariz* court went on to conclude the trial court did not abuse its discretion in refusing to enforce the arbitration agreement given the multiple unlawful provisions. *Id.*, at 124.  Whether the Agreement here is permeated with unconscionability is a closer case than *Armendariz* particularly because the Agreement here is bilateral in that it applies both to employers and employees, while some provisions of the agreement in *Armendariz* unconscionably only applied to employees. However, there are multiple unconscionable provisions as written here. The cost provisions are written in a manner unfair and unconscionable to the employee as is the venue provision.

An arbitration agreement is considered "permeated" by unconscionability where it contains more than one unconscionable provision. *De Leon v. Pinnacle Property Management Services,*

*LLC* (2021) 72 Cal. App. 5th 476, 492;  see also *Hasty,* supra, at 1064.  "The overarching inquiry is whether 'the interests of justice…would be furthered' by severance."  *Armendariz,* at 124.  (Citations omitted.)

Here the Agreement indicates on its face it was last revised "2/16",  nearly sixteen years after *Armendariz* prohibited employers from imposing on employees any type of  cost in an arbitration agreement that an employee would not have to bear in court.  In similar circumstances, a United States District Court in California recently held that a cost-splitting provision alone rendered the entire arbitration agreement unenforceable reasoning:

"there are good reasons not to sever the provision and instead decline to enforce the agreement as a whole.  *Armendariz* predated the contracts between Hale [employee] and Brinker [employer] by five years, Brinker therefore had the opportunity to revise its agreement to strip out the unconscionable  cost-splitting provision and failed to do so… The bottom of the arbitration agreement shows that it was revised in December 2004, more than four years after the California Supreme Court ruled in *Armendariz*.

Even though the cost-splitting provision is the only substantively unconscionable provision, it remains consequential.  Cost- and fee-shifting provisions can create a chilling effect, discouraging employees from vindicating their rights for fear that failure will prove cripplingly expensive. *See Lim,* 8 F. 4th at 1004.  … Were courts to excise those provisions and enforce arbitration agreements anyway, employers would have no incentive not to chill claims by including cost-shifting provisions in agreements.  Even absent other unconscionable terms, therefore, under these circumstances the cost-shifting provision at issue is reason enough to decline to enforce the agreement..." *Hale v. Brinker Int.* 2022 WL 2187397, at *2, 3 (N.D. Cal. June 17, 2022).

There are only two cost provisions within the Agreement here and both are unconscionable and one sided in ways that benefit AYA by discouraging assertion of employment rights in improperly referencing costs that an employee would incur beyond the *Armendariz* standard. The mediation required by the Agreement before an employee can assert any employment rights in arbitration calls for mediation costs to be split and shared by the employee unless otherwise required by law. This creates a chilling effect on an employee from asserting employment rights in arbitration that *Armendariz* and subsequent cases have prohibited. Claimant's unrebutted declaration established

that both the mediation cost provision and the arbitration cost provision certainly had a chilling effect on her here (ZIMMERMAN Decl. p. 3, paras. 9, 10).

When asked at the hearing which portion of the mediation clause should the Arbitrator sever, AYA's counsel artfully proposed deleting only "the few words" about mediation cost-splitting, and leave intact the clause requiring going to mediation before commencing arbitration and then stating AYA would pay for it (Rptrs. Transcript, p. 61, lns. 20-25). There are at least three problems with this proposal. First, the Agreement contains an integration clause which provides "This Agreement may only be modified by a writing signed by the CEO of Aya." While severing unlawful language *might* be allowed under this integration clause in light of the subsequent "Severability" clause, *adding* terms to the Agreement is prohibited by the integration clause. Second, and more important, it is well beyond the purview of a court or arbitrator to add terms to reform contracts where provisions are severed.  Thus, if the mandatory mediation clause is retained, a court or arbitrator would not be authorized to reform the agreement to now state AYA will pay for the mediation costs, after severing these "few words" about mediation cost splitting. Severing the mediation cost-splitting language here would leave a gap as to who pays for the mediation costs. See *Escobar v. Nat'l Main. Contractors, LLC,* No. 21-35765, 2022 WL 17830001 (9th Cir. Dec. 21, 2022)  where the Ninth Circuit declined to sever an unconscionable cost provision in an arbitration agreement permeated with unconscionable provisions stating "we cannot sever an unconscionable provision if doing so would require us to rewrite the contract.  Severing the cost-sharing provision would require exactly that because, in the absence of the provision, it would fall to us to decide who should bear the costs of arbitration".  *Id.,* at *2.  Finally, Court authority to reform contracts is limited to where parties make mistakes, not to correct illegal provisions. *Armendariz,* at 125 (citations omitted). Severance of the current mediation cost provision as

proposed would amount to reforming this contract by correcting a provision that has been illegal since *Armendariz,* rather than reform a contract to correct a mistake.

Severing the arbitration cost provision as AYA proposes in its Supplemental Brief on Severance could be appropriate and would more be within a court's or discretion and authority. Severing "For claims determined to involve non-waivable statutory rights" along with the so-called savings clause therein "to the extent required by law" from the sole arbitration cost provision would make clear that arbitration costs would not be imposed on the employee beyond filing fees for actions in court, thereby eliminating the way costs are referenced which presently creates a chilling effect which could discourage employees from asserting their rights. This would serve to clarify a very confusing cost provision that is so difficult to decipher that severing it would arguably amount to correcting a mistake, unlike severing a portion of the Agreement's pre-arbitration, mediation cost-splitting provision which would be correcting a provision that has been illegal for well over twenty years under *Armendariz*, and still leave an element of procedural unconscionability with the proposed remaining language "unless otherwise required by law".

Severing the unfair venue provision requiring Florida based Claimant to arbitrate in San Diego could effectively cure the substantive unconscionability of that provision for Claimant who temporarily worked for AYA in New Jersey. There are two concerns with such severance. First, this would not be correcting a mistake as much as it would be reforming the contract. Second, such severance would still leave unresolved whether also severing the clause "or to the extent required by law," would be required since leaving it in would result in procedural unconscionability ("surprise") remaining, requiring some legal explanation.

The only two cost provisions in the Agreement are unconscionable as against Claimant are far short of the requirements *Armendariz* established twenty-four years ago that mandatory

employment arbitration agreements not impose *any* costs on employees beyond what employees would bear in asserting legal rights in court. It is well settled that unconscionable cost provisions in employment arbitration agreements create chilling effects on employees, discouraging them from asserting legal rights in a manner that violates public policy. Those chilling effects on assertion of employments rights were established by Claimant's unrebutted Declaration testimony here. The venue provision is also unfair and substantively unconscionable to Claimant as a resident of Florida who only temporarily worked for AYA in New Jersey. Based on elements of procedural and substantive unconscionability presented in the Agreement, and the fact the cost provisions of this Agreement are so consequential and so far short of well-established requirements for employment arbitration agreements, I find the Agreement is permeated with unconscionability against Claimant as written. Under the totality of these circumstances presented here, I also find it is not in the interest of justice to collectively sever the two unconscionable cost provisions and the unconscionable venue provision from the Agreement, as AYA should not benefit from the improper barriers and chilling effects the unconscionable provisions of the Agreement, written so long after *Armendariz,* create against assertion of rights by this temporarily employed Claimant.

### XI. CONCLUSION

Based on the foregoing, and Claimant's unrebutted Declaration testimony, I find the Agreement is unconscionable as it relates to Claimant, and therefore unenforceable against Claimant. Accordingly, Claimant's claims are not properly arbitrable under the Agreement unless Claimant voluntarily elects to assert her claims in arbitration. Good cause appearing therefore, IT IS SO ORDERED.

Dated: May 28, 2024.

By: Lawrence A. Huerta, Arbitrator,
American Arbitration Association