Jason S. Hartley (SBN# 192514)
Jason M. Lindner (SBN# 211451)
**HARTLEY LLP**
101 West Broadway, Suite 820
San Diego, CA 92101
Telephone: 619-400-5822
*hartley@hartleyllp.com*
*lindner@hartleyllp.com*

George A. Hanson (*pro hac vice*)
J. Austin Moore (*pro hac vice*)
Alexander T. Ricke (*pro hac vice*)
K. Ross Merrill (*pro hac vice*)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: 816-714-7100
*hanson@stuevesiegel.com*
*moore@stuevesiegel.com*
*ricke@stuevesiegel.com*
*merrill@stuevesiegel.com*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA O'DELL, HANNAH BAILEY, HOLLY ZIMMERMAN, and LAUREN MILLER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AYA HEALTHCARE, INC.,<br><br>Defendant. | Case No. 3:22-cv-1151-BEN-MMP<br><br>**PLAINTIFF LAUREN MILLER'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO AYA'S MOTION TO CONFIRM ARBITRATION DECISION AND MAINTAIN STAY OF COURT ACTION**<br><br>Date: July 15, 2024<br>Time: 10:30 a.m.<br>Courtroom: 5A<br>Judge: Hon. Roger T. Benitez<br><br>Complaint Filed: August 4, 2022<br>Trial Date: None set |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I. INTRODUCTION .................................................................................................. 1

II. PROCEDURAL HISTORY .................................................................................. 1

    A. The Litigation ................................................................................................. 1

    B. Plaintiff Miller Challenges the Arbitration Agreement before an Arbitrator ......................................................................................................... 4

III. ARGUMENT .......................................................................................................... 5

    A. Legal Standard ............................................................................................... 6

    B. The Court Cannot Maintain the Stay because Aya Materially Breached the Arbitration Agreement. ............................................................. 6

        1. CCP § 1281.98 is strictly construed so Aya's intention in defaulting on its payment obligations is irrelevant. ................................ 8

        2. The statute encompasses Aya's default .................................................. 10

            a. The Court must enforce the parties' agreement by deferring to the AAA's application of its own rules and procedures. ............................................................................... 11

            b. The invoice was for work required to continue the arbitration ................................................................................... 13

            c. Aya's reliance on the Arbitration Agreement necessarily continues ..................................................................................... 14

    C. Aya's Request to Confirm the Arbitration Award Should be Denied as Moot ............................................................................................................... 14

IV. CONCLUSION AND RELIEF SOUGHT ........................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Cvejic v. Skyview Cap., LLC*,
 92 Cal. App. 5th 1073 (Cal. Ct. App. 2023) ...................................................... 6, 8

*De Leon v. Juanita's Foods*,
 85 Cal. App. 5th 740 (Cal. Ct. App. 2022) ..................................................... *passim*

*Eliasieh v. Legally Mine, LLC*,
 2020 WL 1929244 (N.D. Cal. Apr. 21, 2020) ....................................................... 12

*Gallo v. Wood Ranch, USA, Inc.*,
 81 Cal. App. 5th 621 (Cal. Ct. app. 2022) ............................................................... 8

*Greco v. Uber Techs., Inc.*,
 2020 WL 5628966 (N.D. Cal. Sept. 3, 2020) .................................................. 11, 12

*Hernandez v. Sohnen Enterprises, Inc.*,
 321 Cal. Rptr. 3d 283 (Cal. Ct. App. 2024) ............................................................. 8

*Nw. Env't Def. Ctr. v. Gordon*,
 849 F.2d 1241 (9th Cir. 1988) ............................................................................... 15

*Parks v. Ethicon, Inc.*,
 2021 WL 1117292 (S.D. Cal. Mar. 24, 2021) ....................................................... 15

*Waters v. Vroom Inc.*,
 2023 WL 187577 (S.D. Cal. Jan. 13, 2023) ............................................... 10, 11, 12

*Western Oil and Gas Ass'n v. Sonoma Cty.*,
 905 F.2d 1287 (9th Cir. 1990) ............................................................................... 15

*Williams v. W. Coast Hosps., Inc.*,
 86 Cal. App. 5th 1054 (Cal. Ct. App. 2022) ....................................................... 9, 10

**Statutes**

Cal. Code. Civ. Proc. § 1281.98 ...................................................................... *passim*

**Other Authorities**

Wright, Miller & Cooper, *Federal Practice and Procedure*,
 § 3532.1 (2d ed. 1984) .......................................................................................... 15

## I. INTRODUCTION

Aya successfully argued that any challenge to its Arbitration Agreement must be decided in arbitration, by an arbitrator. But after insisting on that process, Aya admits that it did not timely pay the Arbitrator's invoice for her time in deciding the parties' dispute. The arbitral tribunal before which the parties agreed to submit their dispute, the American Arbitration Association ("AAA"), terminated the arbitration due to the nonpayment pursuant to Cal. Code. Civ. Proc. § 1281.98. The statute provides that if an employer that drafted an arbitration agreement does not pay "the fees or costs required to continue the arbitration" within 30 days of their due date, it is in "material breach" of the underlying Arbitration Agreement, and the employee may unilaterally elect how to proceed. As permitted by the statute and in accordance with the AAA's own rules, Plaintiff Miller elected to proceed with her claims in court.

Aya's Motion to maintain the stay of Plaintiff Miller's claims should be denied, as pursuant to Cal. Code. Civ. Proc. § 1281.98, it must be lifted.[1] Likewise, Aya's request to confirm the Arbitration Award should be denied as moot because the award does not impact the proper forum for Plaintiff Miller's claims. For these reasons, Plaintiff Miller respectfully requests that this Court deny Aya's Motion to Confirm the Arbitration Decision and to Maintain the Stay of her claims in full.

## II. PROCEDURAL HISTORY

### A. THE LITIGATION

Along with three other former Aya employees, Plaintiff Lauren Miller filed a Complaint against Aya Healthcare Inc. in this Court on August 4, 2022. ECF 1. In her First Amended Class and Collective Action Complaint ("Complaint"), she

---

[1] Consistent with this position, Plaintiff Miller intends to file a motion to lift the stay on her claims and for automatic attorneys' fees and sanctions pursuant to CCP §§ 1281.98(c), 1281.99.

alleged that Aya engaged in a bait-and-switch scheme by changing its travel nurses' pay rates mid-contract after they had incurred expenses to travel to a new location (often out-of-state). ECF 15, ¶¶ 44-49.[2] Specifically, she alleged that she accepted a position with Aya to work at Eden Medical Center in Castro Valley, CA. *Id*. ¶ 66. After she moved from her home in Washington to accept the assignment and secured short-term living arrangements in California, on the first day of her assignment, Aya made her a "take-it-or-leave-it" demand to accept a 17% reduction of her base hourly pay rate from $58.50 to $48.50, along with cuts to her hourly and call-back pay rates. *Id*. ¶ 68. When Plaintiff Miller inquired about the rate reduction, Aya blamed the hospital. *Id*. ¶¶ 69-70. But when she checked with the hospital where she worked, a hospital employee told her that there was no evidence that the bill rate decreased, and that Aya was still being paid $182.00 per hour for Plaintiff Miller's work. *Id*. ¶ 71.

Plaintiff Miller also alleged that for travel employees who worked more than 40 hours in a workweek, Aya miscalculated their rates of overtime pay by failing to include certain benefits, such as meal and housing stipends, as part of the Plaintiffs' regular rate of pay. *Id*. ¶¶ 78-97. Plaintiff asserted thirteen causes of action against Aya arising out of common law and several California statutes. *Id*. ¶¶ 109-154, 161-188, 194-234. She also asserted a federal Fair Labor Standards Act (FLSA) claim on her own behalf and that of a nationwide collective, alleging that Aya miscalculated rates of overtime pay. *Id*. ¶¶ 179-88.

In response to the travel nurses' Complaint, Aya moved to Compel Arbitration and Dismiss Court Action ("Motion to Compel"), relying on stand-alone

---

[2] Aya's Motion does not properly incorporate any of the exhibits that it cites in its Motion. The Declaration of Ashley N. Fasano attached to its Motion is in support of Aya's Motion regarding the Bailey arbitration award. *See* ECF 81-2. While the exhibits to the Motion appear to be the ones related to Miller, none of those exhibits are incorporated via the Fasano declaration. Thus, Plaintiff Miller incorporates relevant documents through the attached Declaration of J. Austin Moore.

2

1 "agreements" to arbitrate signed by each Plaintiff. ECF 21. As to Plaintiff Miller, Aya relied on an agreement to arbitrate that she had e-signed on February 27, 2002. ECF 21-2, at 15-16. Based on these agreements signed by Plaintiff Miller and the other Plaintiffs, Aya asked the Court to compel them (1) to "arbitrate their individual claims against Aya" and to (2) "dismiss Plaintiffs' class, collective, and representative action." ECF 21, at 6. In opposing Aya's Motion, Plaintiffs argued that they had been fraudulently induced into signing the Arbitration Agreements, and that they therefore were not enforceable against them. ECF 30.

After full briefing from the parties on Aya's Motion to Compel, this Court granted its Motion in part, finding that "[b]ased on the language of the Delegation Clause in the Arbitration Agreement, the Court cannot decide threshold issues of validity and enforceability and therefore, compels arbitration on the arbitrability of Plaintiffs' claims." ECF 64, at 7:14-16; *see also id*. at 12:10-13 ("Here, the language of the Delegation Clause clearly and unmistakably delegates to the arbitrator questions of arbitrability, because it expressly states that the arbitrator has the 'authority to resolve all portions of the dispute, including disputes relating to the interpretation or enforceability of this Agreement.'"); *id*. at 13:5-6 ("If the [delegation] Clause is valid, all remaining validity challenges must be arbitrated."); *id*. at 13:23-24 (finding that plaintiffs' arguments "did not raise any alleged misrepresentation—or any issue for that matter—specific to the language of the Delegation Clause."); *id*. at 14:13 ("The Court is bound by the Delegation Clause."). Further, "[i]n the interest of justice and in order to avoid duplicative proceedings," the Court granted a stay of the Plaintiffs' claims against Aya, "pending a decision on the arbitrability of Plaintiffs' claims." *Id*. at 17:24-27.

### B. Plaintiff Miller Challenges the Arbitration Agreement before an Arbitrator

Pursuant to the Court's order, Plaintiff Miller filed a Demand for Arbitration before the American Arbitration Association ("AAA") in San Diego on June 7, 2023. *See* Ex. 1 to Declaration of J. Austin Moore ("Moore Dec."). Her Demand related solely to the enforceability of Aya's Arbitration Agreement and asked the Arbitrator to find that the agreement is unenforceable because it (1) was procedurally and substantively unconscionable under California law and/or that (2) Aya fraudulently induced her to enter the purported Agreement. *Id*. at 18. Both parties signed a form agreeing to have AAA administer the dispute and to be bound by the AAA Employment Arbitration Rules. *See* Ex. 2, Moore Dec. ("BY SIGNING BELOW, THE PARTIES AGREE TO SUBMIT THE ABOVE-REFERENCED DISPUTE TO ARBITRATION ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION UNDER ITS EMPLOYMENT ARBITRATION RULES.").

In accordance with the AAA arbitrator selection process, Arbitrator Gayle Eskridge was assigned as the Arbitrator. Moore Dec. ¶ 4. Plaintiff Miller informed the Arbitrator that she had decided not to pursue her fraudulent inducement claim and to instead solely pursue her claim that her Arbitration Agreement with Aya was procedurally and substantively unconscionable under California law. *See* Ex. 4, at 2-3, Moore Dec. The parties agreed to a briefing and hearing schedule on Plaintiff's unconscionability challenge. Moore Dec. ¶¶ 6-7. Pursuant to that schedule, Plaintiff submitted her Opening Brief on Unconscionability to the Arbitrator on January 26, 2024; Aya submitted its Opposition on February 16, 2024; and Plaintiff submitted her Reply brief on March 1, 2024. *Id*. ¶ 6. In connection with the briefing, the Parties agreed to a set of stipulated facts, and each party submitted a witness declaration. *Id*. On March 11, 2024, Arbitrator Eskridge conducted a one-hour hearing on Plaintiff Miller's unconscionability challenge. *Id*. ¶ 7.

Arbitrator Eskridge rendered her decision on March 19, 2024. Moore Dec. ¶ 8. She found that Aya's Arbitration Agreement had three procedurally unconscionable provisions—the mediation cost provision, the arbitration cost provision, and the venue provision—but that that they could be severed and the remainder of the Agreement was enforceable. *See generally* Ex. 4, Moore Dec. Two days later, on March 21, 2024, the AAA case manager for the arbitration sent correspondence to the parties stating as follows: "We have received the Arbitrator's final invoice and it exceeds the amount estimated and requested. Therefore, we are at this time, requesting an additional $11,525.00 to cover for the arbitrator's compensation for time incurred." *See* Ex. 5, Moore Dec. The invoice further stated: "Payment is due upon receipt of this letter and attached invoice. As this arbitration is subject to **California Code of Civil Procedure 1281.98**, payment must be paid by 30 days from the date of this letter. Pursuant to California Code of Civil Procedure 1281.98, the AAA cannot grant any extensions to this payment deadline unless agreed upon by all parties." *Id*. (emphasis in original).

On May 16, 2024—56 days from the date of the Arbitrator's invoice—the AAA case administrator sent the parties another email stating: "This will confirm that we have not received the payment in the amount of $11,525.00 for Arbitrator's Compensation requested and invoiced in our letter dated March 21, 2024." Ex. 6, Moore Dec. It continued: "Pursuant to CA CCP 1281.98, AAA requests Claimant to review the relevant section of the statute and provide a response on how they wish to proceed." *Id*. She did so that same day, informing the AAA that "pursuant to CCP § 1281.98(b)(1), Claimant Miller elects to withdraw the claim from arbitration and proceed in a court of appropriate jurisdiction." *Id*. Thereafter, the AAA issued a letter dated May 17, 2024 closing the matter. Ex. 7, Moore Dec.

5

## III. ARGUMENT

### A. LEGAL STANDARD

Section 1281.98 of the California Code of Civil Procedure "provides recourse when the party that pressed for arbitration fails to pay its arbitration fee." *Cvejic v. Skyview Cap., LLC*, 92 Cal. App. 5th 1073, 1078 (Cal. Ct. App. 2023). "The statute deems this failure to be a material breach and entitles the claimant to withdraw unilaterally from arbitration." *Id*. The California Legislature enacted it in 2019, having "[p]erceiv[ed] that a company's failure to pay the fees of an arbitration provider' as required by an arbitration agreement or applicable law hinders the efficient resolution of disputes and contravenes public policy." *De Leon v. Juanita's Foods*, 85 Cal. App. 5th 740, 750 (Cal. Ct. App. 2022) (cleaned up). "[T]he legislative history indicates the California Legislature sought a clear and unambiguous rule for courts to apply in determining whether late payment of arbitration fees by a drafting party constituted a material breach of an arbitration agreement." *Id.* at 756. CCP § 1281.98 thus provides:

> In an employment or consumer arbitration that requires . . . that the drafting party pay certain fees and costs during the pendency of an arbitration proceeding, if the fees or costs required to continue the arbitration proceeding are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel the employee or consumer to proceed with that arbitration as a result of the material breach.

*Id*. § (a)(1). Once a "material breach" is established under section (a) of the statute, section (b) permits the employee to "unilaterally elect" among several options as to how to proceed, including, as relevant here, to "[w]ithdraw the claim from arbitration and proceed in a court of appropriate jurisdiction." *Id*. § (b)(1).

6

### B. THE COURT CANNOT MAINTAIN THE STAY BECAUSE AYA MATERIALLY BREACHED THE ARBITRATION AGREEMENT.

Aya does not dispute that after it successfully compelled Plaintiff Miller's claims into arbitration, it then failed to timely pay an invoice for the Arbitrator's work on the matter. Section 1281.98 of the California Code of Civil Procedure establishes that this payment default is a "material breach" of the Arbitration Agreement and that Plaintiff Miller could unilaterally elect to return to court. She did so. Aya's sole defense is that the fees were not required to "continue the arbitration," as the Arbitrator had already rendered her decision on the dispute at the time Aya defaulted on its payment obligation. This argument is unavailing for several reasons.

First, there is no dispute that at the time Aya went into default, the AAA had not yet terminated the Arbitration. Because the parties expressly agreed to the AAA's Rules, the parties are bound by the AAA's administration of the dispute. And per the AAA, the arbitration was "continuing" at the time of Aya's payment default, and Aya's non-payment thus resulted in a material breach.

Second, although the AAA billed Aya for the arbitrator's work retroactively, rather than prospectively, the invoice was plainly for work (and thus fees) "required to continue the arbitration."

Finally, Aya's argument that the arbitration was not "continuing" ignores the unique posture of this case. While Plaintiff Miller's demand before Arbitrator Eskridge was limited to the question of the enforceability of Aya's Arbitration Agreement, it is undisputed that her substantive claims against the company remain for resolution. In other words, Aya's reliance on the Arbitration Agreement is not complete; the company would need to continue to rely on it to require Plaintiff Miller to bring her substantive claims in arbitration rather than in Court. But by failing to timely pay Arbitrator Eskridge's invoice, Aya materially breached the Arbitration

Agreement. After materially breaching the Arbitration Agreement under California law, Aya cannot rely on it to require Plaintiff Miller to arbitrate her substantive claims against the Company.

### 1. CCP § 1281.98 is strictly construed so Aya's intention in defaulting on its payment obligations is irrelevant.

Courts "strictly appl[y]" section 1281.98, and the 30-day statutory deadline "establishes a clear-cut rule for determining if a drafting party is in material breach of an arbitration agreement." *De Leon,* 85 Cal. App. 5th at 753, 755 (citations omitted); *see also Cvejic*, 92 Cal. App. 5th at 1077 ("As the legislative history and caselaw direct, we strictly enforce this statute."). Its applicability is thus not limited to "circumstances of strategic non-payment"; instead, "[t]he statute is strictly applied whenever a drafting party fails to pay arbitration costs and fees by the statutory deadline." *Hernandez v. Sohnen Enterprises, Inc.*, 321 Cal. Rptr. 3d 283, 293 (Cal. Ct. App. 2024).[3] Thus, as a California appellate court succinctly explained, the statute's application is straightforward: "Skyview's fees were due June 4, 2021. By July 9th, Skyview had not paid. Skyview was in material breach of the parties' arbitration agreement. Section 1281.98 entitled Cvejic to withdraw from the arbitration. It is that simple." *Cvejic*, 92 Cal. App. 5th at 1078.

Here, too, the application of the statute to the facts of this case is simple. On March 21, 2024, the AAA sent Aya the arbitrator's "final invoice" for fees "to cover for the arbitrator's compensation for time incurred." Ex. 5, Moore Dec. The AAA stated that the invoice was "due upon receipt," but informed the parties that nonpayment within 30 days would trigger application of CCP §1281.98. *Id*. Fifty-

---

[3] While *Hernandez* discusses CCP § 1281.97, which concerns the fees required to initiate an arbitration, sections 1281.97 and 1281.98 "largely parallel" each other. *De Leon*, 85 Cal. App. at 750 (quoting *Gallo v. Wood Ranch, USA, Inc.*, 81 Cal. App. 5th 621, 633, n.4 (Cal. Ct. app. 2022)).

six days later, Aya had not paid the invoice. Ex. 6, Moore Dec. Under section 1281.98, this payment default entitled Plaintiff Miller to elect to return to court. She did so, *id.*, and her claims may now be brought in a court of competent jurisdiction.

Despite the straightforward analysis that California courts apply to CCP § 1281.98, Aya claims that the statute does not "encompass" the present circumstances, for two reasons. The first is that "there is no evidence whatsoever that Aya delayed in paying fees in order to stall the arbitration." *See* Aya's Memorandum of Points and Authorities in Support of Motion to Confirm Miller Arbitration Decision and Maintain Stay of Court Action ("Aya. Br."), ECF 81-1, at 10. "But nothing in section 1281.98 as drafted depends on the intent or good faith of a particular drafting party in a specific case." *Williams v. W. Coast Hosps., Inc.*, 86 Cal. App. 5th 1054, 1074 (Cal. Ct. App. 2022), *review denied* (Mar. 29, 2023). Indeed, "[t]o further its stated purpose, the Legislature in enacting sections 1281.97 and 1281.98 chose to neither require nor permit an inquiry into the reasons for a drafting party's nonpayment." *Id.* at 1074–75. "It is within the Legislature's purview to make a civil remedy available, as a matter of policy, without regard to fault." *Id.* (citation omitted). Thus, Aya's reason for defaulting on its payment obligation is not relevant under the statute.

Nor is evidence that the nonpayment actually delayed the proceedings, or otherwise prejudiced the employee, required. This is because "the statute's language establishes a simple bright-line rule that a drafting party's failure to pay outstanding arbitration fees within 30 days after the due date results in its material breach of the arbitration agreement." *De Leon*, 85 Cal. App. 5th at 752–53. "Under the plain language of the statute, then, the triggering event is nothing more than nonpayment of fees within the 30-day period—the statute specifies no other required findings, such as whether the nonpayment was deliberate or inadvertent, or whether the delay prejudiced the nondrafting party." *Id.* at 753 (cleaned up); *see also Williams,* 86 Cal.

App. 5th at 1074 (CCP § 1281.98 triggered despite "the record evidence that West Coast's belated payment was unintentional and that the ensuing delay amounted to a few days.").

Along those lines, in *Waters v. Vroom Inc.*, 2023 WL 187577, at *2-4 (S.D. Cal. Jan. 13, 2023), a court in this District considered whether the statute was triggered even though the fee payment was late due to an error on the AAA's payment site and not any ill-intent of the defendants. The defendants argued that the statute should not apply because it "was AAA's clerical error, not their own, that resulted in AAA not receiving Defendants' attempted payment by the deadline." *Id*. at *4. The Court rejected this argument, however, noting that the statute was to be strictly construed and that defendant's argument amounted to a request for "equitable relief" from the Court—a request that "has no grounding in caselaw or other authority." *Id*. The same result is required here.

### 2. The statute encompasses Aya's default.

Aya's second argument is that its default is "not encompassed by the statute," because it was for payment of a "final invoice." Aya Br., at 8. According to Aya, because the Arbitrator had already rendered her decision on the dispute (and the time for the parties to move for correction of the decision had expired) when Aya went into default, the fees were not necessary to "continue" the arbitration. Of course, the statute does not exempt the employer from having to timely pay the Arbitrator's final invoice, as opposed to any other invoice rendered. Nor would it make sense to exempt an employer from timely paying an invoice that covers the arbitrator's work in rendering a decision on the parties' dispute. Thus, this argument is unavailing for several reasons.

### a. The Court must enforce the parties' agreement by deferring to the AAA's application of its own rules and procedures.

The parties expressly consented to the AAA's administration of their dispute under its Employment Rules—which permit the tribunal to "to suspend or terminate the hearing" if all fees or costs have not been paid (AAA Rule 47)—and at the time of default, the AAA had not terminated the proceeding. Because the proceeding was still active at the time Aya defaulted,[4] the AAA determined that Aya violated Cal. Code. Civ. Proc. § 1281.98 for non-payment of fees required to continue an arbitration and gave Plaintiff Miller the option to terminate the proceeding, which she elected to do. Because the parties expressly agreed to have the AAA administer the dispute under its Employment Rules, the Court must defer to the AAA's interpretation and application of its own Rules in this context. In *Waters v. Vroom*, the Court addressed this precise issue:

> Arbitration is a creature of contract law and, as such, the Court looks to the Parties' agreement to determine how the Parties agreed to proceed with arbitration. *See Greco v. Uber Techs., Inc.*, No. 4:20-cv-02698-YGR, 2020 WL 5628966, at *3 (N.D. Cal. Sept. 3, 2020). Here, the Parties agreed that any dispute would be resolved by binding arbitration in accordance with either JAMS' Comprehensive Arbitration Rules or AAA's Consumer Arbitration Rules, whichever one Plaintiff chose. (Ex. A at 6.) When the dispute arose, Plaintiff opted to arbitrate through AAA in accordance with AAA's Consumer Arbitration Rules.
>
> ***
>
> The rules they chose allow the arbitrator or arbitration administrator, in his or her discretion, to stop the administration of the arbitration and to then allow the Parties to proceed in court. *See* Consumer Arbitration Rules 1(b), (d), & 55. That is exactly what happened in this case and, as a result, the arbitration has been had in accordance with the rules

---

[4] Notably, there were still active deadlines when the unpaid invoice was issued. Under the AAA Rules, "[w]ithin 20 days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator to correct any clerical, typographical, technical, or computational errors in the award." AAA Employment Rule 40 (https://www.adr.org/sites/default/files/EmploymentRules_Web_2.pdf). In fact, Aya availed itself of this very procedure in both the Zimmerman and O'Dell arbitrations.

11

> agreed to by the Parties. . . . Because Defendants expressly agreed to be bound by the AAA Consumer Arbitration Rules, they cannot now complain of their enforcement.

2023 WL 187577, at *3.

Here too, the AAA Employment Rules expressly permit the tribunal "to suspen[d] or terminat[e]" the proceedings if all fees or costs have not been paid.[5] The day after the AAA informed the parties that Aya had defaulted and Plaintiff Miller elected to return to court, the AAA issued a letter terminating the arbitration. Ex. 7, Moore Dec. Thus, because the arbitration was terminated in accordance with the rules and procedures agreed to by the parties, Aya cannot now complain to the Court about their enforcement. *See, e.g.*, *Waters*, 2023 WL 187577, at *4 ("'That Defendants do not think the outcome fair because arbitration was terminated based on innocent error is of no import—[Defendants] agreed to the rules that allow that outcome.'") (quoting *Greco*, 2021 WL 134578, at *4); *Greco*, 2021 WL 134578, at *3 ("The parties therefore delegated the interpretation of the Rules to the AAA, and the AAA reasonably interpreted them, consistent with the agreement."); *Eliasieh v. Legally Mine, LLC*, 2020 WL 1929244, at *4 (N.D. Cal. Apr. 21, 2020) ("The bottom line is that AAA terminated the arbitration due to Defendant's conduct. Under well-settled caselaw and the AAA's own rules, the termination of the arbitration due to Defendant's non-payment of fees means that Plaintiff can pursue his claims in court.").

Further, the "AAA warned Defendant that it would give Plaintiff options on how to proceed if it did not timely receive Defendants' payment. And one of those options would be for AAA to close the case." *Waters*, 2023 WL 187577, at *5. Thus, Aya agreed to the AAA's administration of the dispute, and consistent with its Rules and its warning to the parties, the AAA terminated the arbitration due to Aya's

---

[5] *See* AAA Employment Rule 47 (available at https://www.adr.org/sites/default/files/EmploymentRules_Web_2.pdf).

payment default. The arbitration was thus continuing at the time that Aya defaulted on its payment obligations, triggering application of CCP § 1281.98.

### b.   The Invoice was for Work Required to Continue the Arbitration.

Next, the at-issue invoice makes clear that the arbitrator's fees were required to "continue" the arbitration. Indeed, the AAA initially issued a prospective invoice for the arbitrator's future work. Specifically, at the time the AAA sent the Parties confirmation that a hearing on "the Arbitrability motion" had been scheduled, it simultaneously sent an invoice asking "the employer . . . to pay the amount of $12,650.00 to cover the arbitrator's estimated deposit for this stage." Ex. 3, Moore Dec. There can be no dispute that those prospectively requested fees were required to "continue" the arbitration.

The reason that the AAA issued the March 21, 2024 invoice—which is the one on which Aya defaulted—is because the AAA "received the Arbitrator's final invoice and it exceeds the amount estimated and requested. Therefore, we are at this time, requesting an additional $11,525.00 to cover for the arbitrator's compensation for time incurred." Ex. 5, Moore Dec. As the invoice makes clear, the requested fees were to cover work that the arbitrator performed in overseeing the parties' dispute, including in rendering her decision. In other words, it was for work required for the arbitration to "continue." The only reason that the invoice was retroactive—for work the arbitrator already performed—rather than prospective—for her future work—is because resolution of the dispute was more time-intensive than the arbitrator had initially estimated.

But all the billing in this case, whether prospective or retroactive, was for arbitrator fees that were required to "continue" the arbitration. Aya urges, because some of the arbitrator's time for "continuing" the arbitration was invoiced after she did that work, rather than before she did it, the statute is inapplicable. But that

distinction finds no footing in the statute, which requires timely payment of "fees or costs required to continue the arbitration proceeding." The fees reflected in the March 21, 2024 invoice was plainly for work that was "required to continue the arbitration proceeding" notwithstanding the timing of the invoice. CCP § 1281.98. And while Aya may argue that the lack of payment did not hold up the work on the arbitration from proceeding, courts have consistently found that the statute provides a "clear cut" rule, and whether the arbitration was actually delayed is not relevant. *See De Leon*, 85 Cal. App. 5th at 753.

### c. Aya's Reliance on the Arbitration Agreement Necessarily Continues.

And finally, it is indisputable that the merits of Plaintiff Miller's claims are not yet resolved. Arbitrator Eskridge decided only the question of whether the Arbitration Agreement was enforceable. But Plaintiff Miller's substantive claims—arising out of her bait-and-switch and overtime allegations—still require resolution. Thus, despite the fact Arbitrator Eskridge issued an order, Aya must continue to rely on the Arbitration Agreement to require Plaintiff Miller to bring her substantive claims in arbitration rather than in Court. By failing to timely pay Arbitrator Eskridge's invoice, however, Aya materially breached the Arbitration Agreement under CCP § 1281.98, giving Plaintiff Miller a statutory right to return to Court.

Due to that material breach, Aya may not rely on the Arbitration Agreement to require Plaintiff Miller to arbitrate her substantive claims against the Company, and the stay on her claims against the company must be lifted.

### C. AYA'S REQUEST TO CONFIRM THE ARBITRATION AWARD SHOULD BE DENIED AS MOOT

Because Plaintiff Miller may properly bring her claims in court under section 1281.98, the Parties no longer have any "legally cognizable" interest in the question of whether the parties' Arbitration Agreement was otherwise enforceable.

"A moot action is one where the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Nw. Env't Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988) (cleaned up). "Moot cases" are "those which have lost their character as present, live controversies." *Id*. "When evaluating whether an issue is moot, the appropriate inquiry is 'whether there is anything left for the court to do.'" *Parks v. Ethicon, Inc*., 2021 WL 1117292, at *3 (S.D. Cal. Mar. 24, 2021) (quoting *Western Oil and Gas Ass'n v. Sonoma Cty*., 905 F.2d 1287, 1290 (9th Cir. 1990) and Wright, Miller & Cooper, *Federal Practice and Procedure*, § 3532.1 (2d ed. 1984)).

With respect to Aya's request to confirm the arbitration award, there is nothing for the Court to do given Aya's material breach of the Agreement. Indeed, the question of whether Aya had a legally enforceable Arbitration Agreement with Plaintiff Miller is no longer a "present, live" controversy, as pursuant to CCP § 1281.98, her claims are properly brought in court. This Court should therefore deny Aya's motion to confirm Arbitrator Eskridge's Arbitration Award.

## IV. CONCLUSION AND RELIEF SOUGHT

For the reasons set forth herein, Plaintiff Miller respectfully requests that this Court deny Aya's Motion to Confirm Miller Arbitration Decision and Maintain Stay of Court Action.

Dated: July 1, 2024

**STUEVE SIEGEL HANSON LLP**

By: _____
J. Austin Moore (*pro hac vice*)
George A. Hanson (*pro hac vice*)
Alexander T. Ricke (*pro hac vice*)
K. Ross Merrill (*pro hac vice*)
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: 816-714-7100
hanson@stuevesiegel.com

15

*moore@stuevesiegel.com*
*ricke@stuevesiegel.com*
*merrill@stuevesiegel.com*

Jason S. Hartley
Jason M. Lindner
**HARTLEY LLP**
101 West Broadway, Suite 820
San Diego, California 92101
Tel: 619-400-5822
*hartley@hartleyllp.com*
*lindner@hartleyllp.com*

*Attorneys for Plaintiffs and the Putative Classes and Collective*