# EXHIBIT 4

# AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| LAUREN MILLER,<br><br>            Claimant,<br><br>v.<br><br>AYA HEALTHCARE INC.,<br><br>            Respondent. | **CASE NO.: 01-23-0002-5462**<br><br>**ORDER RE: UNCONSCIONABILITY AND ARBITRABILITY**<br><br>**Case Manager:    Jose Guerrero**<br>                      JoseGuerrero@adr.org |

On January 26, 2024, Claimant LAUREN MILLER ("Claimant") filed a Brief Regarding Unconscionability.  On February 16, 2024, Respondent AYA HEALTHCARE, INC. ("Respondent" or "Aya") filed an Opposition to Claimant's Brief on Unconscionability.  On March 1, 2024, Claimant filed a Reply Brief on Unconscionability.  Oral argument on the issue was heard on March 11, 2024, at 1:30 p.m. Pacific Standard Time. Attorney J. Austin Moore, of Stueve Siegel Hanson LLP, and attorney Jason Hartley, of Hartley LLP, appeared on behalf of Claimant.  Attorney Ashley Fasano, of Procopio Cory Hargreaves & Savitch, LLP, appeared on behalf of Respondent.  Court reporter Valerie Nunemacher, of Aptus Court Reporting, reported the proceeding.

Upon reviewing all the papers filed, and hearing oral argument, and good cause appearing therefore, the Arbitrator rules as set forth below.

///

///

///

///

# I.

## THE ISSUES

Claimant argues the Aya Healthcare Arbitration Agreement ("Arbitration Agreement") should be declared unconscionable and unenforceable in full.  Respondent argues that only one provision of the Arbitration Agreement is unconscionable, and that it should be severed and the remainder of the Arbitration Agreement should be enforced.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 27, 2022, Claimant, along with Plaintiffs Laura O'Dell, Holly Zimmerman, and Hannah Bailey, filed a First Amended Class and Collective Action Complaint ("Complaint") against Aya Healthcare, Inc., in the United States District Court for the Southern District of California. S.D. Cal. Case No. 3:22-cv-01151, ECF No. 15.  The Complaint alleged that Aya engaged in a bait-and-switch scheme by changing its travel nurses' pay rates mid-contract, after they had incurred expenses to travel to a new location (often out of state).  It also alleged that for travel employees who had worked more than 40 hours in a workweek, Respondent miscalculated their rates of overtime pay by failing to include certain benefits, such as meal stipends, as part of the Plaintiffs' pay rate, in contravention of the requirements of the Fair Labor Standards Act ("FLSA") and state statutes.  On behalf of themselves and others similarly situated, these nurses asserted sixteen causes of action, including breach of contract, promissory estoppel, quasi-contract, fraudulent inducement, fraudulent concealment, negligent misrepresentation, violation of state wage payment laws, violation of the California unfair competition law and other California labor statutes, unpaid overtime under the FLSA, and violation of state overtime statutes.  [*Id.* ¶¶ 109-239.]

Respondent filed a Motion to Compel Arbitration and Dismiss Court Action, relying on agreements to arbitrate signed by each Plaintiff. [ECF No. 21.]  As to Claimant, Aya relied on the Arbitration Agreement which Claimant had e-signed on February 27, 2022.  Based on the agreements signed by Claimant and the other plaintiffs, Aya asked the Court to compel them (1) "to arbitrate their individual claims against Aya" and (2) "dismiss Plaintiffs' class, collective, and representative action."  [ECF No. 21, at 6.]

Claimant and the other plaintiffs opposed the Motion, arguing that Aya had fraudulently induced

1  them to enter into arbitration agreements. [ECF No. 30.] They alleged that while asking them to enter these

2  stand-alone arbitration contracts, Aya withheld from them a critical, material fact – that it had a pattern and

3  practice of breaching its employment contracts with its employees, thus giving rise to a certain dispute with

4  them. [*Id*. at 13-20.] (Claimant subsequently dropped her fraudulent inducement claim with respect to the

5  Arbitration Agreement.)

6      After full briefing from the parties, the Hon. Judge Roger Benitez granted Aya's Motion in part,

7  finding that "[b]ased on the language of the Delegation Clause in the Arbitration Agreement, the Court

8  cannot decide threshold issues of validity and enforceability and therefore, compels arbitration on the

9  arbitrability of Plaintiffs' claims." [ECF 64, at 7, 14.]

10     Claimant therefore filed this case with the American Arbitration Association (AAA) for a

11  determination as to arbitrability.  Respondent filed an Answer, consisting of a general denial and various

12  affirmative defenses.  The parties subsequently filed their briefs regarding arbitrability.

13

14                                    **III.**

15                          **THE ARBITRATOR'S DUTIES**

16     An arbitrator has two important duties when ruling on any issue:  1) Comply with the terms of the

17  arbitration agreement; and 2) Follow the applicable law.

18     Here the arbitration provision is contained in the Arbitration Agreement.  It provides:

19          The binding arbitration and selection of a neutral arbitrator will be conducted
            in conformity with the procedures of the Federal Arbitration Act (9 U.S.C. §
20          1, et seq.) and the California Arbitration Act . . . . The arbitrator shall have the
            authority to resolve all portions of the dispute, including disputes relating to
21          the interpretation or enforceability of this Agreement . . . .

22  Since this case is filed with the AAA, the AAA Employment Arbitration Rules Amended and Effective

23  November 1, 2009 (the "Employment Arbitration Rules") apply to procedural matters.

24     The substantive law in this case is the law of the state of California, since Claimant's employment

25  took place in California, as well as federal law, where applicable.

26  ///

27  ///

28  ///

## IV.

## IT IS APPROPRIATE IN THIS MATTER FOR THE ARBITRATOR TO DECIDE THE ISSUE OF ARBITRABILITY.

Unless the parties clearly and unmistakably provide otherwise, the question whether they agreed to arbitrate the particular dispute is to be decided by the court, not the arbitrator. [*First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 944; see *Howsam v. Dean Witter Reynolds, Inc.* (2002) 537 U.S. 79, 83-84; see also *BG Group PLC v. Republic of Argentina* (2014) 572 U.S. 25, 34 ("courts presume that the parties intend courts, not arbitrators, to decide … disputes about 'arbitrability'"); *Jackpot Harvesting, Inc. v. Applied Underwriters, Inc.* (2019) 33 Cal.App.5th 719, 730.]

However, an arbitration clause that "clearly and unmistakably" empowers the arbitrator to decide what matters are arbitrable will be given effect. [See *Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63, 66, 68-69; *B.D v. Blizzard Entertainment, Inc.* (2022) 76 Cal.App.5th 931, 957-958 – express delegation clause and incorporation of JAMS Comprehensive Rules authorized delegation of issue of enforceability of arbitration clause to arbitrator in face of challenge that clause waived consumer's right to seek public injunctive relief; *Aanderud v. Sup.Ct. (Vivint Solar Developer, LLC, Real Party in Interest)* (2017) 13 Cal.App.5th 880, 892.]

Arbitration provider rules may also form the basis for an arbitrator's power to determine arbitrability. For example, both the AAA Employment Arbitration Rules and the AAA Commercial Arbitration Rules expressly give the arbitrator the power to determine arbitrability of disputes, including the scope, validity, and enforceability of the arbitration agreement. The AAA Employment Arbitration Rules provide:

> 6.    Jurisdiction
>
> a.    The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.
>
> b.    The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. . . .
>
> c.    [T]he arbitrator may rule on such objections as a preliminary matter or as part of the final award.

[AAA Employment Arbitration Rules, Rule 6. See also, AAA Commercial Arbitration Rules and Mediation Procedures, Rule R-7.]

1  In *Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, the court held that an

2 agreement to arbitrate according to the AAA Commercial Arbitration Rules[1] was "clear and unmistakable

3 evidence" of the parties' intent that the arbitrator would decide whether the claim was arbitrable." [*Id.* at

4 533, 557.]  The court in *Arnold v. Homeaway, Inc.* (5th Cir. 2018) 890 F.3d 546 likewise held that an

5 agreement to arbitrate according to the AAA rules was "clear and unmistakable evidence" of the parties'

6 intent that the arbitrator would decide whether the claim was arbitrable. [*Id.* at 551-553.]

7  Even an arbitration clause which merely requires arbitration of "(a)ny controversy arising in

8 connection with or relating to this Agreement . . . or any other matter or thing" "clearly and unmistakably"

9 evidences the parties' intent to have the arbitrator determine which disputes are arbitrable. [*Bell v. Cendant*

10 *Corp.* (2nd Cir. 2002) 293 F.3d 563, 568.]

11  Here the arbitration provision contained in the Arbitration Agreement provides:

12   The binding arbitration and selection of a neutral arbitrator will be conducted
    in conformity with the procedures of the Federal Arbitration Act (9 U.S.C. §
13   1, *et seq.*) and the California Arbitration Act . . . .The arbitrator shall have the
    authority to resolve all portions of the dispute, including disputes relating to
14   the interpretation or enforceability of this Agreement . . . .

15 The arbitration agreement at issue in this case "clearly and unmistakably" confers the power to determine

16 issues of arbitrability on the Arbitrator.  When the issue of arbitrability was brought before the U.S. District

17 Court for the Southern District of California, the Hon. Roger Benitez found that "[b]ased on the language

18 of the Delegation Clause in the Arbitration Agreement, the Court cannot decide threshold issues of validity

19 and enforceability and therefore, compels arbitration on the arbitrability of Plaintiffs' claims."

20  Based on all of the above, this Arbitrator clearly has the authority to rule on the issue of arbitrability.

21

22         **V.**

23      **DISCUSSION AND RULING**

24 **A.**  **Unconscionability as Grounds for Revocation of An Arbitration Agreement.**

25  The Federal Arbitration Act (FAA) provides that an arbitration agreement is "valid, irrevocable, and

26

27

28 [1]The wording of the arbitrability clause in the AAA Commercial Arbitration Rules (Rule R-7) is
  identical to that in the AAA Employment Arbitration Rules.

1    enforceable" unless "grounds exist at law or in equity for [its] revocation." [9 U.S.C. § 2.] As a result, "the

2    existence of a valid agreement to arbitrate is determined by reference to state law principles regarding the

3    formation, revocation, and enforceability of contracts generally." [*See Kinney v. United HealthCare Servs.,*

4    *Inc.* (1999) 70 Cal.App.4th 1332, 1327-1328.]

5         Under California arbitration law, arbitration must be compelled if it is determined "that an agreement

6    to arbitrate exists, unless it is determined that: (a) The right to compel arbitration has been waived by the

7    petitioner; or (b) Grounds exist for the revocation of the agreement," among other exceptions. [Code Civ.

8    Proc. § 1281.2.] The party opposing arbitration bears the burden of proving, by a preponderance of the

9    evidence, any fact necessary to its defense. [Code Civ. Proc. §§ 1281.2, 1290.2; *Banner Entertainment, Inc.*

10   *v. Superior Court* (1998) 62 Cal.App.4th 348, 356-357 (party petitioning to compel arbitration has the burden

11   of establishing the existence of a valid agreement to arbitrate, and the party opposing the petition has the

12   burden of proving, by a preponderance of the evidence, any fact necessary to its defense); *Engalla v.*

13   *Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 971; *Rosenthal v. Great Western Fin'l Securities*

14   *Corp.* (1996) 14 Cal.4th 394, 413 (moving party's burden is a preponderance of evidence).]

15        The Arbitration Agreement provides that binding arbitration and selection of a neutral arbitrator will

16   be conducted in conformity with the procedures of the FAA (9 U.S.C. § 1, et seq.) and the California

17   Arbitration Act (CAA) (Cal. Code Civ. Proc. § 1280, *et seq.*).[2] Generally applicable contract defenses, such

18   as unconscionability, may be applied to invalidate arbitration agreements without contravening the FAA or

19   California law. [*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125.] Absent proof of a generally applicable

20   contract defense to invalidate the agreement, courts must "rigorously" enforce arbitration agreements

21   according to their terms. [*American Express Co. v. Italian Colors Restaurant* (2013) 570 U.S. 228, 233.]

22   As stated by the California Supreme Court in *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109:

23            The unconscionability inquiry is not a license for courts to impose their
              renditions of an ideal arbitral scheme. Rather, in the context of a standard
24            contract of adhesion setting forth conditions of employment, the
              unconscionability inquiry focuses on whether the arbitral scheme imposes
25            costs and risks on a wage claimant that make the resolution of the wage
              dispute inaccessible and unaffordable, and thereby "effectively blocks every

26

27   ────────────────────

28   [2]The FAA does not preempt all state laws relating to arbitration – only those which discriminate
     against arbitration, like laws prohibiting arbitration of a particular type of claim. [9 U.S.C.A. § 1, *et seq.*]

1    forum for the redress of disputes, including arbitration itself."

2   [*Id.* at 1148, citing in *Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 90.]

3    Under the FAA, any doubts concerning the scope of arbitrable issues should be resolved in favor of

4   arbitration, whether the problem at hand is the construction of the contract language itself or an allegation

5   of waiver, delay, or a like defense to arbitrability.  [*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*

6   (1983) 460 U.S. 1, 24-25.]  As the U.S. Supreme Court stated in *Morgan v. Sundance, Inc.* (2022) 596 U.S.

7   411:

8   > [T]he FAA's policy favoring arbitration is merely an acknowledgment of the
    > FAA's commitment to overrule the judiciary's longstanding refusal to enforce
9   > agreements to arbitrate and to place such agreements upon the same footing
    > as other contracts.  Or in another formulation: The policy is to make
10  > arbitration agreements as enforceable as other contracts, but not more so.
    > Accordingly, a court must hold a party to its arbitration contract just as the
11  > court would to any other kind.

12  [*Id.* at 418, internal citations and quotation marks omitted.]

13    "In determining the rights of parties to enforce an arbitration agreement within the scope of the

14  [FAA], courts apply state contract law while giving due regard to the federal policy favoring arbitration."

15  [*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.]

16  Because of California's strong public policy in favor of arbitration, any doubts regarding the validity of an

17  arbitration agreement are resolved in favor of arbitration.  [*Coast Plaza Doctors Hosp. v. Blue Cross of*

18  *California* (2000) 83 Cal.App.4th 677, 686; see *Armendariz v. Foundation Health Psychcare Services, Inc.*

19  (2000) 24 Cal.4th 83, 97.]

20    Here, the Hon. Judge Roger Benitez has already ruled that an agreement to arbitrate exists.  [See

21  Declaration of Ashley N. Fasano dated February 16, 2024, **Exhibit B**, which is the Order Granting-in-Part

22  Respondent's Motion to Compel Arbitration in Case 3:22-cv-01151-BEN-BLM (which is the underlying

23  case for this arbitration matter).]  Claimant argues, however, that the Arbitration Agreement is unenforceable

24  and should be revoked because it is both procedurally and substantively unconscionable.  "Because

25  unconscionability is a reason for refusing to enforce contracts generally, it is also a valid reason for refusing

26  to enforce an arbitration agreement."  [*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000)

27  24 Cal.4th 83, 114; see also, *Nagrampa v. MailCoups, Inc.* (9th Cir. 2006) 469 F.3d 1257, 1280 ("It is well-

28  established that unconscionability is a generally applicable contract defense, which may render an arbitration

7

1    provision unenforceable," citing *Doctor's Associates, Inc. v. Casarotto* (1996) 517 U.S. 681, 686-687).]

2          Under California law, a court may refuse to enforce a provision of a contract if it determines that the

3    provision was "unconscionable at the time it was made." [Civ. Code § 1670.5(a).] Unconscionability has

4    both procedural and substantive elements. [*Armendariz v. Foundation Health Psychcare Services, Inc.*

5    (2000) 24 Cal.4th 83, 114; *Jones v. Wells Fargo Bank* (2003) 112 Cal.App.4th 1527, 1539.] Procedural

6    unconscionability focuses on oppression or surprise. [*Flores v. Transamerica* (2001) 93 Cal.App.4th 846,

7    833.] Substantive unconscionability focuses on the actual terms of the agreement and evaluates whether they

8    create "overly harsh" or "one-sided" results. [*Armendariz v. Foundation Health Psychcare Services, Inc.*

9    (2000) 24 Cal.4th 83, 114.]

10          "[A] finding of procedural unconscionability does not mean that a contract will not be enforced, but

11    rather that courts will scrutinize the substantive terms of the contract to ensure they are not manifestly unfair

12    or one-sided." [*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1244.] Both procedural and

13    substantive unconscionability must appear for a court (or arbitrator) to invalidate a contract or one of its

14    individual terms. [*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114;

15    *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 174).] Where only a minimal amount of procedural

16    unconscionability exists, a plaintiff must show significant substantive unfairness to avoid arbitration.

17    [*Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 796 ("Where . . . the degree of procedural

18    unconscionability . . . is low, [ ] the agreement will be enforceable unless the degree of substantive

19    unconscionability is high."); *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th

20    83, 114 ("the more substantively oppressive the contract term, the less evidence of procedural

21    unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."]

22    "Essentially, a sliding scale is invoked . . . ." [*Performance Team Freight Systems, Inc. v. Aleman* (2015)

23    241 Cal.App.4th 1233, 1246-1247; see also *Subcontracting Concepts (CT), LLC v. De Melo* (2019) 34

24    Cal.App.5th 201, 209.]

25          Claimant contends the Arbitration Agreement is both procedurally and substantively unconscionable.

26    Respondent contends that only one clause of the Arbitration Agreement is unconscionable (the mediation

27    cost clause), that it should be severed, and that the remainder of the Arbitration Agreement should be

28    ///

1   enforced.[3]

2   **B.**      **Procedural Unconscionability.**

3          1.      <u>The Law Regarding Procedural Unconscionability</u>.

4          First, arbitration as a mandatory condition of employment, by itself, is insufficient to find procedural

5   unconscionability.      [*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1241.] Procedural

6   unconscionability focuses on the elements of oppression and surprise relating to the manner in which the

7   contract was negotiated and the circumstances of the parties. [*Armendariz v. Foundation Health Psychcare*

8   *Services, Inc.* (2000) 24 Cal.4th 83, 114; *American Software, Inc. v. Ali* (1996) 46 Cal.App.4th 1386, 1390).]

9   "Oppression arises from an inequality of bargaining power which results in no real negotiation and an

10  absence of meaningful choice," while "[s]urprise involves the extent to which the terms of the bargain are

11  hidden in a prolix printed form drafted by a party in a superior bargaining position." [*Davis v. TWC Dealer*

12  *Group, Inc.* (2019) 41 Cal.App.5th 662, 671, internal citation and quotation marks omitted; *Magno v. The*

13  *College Network, Inc.* (2016) 1 Cal.App.5th 277, 285.]

14         2.      <u>Oppression</u>.

15         Claimant contends the Arbitration Agreement is a contract of adhesion imposed as a mandatory

16  condition of her employment.  (Aya admitted in its Motion to Compel Arbitration and Dismiss Court Action

17  that the Arbitration Agreement was a condition of Clamant's employment.) Claimant states that the

18  Agreement was presented to her via DocuSign, she was not presented with the option to revise, edit, or

19  negotiate the terms of the Agreement, and she "understood and believed" she was required to sign the

20  ──────────────────

21         [3]Respondent included with its Opposition the Declaration of Ashley N. Fasano dated February 16,
    2024, which had six rulings/orders/decisions from other cases attached as exhibits.  There was no request
22  that the Arbitrator take judicial notice of these documents, so none is taken.  Additionally, in none of the
    rules/orders/decisions did the courts actually address the issue of unconscionability, so they are not relevant
23  to the issues at hand.  In **Exhibit B** (from Case 3:22-cv-01151-BEN-BLM, which is the underlying case for
    this arbitration matter) the court delegated the issue of unconscionability to the arbitrator, under the
24  delegation clause in the arbitration agreement.  In **Exhibit C** (from Case No. 37-2020-00034851-CU-OE-
    CTL), unconscionability was not mentioned.     In **Exhibit D** (from Case No. 21STCV22158),
25  unconscionability was not mentioned.  In **Exhibit E** (from Case No. RG18926616), unconscionability was
    not mentioned.  In Exhibit F (from Case No. ECU002266), unconscionability was not mentioned.  In
26  **Exhibit G** (from Case No. 22STCV012224), unconscionability was not an issue.  (In fact, the Ruling clearly
27  stated:   "Plaintiff does not argue the agreement is unconscionable. . . . the court need not address
28  unconscionability here."

1  Agreement as presented by Respondent as a condition of her employment with Aya. It is important to note,

2  however, that just over the signature blocks, the Agreement provides:

> By signing below, You acknowledge and agree that You have carefully read
> this Agreement, you understand it, and that You knowingly and voluntarily
> agree to it.   You further acknowledge that you have been given the
> opportunity to discuss this Agreement with your own legal counsel and have
> availed yourself of that opportunity to the extent required.

6  Therefore, while it may be true that no one *told* Claimant she had the option to revise, edit, or negotiate the

7  terms of the Agreement, Claimant was on notice that she could have her own attorney review the Agreement.

8  Additionally, no document or person stated that Claimant was **not** allowed to revise, edit, or negotiate the

9  terms of the Agreement. (Claimant repeatedly argues it would not have been reasonable for her to employ

10  an attorney to review a contract for only 13 weeks of employment.  However, this is inconsistent with the

11  fact that Claimant has sued, and is now in arbitration, concerning a contract for only 13 weeks of

12  employment.  The period of employment is of little relevance.)

13  The California Supreme Court has consistently stated that the procedural element of an

14  unconscionable contract generally takes the form of a contract of adhesion. [*Walnut Producers of California*

15  *v. Diamond Foods, Inc.* (2010) 187 Cal.4th 634, 646.]  The unconscionability analysis, therefore, "begins

16  with an inquiry into whether the contract is one of adhesion" and a finding of a contract of adhesion is

17  essentially a finding of at least minimal procedural unconscionability.  [*Armendariz v. Foundation Health*

18  *Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 113; *OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 126;

19  *MacClelland v. Cellco P'ship* (N.D. Cal. 2022) 609 F.Supp.1024, 1033.] "An adhesive contract is

20  standardized, generally on a preprinted form, and offered by the party with superior bargaining power on a

21  take-it-or-leave-it basis." [*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 124; *Baltazar v. Forever 21, Inc.*

22  (2016) 62 Cal.4th 1237, 1245.]  Arbitration contracts imposed as a condition of employment are typically

23  adhesive. [*Armendariz v. Foundational Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114-115;

24  *OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 126; *Serpa v. California Surety Investigations, Inc.* (2013) 215

25  Cal.App.4th 695, 704.]  "When the contract is a contract of adhesion imposed and drafted by the party with

26  superior bargaining power, the adhesive nature of the contract is 'evidence of some degree of procedural

27  unconscionability.'" [*Sanchez v. Carmax Auto Superstores California, LLC* (2014) 224 Cal.App.4th 398,

28  403.]

About two weeks after Claimant signed the employment letter agreement (which also contained an arbitration provision)[4], the Arbitration Agreement was electronically presented to Claimant via DocuSign. The Arbitration Agreement is clearly a standardized, preprinted form offered by the party with superior bargaining power.  (The footer on the Arbitration Agreement form indicates it was last updated in 2016, further demonstrating that it is a standardized contract.)

Claimant states she "understood and believed" she was required to sign the Agreement "as presented" by Respondent as a condition of her employment with Respondent, even though no document says that, no person told her that, and the Arbitration Agreement provided Claimant had a right to have her own attorney review the Arbitration Agreement.

"The circumstances relevant to establishing oppression (beyond the fact that the agreement is a contract of adhesion) include, but are not limited to (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney."  [*Sanchez v. Carmax Auto Superstores California, LLC* (2014) 224 Cal.App.4th 398, 403.]

Claimant states that she electronically signed a letter agreement accepting a position with Respondent on April 15, 2022.   That letter agreement provided, among other things:

> 9. Arbitration. You and Aya agree that any and all claims arising out of, or relating to, your employment with Aya will be subject to binding arbitration pursuant to the Federal Arbitration Act. The claims covered by this provision include, but are not limited to, contract claims, tort claims, wrongful termination claims, claims of discrimination, harassment or retaliation, wage claims, and claims for violation of any public policy, federal, state or other governmental law, statute, regulation or ordinance.  To the extent required by law, you will not be required to pay administrative fees, including arbitrator's fees, beyond the fees which would have been incurred by you, if any, had the dispute arbitrated under this provision been litigated in state or federal court. The arbitrator will have the authority to order all remedies that would be available to the parties if the dispute between them were before a state or federal court. The arbitration will take place in San Diego, California, or, where required by applicable law, the county in which the Facility is located. This provision and Agreement does not supersede any separate arbitration agreement previously or subsequently executed between Aya and you.

///

---

[4]Declaration of Amber Zeeb, dated February 16, 2024, ¶ 7, **Exhibit A** thereto.

1    About two weeks after signing the employment agreement, Respondent sent Claimant a separate two-page

2    arbitration agreement which she was requested to sign via DocuSign.  Claimant signed the Arbitration

3    Agreement on April 27, 2022.  The first day of her assignment was May 16, 2022.  [Declaration of Lauren

4    Miller dated January 25, 2024, ¶¶ 3, 4, 8.]  Claimant had a sufficient amount of time to read and consider

5    the proposed Arbitration Agreement (and she acknowledged she understood it when she signed it).[5]  The fact

6    that Claimant was made to understand that signing the Arbitration Agreement was a condition of her

7    employment did exert a certain amount of pressure on Claimant to sign the agreement, although it does not

8    appear there was any other pressure put on Claimant to sign it.  Claimant argues that undue pressure was put

9    on her to sign the Arbitration Agreement because she had already signed the letter agreement accepting

10   employment, and had spent the previous two weeks preparing to temporarily re-locate for the short-term

11   position. The Arbitrator does not agree; Claimant had already agreed to arbitration when she signed the letter

12   contract.  If she had been concerned about arbitration, she had already had two weeks to discuss this with

13   an attorney or with colleagues.  She also could have decided not to proceed with the employment.  (The letter

14   agreement provided that her employment was "at will.")

15          The Arbitration Agreement is a two-page, stand-alone document, clearly titled "Arbitration

16   Agreement," in easily readable type.  The Arbitration Agreement is also not particularly complex, although

17   certain provisions would likely be unclear to a non-attorney.  For example, a lay person would not be

18   expected to know what constitutes "non-waivable statutory rights" (as described in section 3 of the

19   Agreement), or the meaning of "to the extent required by law" (as used in section 3 of the Agreement).

20   Claimant is a Registered Nurse, so she has quite a bit of post-graduation education, although apparently no

21   education relating to contracts, arbitration, or litigation. Claimant's review of the Arbitration Agreement was

22   not aided by an attorney but, as clearly stated just above the signature blocks, Claimant *could have* had an

23   attorney review the Arbitration Agreement, but chose not to.

24   ///

25

26   _____

     [5]Just over the signature blocks, the Agreement provides:

27

28          By signing below, You acknowledge and agree that You have
            carefully read this Agreement, you understand it . . . ."

1    The fact that the Arbitration Agreement is a preprinted form which was presented to Claimant via

2    DocuSign, and that signing it was a condition of her employment,, is sufficient to make it adhesive, although

3    the adhesion factor with this agreement is minimal.  There is no heightened level of oppression relating to

4    the manner in which the Arbitration Agreement was presented to Claimant or in which she signed it.

5          3.    Surprise.

6          Claimant also argues the Arbitration Agreement is procedurally unconscionable based on "surprise"

7    because i) it did not explain how to initiate arbitration, ii)  it did not identify what procedural rules apply,

8    iii) it did not identify an arbitral forum, and iv) it included language of a "jargonistic nature" in the provision

9    regarding the costs and fees related to arbitration.

10          i.    How to initiate arbitration:  The fact that an arbitration agreement does not explain how to

11    initiate arbitration has been held to **not** constitute "surprise."  [*Alvarez v. Altamed Health Services Corp.*

12    (2021) 60 Cal.App.5th 572, 590; *Fuentes v. Empire Nissan, Inc.* (2023) 90 Cal.App.5th 919, 933-934.]

13          ii.    Failure to identify procedural rules:  The issue concerning the failure to attach or identify the

14    applicable rules of procedure has fairly recently been addressed by the California courts.  Courts (including

15    the California Supreme Court) have held that the failure to provide a copy of the arbitration rules generally

16    raises procedural unconscionability concerns **only** if there is a substantively unconscionable provision in the

17    omitted rules.  [*Baltazar  v.  Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1246; *Cisneros Alvarez v. Altamed*

18    *Health Services Corporation* (2021) 60 Cal.App.5th 572, 590 (no unconscionability based on failure to

19    identify applicable rules where plaintiff's unconscionability claim did not depend on the arbitration rules in

20    question; agreement upheld where it stated only that the procedures of the CAA would apply); *Alvarez v.*

21    *Altamed  Health  Services  Corp.* (2021) 60 Cal.App.5th 572, 590 (a viable claim of procedural

22    unconscionability for failure to identify the particular version of the applicable arbitral rules – like a claim

23    for failure to attach the rules themselves – depends in some manner on the substantive unfairness of a term

24    or terms contained within the unidentified version of the rules applicable to the dispute)].

25          In *Alvarez v. Altamed Health Services Corp.* (2021) 60 Cal.App.5th 572, the court rejected this

26    complaint. It reasoned "the failure to provide a copy of the arbitration rules generally raises procedural

27    unconscionability concerns only if there is a substantively unconscionable provision in the omitted rules. The

28    agreement  in  this  case  states  the  procedures  of  the  CAA  will  apply.  There  are  no  substantively

1  unconscionable rules in the Act." [*Id.* at 590.]  The court in *Fuentes v. Empire Nissan, Inc.* (2023) 90

2  Cal.App.5th 919, 934 followed *Alvarez.*  Fuentes's agreement stated the procedural rules of the CAA applied,

3  and Fuentes did not claim any provision of the CAA was unconscionable.  [*Id.* at 933.]  Respondent argues

4  the Arbitration Agreement *does* identify applicable rules for the arbitration because it provides: "[t]he

5  binding arbitration and selection of a neutral arbitrator will be conducted in conformity with the procedures

6  of the FAA (9 U.S.C. § 1, et seq.) and the CAA (Cal. Code Civ. Proc. § 1280, et seq.) and if you are

7  employed in California, in accordance with any other applicable arbitration law."  Following the rulings

8  described above, the fact that the Arbitration Agreement identifies both the FAA and the CAA, and Claimant

9  does not claim any provision of either Act is unconscionable, there is no procedural unconscionability

10  relating to the failure to identify the procedural rules.  (Claimant also does not contend there is anything

11  unconscionable or unfair in the AAA Employment Arbitration Rules.)

12      Claimant cites *Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 244-245 and *Murrey v.*

13  *Superior Ct.* (2023) 87 Cal.App.5th 1223, 1238 in support of her argument that where the employer not only

14  fails to provide a copy of the governing rules, but also fails to clearly identify which rules will govern,

15  oppression exists.  However, *Carbajal v. CWPSC, Inc.* predated the California Supreme Court case of

16  *Baltazar v. Forever 21, Inc.* by about a month, and is inconsistent with its holding.[6]  In *Murrey v. Superior*

17  *Ct.* (2023) 87 Cal.App.5th 1223, the court held an employment arbitration agreement demonstrated a

18  heightened degree of procedural unconscionability beyond the agreement's adhesive nature because, even

19  though it incorporated dispute resolution rules, it failed to identify the dispute resolution provider selected

20  for employee's work location, failed to designate a fallback set of accepted rules if that provider changed,

21  failed to designate a location for the arbitration, failed to explain which version of rules was applicable, **and**

22  **granted the employer the sole right to select the dispute resolution provider.**  [*Id.* at 1239.]  *Murrey* also

23  involved a rather unique arbitration agreement which complicated the whole arbitration process.  The

24  agreement required the employee to read the company's Solutions Manual, which provided:

25

26      [6]"The full scope of *Carbajal*'s procedural unconscionability rationale is in question after the Supreme

27  Court issued its decision in *Baltazar* [citation omitted], shortly after *Carbajal* was published."  [*Davis v.*

    *Kozak* (2020) 53 Cal.App.5th 897; see also *Nguyen v. Applied Medical Resources Corp.* (2016) 4

28  Cal.App.5th 232, 248-249.]

> For each location covered by Solutions, the Company has designated a DRO which shall handle any and all [arbitrations] for employees based in such location. Employees may obtain information regarding the DRO designated to handle their Covered Claims, including the name and location of the DRO and the DRO's current rules of procedure, from the Solutions Administrator, or the local HR manager. Except as provided otherwise by this Procedure, the mediation and arbitration . . . will be administered by the designated DRO under its current rules for mediation and for arbitration, as may be amended, without notice by the DRO.

[*Id.* at 1240.] Therefore, although the agreement did provide a way for the employee to find out which rules and procedures were required, the whole process was very convoluted. There were also numerous other problems with the agreement, including its "much larger secrecy problem," which caused it to be permeated with unconscionability. [*Id.* at 1238.] That is not the case here. Here, the Arbitration Agreement states that the FAA and the CAA apply.

The failure to identify rules other than the FAA and the CAA does not constitute procedural unconscionability by way of "surprise."[7]

        iii.   <u>Failure to identify arbitral forum</u>: An arbitration agreement need not designate a specific arbitral tribunal, such as the AAA, where, as here, the cited rules specifically provide a mechanism to select an arbitrator. [*Davis v. Kozak* (2020) 53 Cal.App,.5th 897, 908.] As noted above, the Arbitration Agreement provides:

> The binding arbitration and selection of a neutral arbitrator will be conducted in conformity with the procedures of the Federal Arbitration Act (9 U.S.C. § 1, et seq.) and the California Arbitration Act (Cal. Code Civ. Proc. § 1280, et seq.) and if you are employed in California, in accordance with any other applicable arbitration law.

The FAA provides that, if there is no defined method for the selection of an arbitrator in the agreement, "then upon the application of either party to the controversy the court shall designate and appoint an arbitrator[s]." [9 U.S.C. § 5.] The CAA provides:

> . . . If the arbitration agreement does not provide a method for appointing an arbitrator, the parties to the agreement who seek arbitration and against whom arbitration is sought may agree on a method of appointing an arbitrator and that method shall be followed. In the absence of an agreed method, or if the agreed method fails or for any reason cannot be followed, or when an

---

[7]It is noted that in *OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, the court treated the lack of rules and procedures as a substantive unconscionability issue rather than a procedural one, but the analysis would be the same either way.

1                arbitrator appointed fails to act and his or her successor has not been
appointed, the court, on petition of a party to the arbitration agreement, shall
2                appoint the arbitrator.

3 [Code Civ. Proc. § 1281.6.]

4       This case is distinguishable from *Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, since the

5 Arbitration Agreement herein does not grant the employer the sole right to select the dispute resolution

6 provider. The failure to identify an arbitral forum does not constitute procedural unconscionability by way

7 of "surprise."

8       iv.   <u>Language of the provision regarding fees and costs relating to arbitration:</u> "Surprise" may

9 be found where the agreement uses language (for example, complex statements filled with legal jargon)

10 which renders the substance of the challenged provision "opaque." [*Long Beach Unified Sch. Dist. v.*

11 *Margaret Williams, LLC* (2019) 43 Cal.App.5th 87, 104l *OTO, LLC v. Kho* (2019) 8 Cal.5th 111, 128;

12 *Davis v. TWC Dealer Group, Inc.* (2019) 41 Cal.App.5th 662, 671.] "Surprise" may also be found where "the

13 terms of the bargain are hidden in a prolix printed form drafted by a party in a superior bargaining position."

14 [*OTO, LLC v. Kho* (2019) 8 Cal.5th 111, 126; *Davis v. TWC Dealer Group, Inc.* (2019) 41 Cal.App.5th 662,

15 671; *Magno v. The College Network, Inc.* (2016) 1 Cal.App.5th 277, 285.]

16       The Arbitration Agreement provides:

17                For claims determined to involve non-waivable statutory rights and to the
extent required by law, You will not be required to pay any administrative
18                fees or costs, including arbitrator's fees, beyond the fees and costs which
would have been incurred by you, if any, had the dispute arbitrated under
19                thisn provision been litigated in state or federal court.

20 [Arbitration Agreement, ¶ 3.] Claimant argues that this cost provision is indecipherable to a lay person and

21 likely most lawyers as well, making it a "surprise." She says that at the time she signed the Arbitration

22 Agreement, she did not know what constituted a "non-waivable statutory right," or to what extent the law

23 would or would not require her to pay arbitration fees and costs on the claims she raised. [Declaration of

24 Lauren Miller, dated January 25, 2024, ¶ 12.] Indeed, the question of whether a statutory right is "non-

25 waivable" has been developed through decades of case law and can only be assessed through access to legal

26 resources. [*See e.g.*, *Fittante v. Palm Springs Motors, Inc.* (2003) 105 Cal.App.4th 708, 718 ("An

27 unwaivable statutory right is one enacted for a public purpose, and may be recognized by the test question,

28 would it contravene public policy to allow the parties to exact a waiver of its protection?").]

1    Respondent argues that the definitions of "statutory right" and "non-waivable" are readily available

2    without any legal research. Knowing what these two terms mean, however, does not inform Claimant

3    regarding what her particular "non-waivable statutory right[s]" are in this situation. The fees and costs

4    provision contained in the Arbitration Agreement involves legal language which prevented Claimant from

5    assessing the extent to which Claimant would be responsible for paying the arbitrator's fees, it therefore

6    gives rise to "surprise."

7    Respondent also argues that the language in the Arbitration Agreement "directly mirrors" the

8    language of the California Supreme Court in *Armendariz v. Foundation Health Psychcare Services, Inc.*

9    (2000) 24 Cal.4th 83. It does not. In *Armendariz*, the Court held that an "arbitration agreement . . . cannot

10   generally require the employee to bear any type of expense that the employee would not be required to bear

11   if he or she were free to bring the action in court." [*Id*. at 111.] That is different than the language in the

12   Arbitration Agreement, since the language in the Arbitration Agreement limits the fees and costs payment

13   provision to "non-waivable statutory rights," which could leave an employee worried that she might have

14   to pay arbitration fees and costs for types of claims *not involving* "non-waivable statutory rights." It does

15   not appear the language regarding "non-waivable statutory rights" was intended by Respondent to make the

16   agreement confusing, surprising, unfair or one-sided; it is more likely this phrase was used to attempt to

17   comply with the requirements of *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24

18   Cal.4th 83, since the court in *Armendariz* referred to "the basic principle of nonwaivability of statutory civil

19   rights in the workplace." [*Id*. at 103, citing *Cole v. Burns Intern. Security Services* (D.C. Cir.1997) 105 F.3d

20   1465.] The provision is nonetheless very difficult for a lay person to understand, which gives rise to

21   "surprise," constituting procedural unconscionability.

22          v.    The provision requiring Claimant to pay half the cost of a mediation:

23          See section 5.C.4 below.

24          vi.   The provision requiring the arbitration to take place in San Diego:

25          See section 5.C.5. below.

26   4.   Conclusion Regarding Procedural Unconscionability.

27          There is a degree of procedural unconscionability due to oppression present in this Arbitration

28   Agreement. It is a contract of adhesion, although the adhesion factor with this agreement is fairly slight. The

17

1  agreement is a two-page stand-alone document, which is clearly titled "Arbitration Agreement." Claimant

2  was not rushed, and could have had an attorney review the Arbitration Agreement before signing the

3  agreement.  However, she was under some degree of pressure to sign the Arbitration Agreement, since she

4  was required to sign it as a condition of employment. The degree of procedural unconscionability relating

5  to the Arbitration Agreement being a contract of adhesion is minimal.

6         There is also procedural unconscionability based on "surprise," due to the "opaque" fees and costs

7  provision.  However, as discussed below, this provision can easily be severed.

8  **C.    Substantive Unconscionability**

9         1.    The Law Regarding Substantive Unconscionability.

10        Claimant contends there is substantive unconscionability relating to 1) the costs and fees provision,

11  2) the requirement to engage in "good faith efforts" to attempt to informally resolve the matter and, if that

12  is not successful, to participate in a mediation, 3) the requirement that Claimant pay half the cost of the

13  mediation, and 4) the requirement that the arbitration be conducted in San Diego.

14        "'Substantive unconscionability addresses the fairness of the term in dispute.'" [*Pokorny v. Quixtar,*

15  *Inc.* (9th Cir. 2010) 601 F.3d 987, 997-998 (quoting *Szetela v. Discover Bank* (2002) 97 Cal.App.4th 1094,

16  1101.]  Substantive unconscionability focuses on the actual terms of the agreement and evaluates whether

17  they create "overly harsh" or "one-sided" results.  [*Armendariz v. Foundation Health Psychcare Services,*

18  *Inc.* (2000) 24 Cal.4th 83, 114, internal citation and quotations omitted.] "In assessing substantive

19  unconscionability, the paramount consideration is mutuality." [*Pinela v. Neiman Marcus Group, Inc.* (2015)

20  238 Cal.App.4th 227, 241, internal citation and quotation marks omitted.]  "The substantive fairness of [a]

21  particular agreement must be considered in terms of what [the employee] gave up and what [the employee]

22  received in return."  [*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 136.]  Arbitration agreements are

23  substantively unconscionable where they lack a "modicum of bilaterality, without at least some reasonable

24  justification for such one-sidedness based on 'business realities.'" [*Armendariz v. Foundation Health*

25  *Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 117; *Ingle v. Circuit City Stores, Inc.* (9th Cir. 2003) 328 F.3d

26  1165, 1174 (applying California law, unilateral agreement presumed unconscionable).]

27        2.    The Costs and Fees Provision.

28        The Arbitration Agreement implies that the employee may have to pay part of the administrative fees

1 and costs, and arbitrator's fees. Specifically, it provides:

2     For claims determined to involve non-waivable statutory rights and to the
      extent required by law, You will not be required to pay any administrative
3     fees or costs, including Arbitrator's fees, beyond the fees and costs which
      would have been incurred by you, if any, had the dispute arbitrated under this
4     provision been litigated in state or federal court.

5     Code of Civil Procedure section 1284.2 provides that parties to an arbitration must share "pro rata"

6 the "expenses and fees of the neutral arbitrator." In *Armendariz v. Foundation Health Psychcare Services,*

7 *Inc.* (2000) 24 Cal.4th 83, however, the California Supreme Court altered that rule with respect to arbitration

8 agreements imposed as a mandatory condition of employment and that would require arbitration of "non-

9 waivable" statutory rights. Specifically, the Court held that:

10    [C]onsistent with the majority of jurisdictions to consider this issue, we
      conclude that when an employer imposes mandatory arbitration as a condition
11    of employment, the arbitration agreement or arbitration process cannot
      generally require the employee to bear any *type* of expense that the employee
12    would not be required to bear if he or she were free to bring the action in
      court.

13

14 [*Id.* at 110-111, emphasis in original.]

15     Here, the arbitration fees and costs provision does not require Claimant to pay any fees and costs

16 beyond what she would have incurred had the case been litigated in court. Employment law attorneys

17 understand that. Employment law attorneys also understand that employers are required by *Armendariz* and

18 its progeny to pay all arbitration fees and costs beyond what the Claimant would have incurred had the case

19 been litigated in court. The problem is that, as drafted, the fees and costs provision may be understood by

20 a lay person to mean that she *would* be required to pay arbitration fees and costs, because of the manner in

21 which it is worded. The provision regarding fees and costs relating to the arbitration is procedurally

22 unconscionable, as discussed in section V.B.3.iv. above, but not substantively unconscionable.

23     3.     The Requirements to Engage in "Good Faith Efforts" to Attempt to Informally Resolve the

24            Matter and to Participate in a Mediation.

25     The Arbitration requires **both parties** to participate in "good faith efforts to resolve" any dispute, and

26 then participate in a mediation prior to commencing arbitration. Claimant contends these requirements

27 impose additional barriers to assertion of her legal rights. Since Claimant would not have been required to

28 participate in "good faith efforts to resolve" the dispute or participate in a mediation prior to filing a lawsuit

1    in court, these requirements are in fact additional barriers to Claimant's assertion of her statutory rights, but

2    that does not necessarily make them substantively unconscionable.

3        Claimant argues that, additionally, even though completing these pre-arbitration dispute resolution

4    processes will take a certain amount of time, the Arbitration Agreement does not provide for any tolling of

5    the statute of limitations during the time the employee is complying with these requirements. Claimant says,

6    "Courts have recognized that the combination of pre-arbitration conditions and the absence of a tolling

7    provision can obstruct claims from being timely heard, contributing to the overall unfairness of an

8    agreement," citing *MacClelland . Cellco P'ship* (N.D. Cal. 2022) 609 F.Supp. 1024, 1042. While this is a

9    generally accurate statement, the facts in *MacClelland* are very different from those here. In *MacClelland*,

10   the arbitration agreement provided that consumers must provide "notice" of a claim within 180 days, but

11   under the Mass Arbitration Provision, consumers were not allowed to "file" their claims in arbitration until

12   all preceding tranches were adjudicated. Those in the queue who were not able to file within the limitations

13   period would be forever barred. The clause contained no tolling provision. The court held that forfeiture

14   of "entire legal rights" contravenes public policy. [*Ibid.*]

15       California courts have repeatedly held that a mutual requirement to satisfy internal grievance

16   procedures before arbitration does not render an agreement substantively unconscionable. [*Serpa v.*

17   *California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 710; *Nguyen v. Applied Medical*

18   *Resourc*es *Corp.* (2016) 4 Cal.App.5th 232, 254.] The Ninth Circuit recently held that "[p]re-arbitration

19   procedures are commonplace and can be both 'reasonable and laudable.'" [*Bielski v. Coinbase, Inc.* (9th

20   Cir., 2023) 87 F.4th 1003, 1014 (quoting *Serpa v. California Surety Investigations, Inc.* (2013) 215

21   Cal.App.4th 695, 710).]

22       Claimant attempts to distinguish *Nguyen v. Applied Medical Resourc*es *Corp.* (2016) 4 Cal.App.5th

23   232 on the grounds that the agreement in *Nguyen* did not "require" disputes be resolved through "informal

24   internal resolution." However, neither does the clause in this case. It provides:

25           Prior to submitting a dispute to arbitration under this Agreement, the Parties
             agree to make **good faith efforts to resolve** any dispute on an informal basis.

26           If efforts at information resolution fail the Parties agree to participate in a
             non-binding mediation prior to commencing arbitration . . . .

27

28   [Arbitration Agreement, ¶ 3, emphasis added.] Additionally, just as in *Nguyen*, the "informal internal

resolution" requirement applies bilaterally. [*Nguyen v. Applied Medical Resources Corp.* (2016) 4 Cal.App.5th 232, 254.]

Claimant also attempts to distinguish *Serpa v. California Surety Investigations, Inc.* on the grounds that the requirement for informal internal efforts is "precatory" not "mandatory." However, the arbitration agreement in *Serpa*, provided:

> I understand and agree that if my employment is terminated or my employment status is otherwise changed or if any other dispute arises concerning my employment and The Company and I cannot resolve such dispute through informal internal efforts, I will submit any such dispute . . . exclusively to binding arbitration . . . ."

[*Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 699.] The court did not actually hold that the clause was precatory. Rather, it said, "[T]o the extent the cited language is anything other than precatory, a requirement that internal grievance procedures be exhausted before proceeding to arbitration is both reasonable and laudable in an agreement containing a mutual obligation to arbitrate." [*Id.* at 518.] The language regarding use of informal internal efforts in the Arbitration Agreement in this case, and in the agreements in *Serpa* and *Nguyen*, is actually quite similar. Another similarity among the three clauses is that, in each case, the provision regarding "internal informal efforts" applied bilaterally – to both the employee and the employer. In the very recent case of *Dike v. Zara USA, Inc.* (2023) 672 F.Supp.3d 822, the Ninth Circuit found no problem with a clause which provided: "If any disputes cannot be resolved informally, the Company and each of its employees agree to use the mediation and arbitration procedures in this [Agreement] instead of a trial in court before a judge or jury." [*Id.* at 833.]

The requirement that **both parties** participate in "good faith efforts to resolve" the dispute, and then participate in a mediation prior to commencing arbitration, does not constitute substantive unconscionability.

4.   The Requirement That Claimant Pay Half the Cost of the Mediation.

The Arbitration Agreement requires an employee to pay half the cost of a mediation prior to proceeding to arbitration. Specifically, it provides:

> Prior to submitting a dispute to arbitration under the Agreement, the Parties agree to make good faith efforts to resolve any dispute on an informal basis. If efforts at informal resolution fail, the Parties agree to participate in a non-binding mediation prior to commencing arbitration with costs of the mediation to be split by the parties unless otherwise required by law.

[Arbitration Agreement, ¶ 3.] Requiring an employee to pay half the cost of the mediation before she is

allowed to proceed to mandatory arbitration is clearly a requirement that the employee pay a "type of expense that [she] would not be required to bear if [she] were free to bring the action in court," which the California Supreme Court forbade in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 111.

Respondent argues this issue is moot because, once Claimant had filed her lawsuit, Respondent offered to pay the entire cost of the mediation.  However, "[an employer's] after-the-fact expression of willingness to amend the arbitration agreement to conform to law is ineffective."  [*Martinez v. Master Protection Corporation* (2004) 118 Cal.App.4th 107, 116-117; *Parada v. Superior Court* (2009) 176 Cal.App4th 1554 1584.]  As the California Supreme Court held in *Armendariz*:

> [W]hether an employer is willing, now that the employment relationship has ended [to change a provision of an arbitration agreement so it conforms to law] does not change the fact that the arbitration agreement as written is unconscionable and contrary to public policy. Such a willingness 'can be seen, at most, as an offer to modify the contract; an offer that was never accepted. No existing rule of contract law permits a party to resuscitate a legally defective contract merely by offering to change it.'

[*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000)  24 Cal.4th 83, 125, quoting *Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1535-1536.]  The "mere inclusion of the costs provision in the arbitration agreement produces an unacceptable chilling effect" and is thus unconscionable.  [*Martinez v. Master Protection Corp.* (2004) 118 Cal.App.4th 107, 116-117; *see also Lhotka v. Geographic Expeditions, Inc.* (2010) 181 Cal.App.4th 816, 826 (requirement that claimants pay half of all mediation fees in a customer contract contributed to unconscionability of entire agreement).]

Respondent argues the Arbitration Agreement "explicitly limits any fees and costs imposed on Claimant in arbitration to only those fees and costs that would have been imposed on her if she had litigated her claims in state or federal court," implying that this also applies to the mediation.  The Agreement is clear, however, that the "costs of mediation [be] split by the parties unless otherwise required by law."

Though such a clause would normally be found to be substantively unconscionable, this clause has the savings language "unless otherwise required by law," which corrects the substantive problem.  The clause is still procedurally unconscionable, however, because a layperson would not know whether "unless otherwise required by law" affects the requirement for her to pay half the cost of the mediation.

///

The provision requiring Claimant to pay half the cost of mediation is procedurally unconscionable. If the savings language is disregarded, it would be substantively unconscionable.

    5.   <u>The Requirement to Arbitrate in San Diego.</u>

Claimant argues the Arbitration Agreement is substantively unconscionable because it provides for the arbitration to be conducted in San Diego, California, which is hundreds of miles from Claimant's work assignment. This is not entirely correct, however. The Agreement provides:

> The arbitration will take place in San Diego, California, **or to the extent required by law,** the arbitration may take place in the County in which You were employed by Aya.

[Arbitration Agreement, ¶ 3, emphasis added.] This clause has savings language similar to that in the clause requiring Claimant to pay half the cost of the mediation. A requirement that the arbitration take place hundreds of miles from Claimant's place of employment would normally make the agreement substantively unconscionable. Here, though, the phrase "or to the extent required by law," would seem to save the provision from being substantively unconscionable. It is still procedurally unconscionable, since a layperson would not be expected to know whether the law required the arbitration to take place somewhere other than San Diego. If the savings language is disregarded, it would be substantively unconscionable.

**D.**    **The Arbitration Agreement is Not Permeated by Unconscionability and Does Not Need to Be Invalidated.**

Although the Arbitration Agreement could have been modified to eliminate the unconscionable provisions, it was not. Instead, Respondent requests the Arbitrator "modify" the Agreement by severing the unconscionable clauses. Regarding severability, the Agreement provides:

> If any part of this Agreement is construed to be in violation of any law, unenforceable, or void, such part shall be modified to achieve the objective of the Parties to the fullest extent permitted by law, and the balance of this Agreement shall remain in full force and effect.

[Agreement, ¶ 7.]

Under Civil Code section 1670.5(a), "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." Courts will generally

sever illegal provisions and enforce a contract when nonenforcement would lead to an undeserved benefit or detriment to one of the parties that would not further the interests of justice. [*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83,127, citing *Beynon v. Garden Grove Medical Group* (1980) 100 Cal.App.3d 698, 712-713.]

"Two reasons for severing or restricting illegal terms rather than voiding the entire contract appear implicit in case law.  The first is to prevent parties from gaining undeserved benefit or suffering undeserved detriment as a result of voiding the entire agreement – particularly when there has been full or partial performance of the contract. [*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 123; *Keene v. Harling* (1964) 61 Cal.2d 318, 320-321; *Birbrower, Montalbano, Condon and Frank v. Superior Court* (1998) 17 Cal.4th 119, 137-139; *Saika v. Gold* (1996) 49 Cal.App.4th 1074, 1082 (enforcing arbitration agreement already performed, while severing illegal trial de novo clause).] Second, more generally, the doctrine of severance attempts to conserve a contractual relationship if to do so would not be condoning an illegal scheme. [*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 124; see *Werner v. Knoll* (1948) 89 Cal.App.2d 474, 476-477; *General Paint Corp. v. Seymour* (1932) 124 Cal.App. 611, 614-615.]

The overarching inquiry is whether "'the interests of justice . . . would be furthered'" by severance. [*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 124, citing *Beynon v. Garden Grove Medical Group* (1980) 100 Cal.App.3d 698, 713; *Wherry v. Award, Inc.* (2011) 192 Cal.App.4th 1242, 1242; *De Leon v. Pinnacle Property Management Services, LLC* (2021) 72 Cal.App.5th 476, 492.] Moreover, courts must have the capacity to actually cure the unlawful contract through severance or restriction of the offending clause, which is not always the case. [*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83,124.]  Court cannot reform a contract by supplying terms to which the parties never agreed.  [*See Magno v. The Coll. Network, Inc.* (2016) 1 Cal.App.5th 277, 292.]

The "strong preference" is to sever *unless* the agreement is permeated by unconscionability where it contains more than one unconscionable provision.  [Civ. Code § 1670.5; *De Leon v. Pinnacle Property Management Services, LLC* (2021) 72 Cal.App.5th 476, 492;  *Magno v. The College Network, Inc.* (2016) 1 Cal.App.5th 277, 292; see also, *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 122.]  Contracts should not be enforced if they are  "permeated" by unconscionability, and

Order Re: Unconscionability and Arbitrability

clauses should not be severed if they are "tainted or . . . contrary to the essential purpose of the agreement." [*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 124, citing Civ. Code section 1599 – Leg. Com. at p. 494.] Non-enforcement of an arbitration agreement is appropriate only where there are unconscionable aspects that cannot be cured by severance, restriction, or duly authorized reformation. [*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 126-127.] Multiple defects may indicate a systematic effort to impose arbitration on the non-drafting party not simply as an alternative to litigation, but as an inferior forum that works to the drafting party's advantage. [*Id.*; *Lange v. Monster Energy Company* (2020) 46 Cal.App.5th 436, 454.] An arbitration agreement is also deemed 'permeated' by unconscionability if 'there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement.' [*Id.*] If 'the court would have to, in effect, reform the contract, not through severance or restriction, but by augmenting it with additional terms,' the court must void the entire agreement." [*Magno v. The College Network, Inc.* (2016) 1 Cal.App.5th 277, 292.] The mere fact that a contract contains more than one unconscionable provision does not, however, mean a court has no discretion to sever the unconscionable terms. [*Lange v. Monster Energy Company* (2020) 46 Cal.App.5th 436, 454.] The presence of more than one substantively unconscionable term "is only one of the relevant factors" in the trial court's severability inquiry. In each case regarding severance, the dispositive question is whether the central purpose of the contract is so tainted with illegality that there is no lawful object of the contract to enforce. The fact that an agreement can be considered permeated by unconscionability if it contains more than one unlawful provision does not compel the conclusion that it must be so. [*Lange v. Monster Energy Company* (2020) 46 Cal.App.5th 436, 455, citing *Poublon v. C.H. Robinson Company* (9th Cir. 2017) 846 F.3d 1251, 1273.]

Here, there the Arbitration Agreement is minimally procedurally unconscionable because it is a contract of adhesion. There is nothing which can be done to correct that. Three specific clauses of the Arbitration Agreement are also procedurally unconscionable:

1)      The provision regarding fees and costs relating to the arbitration;

2)      The provision requiring Claimant to pay half the cost of mediation; and

3)      The provision requiring the arbitration be held in San Diego.

///

The contract is not "permeated by unconscionability." The interests of justice would be best served by simply severing the three provisions which are procedurally unconscionable. Therefore:

Regarding payment for arbitration fees and costs, the Arbitration Agreement provides:

> For claims determined to involve non-waivable statutory rights and to the extent required by law, You will not be required to pay any administrative fees or costs, including arbitrator's fees, beyond the fees and costs which would have been incurred by you, if any, had the dispute arbitrated under this provision been litigated in state or federal court.

[Arbitration Agreement, ¶ 3.] The phrase, "for claims determined to involve non-waivable statutory rights and to the extent required by law" is severed.

Regarding the requirement for the employee to pay half the mediation fee, the Arbitration Agreement provides:

> Prior to submitting a dispute to arbitration under the Agreement, the Parties agree to make good faith efforts to resolve any dispute on an informal basis. If efforts at informal resolution fail, the Parties agree to participate in a non-binding mediation prior to commencing arbitration with costs of the mediation to be split by the parties unless otherwise required by law.

[Arbitration Agreement, ¶ 3.] The phrase "with costs of the mediation to be split by the parties unless otherwise required by law" is severed.

Regarding the requirement for the arbitration to take place in San Diego, Arbitration Agreement provides:

> The arbitration will take place in San Diego, California, or to the extent required by law, the arbitration may take place in the County in which You were employed by Aya.

The language, " The arbitration will take place in San Diego, California, or to the extent required by law," is severed.

Therefore, after severing three procedurally unconscionable clauses, this leaves only one unconscionable aspect to the Arbitration Agreement – the minimal procedural unconscionability caused by the fact the Arbitration Agreement is a contract of adhesion. The Arbitrator finds that the adhesive nature of the Arbitration Agreement does not cause the Arbitration Agreement to be invalid, illegal, or unenforceable.

///

///

1       In conclusion, the Arbitrator finds that, after severing the three procedurally unconscionable clauses,

2 the remainder of the Arbitration Agreement is valid and enforceable.

3       IT IS SO ORDERED.

4

5 Dated:  March 19, 2024

6                                 By Gayle L. Eskridge, Arbitrator
AMERICAN ARBITRATION ASSOCIATION

Order Re: Unconscionability and Arbitrability

1
2
3
4
5
# AMERICAN ARBITRATION ASSOCIATION
6
7
8    LAUREN MILLER,                          **CASE NO.:  01-23-0002-5462**
9                   Claimant,                **PROOF OF SERVICE**
10   v.
11   AYA HEALTHCARE INC.
                                             **Case Manager:**    Jose Guerrero
12                 Respondent.                                     JoseGuerrero@adr.org
13
14        I, Aurelia T. Garcia, declare under penalty of perjury that I am over the age of 18 years and not a party
15   to this action, and that on this date I served the individuals listed below with the following documents:
16                    **ORDER RE: UNCONSCIONABILITY AND ARBITRABILITY**
17   ///
18   ///
19   ///
20   ///
21   ///
22   ///
23   ///
24   ///
25   ///
26   ///
27   ///
28   ///

1  Individuals served:

2  **STUEVE SIEGEL HANSON LLP**                    **Counsel for Claimant LAUREN MILLER**
   Attn:  J. Austin Moore, Attorney
3         Moore@StueveSiegel.com
          George A. Hanson, Attorney
4         Hanson@StueveSiegel.com
          Alexander T. Ricke, Attorney
5         Ricke@StueveSiegel.com
          Yasmin Zainulbhai, Attorney
6         Zainulbhai@StueveSiegel.com
          Crystal Cook Leftridge, Attorney
7         Cook@StueveSiegel.com
          Kenneth R. Merrill, Attorney
8         Merrill@StueveSiegel.com
   **460 Nichols Road, Suite 200**
9  **Kansas City, MO  64112**

10 **HARTLEY, LLP**                               **Counsel for Claimant LAUREN MILLER**
   Attn:  Jason Hartley, Attorney
11        Hartley@HartleyLLP.com
          Jason Lindner, Attorney
12        Lindner@HartleyLLP.com
   **101 West Broadway, Suite 820**
13 **San Diego, CA  92101**

14 **PROCOPIO  CORY,  HARGREAVES  &**            **Counsel  for  Respondent  AYA**
   **SAVITCH LLP**                               **HEALTHCARE, INC.**
15 Attn:  Marie B. Kenny, Attorney
          Marie.Kenny@Procopio.com
16        Ashley Fasano, Attorney
          Ashley.Fasano@Procopio.com
17        Janna Jamil, Attorney
          Janna.Jamil@Procopio.com
18        Sandra Olave, Support Staff
          Sandra.Olave@Procopio.com
19 **525 B. Street, Suite 2200**
   **San Diego, CA  92101**
20
   **AMERICAN ARBITRATION ASSOCIATION**          **Case Manager**
21 Attn:  Jose Guerrero
          **Manager of ADR Services**
22        JoseGuerrero@adr.org
   **45 E. River Park Place West, Suite 308**
23 **Fresno, CA 93720**

24

25        Service was accomplished by sending a copy via email to the email addresses listed above. Executed

26 on March 19, 2024 in the State of California.

27

28                                              _____
                                                Aurelia T. Garcia
   ─────────────────────────────────────────────────────────────────────
                                                2
                                       Proof of Service