Jason S. Hartley (SBN# 192514)
Jason M. Lindner (SBN# 211451)
**HARTLEY LLP**
101 West Broadway, Suite 820
San Diego, CA 92101
Telephone: 619-400-5822
hartley@hartleyllp.com
lindner@hartleyllp.com

George A. Hanson (*pro hac vice*)
J. Austin Moore (*pro hac vice*)
Alexander T. Ricke (*pro hac vice*)
K. Ross Merrill (*pro hac vice*)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: 816-714-7100
hanson@stuevesiegel.com
moore@stuevesiegel.com
ricke@stuevesiegel.com
merrill@stuevesiegel.com

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA O'DELL, HANNAH BAILEY, HOLLY ZIMMERMAN, and LAUREN MILLER, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>AYA HEALTHCARE, INC.,<br><br>        Defendant. | Case No. 3:22-cv-1151-BEN-BLM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF MILLER'S MOTION TO LIFT STAY, AWARD FEES AND COSTS, AND IMPOSE SANCTIONS**<br><br>Date: September 23, 2024<br>Time: PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT.<br><br>Courtroom:15A<br><br>Judge: Hon. Cathy Ann Bencivengo<br><br>Complaint Filed: August 4, 2022<br><br>Trial Date: None set |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................iii

INTRODUCTION ........................................................................................ 1

I.    FACTUAL AND PROCEDURAL BACKGROUND.................................. 2

    A.    Along with other Former Aya Employees, Plaintiff Miller Files
this Action in Court............................................................................ 2

    B.    Plaintiff Miller Challenges the Arbitration Agreement before an
Arbitrator........................................................................................ 4

    C.    Aya Fails to Pay Arbitration Costs Within 30 Days of Due
Date, Triggering Cal. Code Civ. P. § 1281.98 and the AAA's
Termination. ..................................................................................... 5

    D.    Pending Motions Related to Plaintiff Miller's Claims. ........................ 6

II.    ARGUMENT AND AUTHORITIES ..................................................... 7

    A.    Governing Statutes and Legal Standards ............................................ 7

    B.    Aya Materially Breached the Arbitration Agreement and Her
Claims are Properly in Court. ............................................................ 8

        1.    Under CCP 1281.98, Failure to Timely Pay Required
Costs of Arbitration Permits Plaintiff to Withdraw from
Arbitration and Proceed in Court. ............................................ 8

        2.    Aya's Arguments that the Statute Does not Apply are
Unavailing................................................................................ 8

        3.    The Court Must Enforce the Parties' Agreement by
Deferring to the AAA's Application of its Own Rules. ........... 10

    C.    Plaintiff Miller is Entitled to Statutory Sanctions due to Aya's
Material Breach of the Arbitration Agreement it Stridently
Sought to Enforce............................................................................ 12

        1.    Plaintiff Miller is Entitled to an Award of Her Attorneys'
Fees and Costs Related to Arbitration. .................................... 12

        2.    Sanction of Default Judgment, or, at a Minimum,
Evidentiary Sanctions, is Warranted. ...................................... 14

i

    a. Aya's Strident Insistence on Arbitration
     Substantially Delayed the Adjudication of Plaintiff
     Miller's Claims.................................................................. 15

    b. Aya has Refused to Accept the Results of the
     Arbitrations that it asked this Court to Order................. 19

   3. Under these Circumstances, a Default Judgment is
    Warranted. ............................................................................ 20

D. Court Should Require Aya to Produce Documentary Discovery
  Necessary to Enter Award of Damages. .......................................... 23

# TABLE OF AUTHORITIES

**Cases**

*Agerkop v. Sisyphian LLC*,
   2021 WL 1940456 (C.D. Cal. April 13, 2021) ......................................8

*Benson v. S. California Auto Sales, Inc.*,
   239 Cal. App. 4th 1198 (Cal. Ct. App. 2015) ...................................23

*Carson Cheng v. AIM Sports, Inc.*,
   2011 WL 13175663 (C.D. Cal. 2011)..............................................22

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*,
   482 F.3d 1091 (9th Cir. 2007)......................................................23

*Costa v. Melikov*,
   2022 WL 18228248 (C.D. Cal. Oct. 21, 2022) .................................12

*Cvejic v. Skyview Capital, LLC*,
   92 Cal. App. 5th 1073 (Cal. Ct. App. 2023) ......................................9

*De La Riva Const., Inc. v. Marcon Eng'g, Inc.*,
   2014 WL 794807 (S.D. Cal. Feb. 27, 2014) ....................................13

*De Leon v. Juanita's Foods*,
   85 Cal. App. 5th 740 (Cal. Ct. App. 2022) .............................1, 7, 9

*Doe v. Superior Ct.*,
   95 Cal. App. 5th 346 (Cal. Ct. App. 2023) .......................................9

*Eliasieh v. Legally Mine, LLC*,
   2020 WL 1929244 (N.D. Cal. Apr. 21, 2020) .................................11

*Espinoza v. Superior Court*,
   83 Cal. App. 5th 761 (Cal. Ct. App. 2022) .......................................9

*Fashion Nova LLC v. Citizens Ins. Co. of Am.*,
   2023 WL 8872092 (C.D. Cal. Nov. 8, 2023)....................................24

*Gallo v. Wood Ranch, USA, Inc.*,
   81 Cal. App. 5th 621 (Cal. Ct. App. 2022) ...........................1, 22, 23

*Greco v. Uber Techs., Inc.*,
   No. 4:20-cv-02698-YGR, 2020 WL 5628966 (N.D. Cal. Sept. 3, 2020)............10

*Greco v. Uber Techs., Inc.*,
    2021 WL 134578 (N.D. Cal. Jan. 14, 2021) ...................................................... 11

*Hernandez v. Sohnen Enterps., Inc.*,
    102 Cal. App. 5th 222 (Cal. Ct. App. 2024) ................................................. 1, 9

*Kohan v. Cohan*,
    229 Cal. App. 3d 967 (Cal. Ct. App. 2000) ....................................................... 21

*Koninklijke Philips Elecs., N.V. v. KXD Tech., Inc.*,
    347 F. App'x 275 (9th Cir. 2009) .................................................................. 21

*Lang v. Hochman*,
    77 Cal. App. 4th 1225 (Cal. Ct. App. 2000) ................................................... 21

*Lopez v. Mgmt. & Training Corp.*,
    2020 WL 1911571 (S.D. Cal. Apr. 20, 2020) .................................................. 14

*Nyerges v. Pacific Sunwear of California*,
    2022 WL 20717551 (C.D. Cal. July 6, 2022) ......................................... 8, 20, 21

*Rodriguez v. Ford Motor Co.*,
    2024 WL 1223485 (S.D. Cal. Mar. 21, 2024) ................................................. 12

*Sargon Enterprises, Inc. v. Browne George Ross LLP*,
    15 Cal. App. 5th 749 (Cal. Ct. App. 2017) ..................................................... 16

*Scott v. Blackstone Consulting, Inc.*,
    2024 WL 271439 (S.D. Cal. Jan. 24, 2024) ..................................................... 13

*Sink v. Aden Enterprises*,
    352 F.3d 1197 (9th Cir. 2003) ........................................................................ 22

*Siry Inv., L.P. v. Farkhondehpour*,
    45 Cal. App. 5th 1098 (Cal. Ct. App. 2020) ................................................... 14

*Spangler v. Nat'l Coll. of Tech. Instruction*,
    2018 WL 846930 (S.D. Cal. Jan. 5, 2018) ...................................................... 14

*Waters v. Vroom Inc.*,
    2023 WL 187577 (S.D. Cal. Jan. 13, 2023) ........................................... 9, 10, 11

*Watkins v. O'Malley*,
    2024 WL 2702444 (S.D. Cal. May 24, 2024) .................................................. 14

**Statutes**

29 U.S.C. § 216........................................................................17

Cal. Civ. Code § 3294...........................................................23

Cal. Code Civ. P. § 1281.97 ...................................................1

Cal. Code Civ. P. § 1281.98 ........................................*passim*

Cal. Code Civ. P. § 1281.99 ........................................*passim*

**Rules**

Fed. R. Civ. P. 37.................................................................22

**Other Authorities**

Assembly Comm'ee on Judiciary, SB 707, Hrg. June 18, 2019 ............................12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

v

## INTRODUCTION

Lauren Miller is a travel nurse who filed suit against her former employer, Aya Healthcare, after Aya unilaterally slashed her agreed-upon pay in the middle of her 13-week contract and underpaid her overtime. After the case was filed, however, Aya insisted that the claims must be arbitrated, and successfully argued that any challenge to its Arbitration Agreement must be decided in arbitration, by an arbitrator. But after insisting on that process, and after the parties agreed to submit their dispute to the American Arbitration Association ("AAA") and to be governed by its Employment Rules, Aya failed to timely pay the Arbitrator's invoice for her time in deciding the parties' dispute. The AAA terminated the arbitration due to the nonpayment pursuant to Cal. Code. Civ. Proc. § 1281.98.

That statute, part of the California Arbitration Act ("CAA") (CCP § 1280 *et seq.*), provides that failure by an employer that drafted an arbitration agreement to pay "the fees or costs required to continue the arbitration" within 30 days of their due date, constitutes a "material breach" of the underlying Arbitration Agreement, "default" of arbitration, and "waive[r]" of the right to compel arbitration under California law. Such failure also results in strict liability for the opposing party's fees and costs. Numerous California courts, including those in this District, agree that "[t]he statute is strictly applied whenever a drafting party fails to pay arbitration costs and fees by the statutory deadline." *Hernandez v. Sohnen Enterps., Inc.*, 102 Cal. App. 5th 222, 235 (Cal. Ct. App. 2024).[1] The AAA inquired how Plaintiff Miller elected to proceed under CCP § 1281.98. From the statute's menu of remedies, and in accordance with the AAA's own rules, Miller elected to withdraw her claims from arbitration and proceed with them in court. Aya's material breach of the Arbitration

---

[1] While *Hernandez* discusses CCP § 1281.97, which concerns the fees required to initiate an arbitration, sections 1281.97 and 1281.98 "'largely parallel'" each other. *De Leon v. Juanita's Foods*, 85 Cal. App. 5th 740, 750 (Cal. Ct. App. 2022) (quoting *Gallo v. Wood Ranch, USA, Inc.*, 81 Cal. App. 5th 621, 633, n.4 (Cal. Ct. App. 2022)).

Agreement means that Plaintiff Miller's claims are properly in court and finally ready to proceed on their merits. Plaintiff Miller thus respectfully requests that this Court vacate the stay currently in place as to her claims.

The CAA also specifies sanctions against the drafting party for material breach of an arbitration agreement. First, CCP §§ 1281.98(c) and 1281.99(a) automatically entitle Plaintiff Miller to an award of her reasonable costs and attorneys' fees associated with the arbitration, which amount to $137,966.27. Further, pursuant to the discretionary sanctions set forth in CCP § 1281.99(b), Plaintiff Miller requests that the Court impose a default judgment against Aya on her claims due to its consistent pattern of delay that has held up the merits of her case by two years. Finally, in conjunction with her request for a default judgment, Plaintiff Miller seeks an order compelling Aya to produce discovery sufficient to establish damages, including punitive damages, asserted by Plaintiff Miller in the Amended Complaint.

To avoid potential successive appeals on related issues, Plaintiff Miller respectfully requests that this Court issue final rulings on the present motion and Aya's Motion to Confirm Miller Arbitration Decision and Maintain Stay of Court Action (Doc. No. 81) in a single order or simultaneously issued orders.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Along with other Former Aya Employees, Plaintiff Miller Files this Action in Court

On September 27, 2022, Plaintiffs Laura O'Dell, Hannah Bailey, Holly Zimmerman, and Lauren Miller ("Plaintiffs") filed a First Amended Class and Collective Action Complaint against Defendant Aya Healthcare Inc., ("Aya") alleging that Aya engaged in a bait-and-switch scheme by cutting its travel nurses' pay rates mid-contract, after they had incurred expenses to travel to a new location (often out-of-state). Doc. No. 15, ¶¶ 15-31. Specifically, Plaintiff Miller alleged that she accepted a position with Aya to work at Eden Medical Center in Castro Valley,

CA, moved from her home in Washington to accept the assignment, and secured short-term living arrangements in California. *Id.* ¶¶ 65-67. Then, on the first day of her assignment, Aya made her a "take-it-or-leave-it" demand to accept a 17% reduction of her base hourly pay rate from $58.50 to $48.25, along with cuts to her hourly and call-back pay rates. *Id.* ¶ 68. When Plaintiff Miller inquired about the rate reduction, Aya blamed the hospital. *Id.* ¶¶ 69-70. But when she checked with the hospital where she worked, a hospital employee told her that there was no evidence that the bill rate decreased, and that Aya was still being paid $182.00 per hour for Plaintiff Miller's work. *Id.* ¶ 71.

Plaintiff Miller also alleged that for travel employees who worked more than 40 hours in a workweek (or 8 hours in a workday), Aya miscalculated their rates of overtime pay by improperly categorizing significant portions of their compensation as "stipends" (*i.e.*, expense reimbursement) and then excluding the value of those stipends from their "regular rate" of pay when compensating overtime hours, in violation of the FLSA and state law. *Id.* ¶¶ 78-97; 179-88. Plaintiff Miller thus asserted 13 causes of action against Aya arising out of common law, several California statutes, and the FLSA. *Id.* ¶¶ 109-154, 161-188, 194-234. Although Plaintiff Miller does not allege a sum certain regarding her total damages resulting from Aya's "bait and switch" and "regular rate" violations, the amount of underpayment and related penalties and interest can readily be determined based on documents in Aya's possession, kept in the regular course of business. *See Id.* ¶ 73.

In response to Plaintiffs' comprehensive complaint, Aya moved to Compel Arbitration and Dismiss Court Action. Doc. No. 21 ("Motion to Compel"); *see also* Doc. No. 21-2 (four form arbitration agreements). As to Plaintiff Miller, Aya relied on an agreement to arbitrate that she had e-signed on February 27, 2022. Doc. No. 21-2, at 15-16. Based on the agreements signed by Plaintiff Miller and the other Plaintiffs, Aya asked the Court to (1) compel them to "arbitrate their individual claims against Aya" and to (2) "dismiss Plaintiffs' class, collective, and

representative action." Doc. No. 21, at 6. In opposing Aya's Motion, Plaintiffs argued that they had been fraudulently induced into signing the Arbitration Agreements, and that they therefore were not enforceable against them. Doc. No. 30.

After full briefing from the parties, this Court granted Aya's Motion to Compel in part, finding that Plaintiffs did not adequately challenge the delegation clause and "[b]ased on the language of the Delegation Clause in the Arbitration Agreement, the Court cannot decide threshold issues of validity and enforceability and therefore, compels arbitration on the arbitrability of Plaintiffs' claims." Doc. No. 64, at 7. Further, "[i]n the interest of justice and in order to avoid duplicative proceedings," the Court granted a stay of the Plaintiffs' claims against Aya, "pending a decision on the arbitrability of Plaintiffs' claims." *Id.*

**B.** **Plaintiff Miller Challenges the Arbitration Agreement before an Arbitrator**

Pursuant to the Court's Order, Plaintiff Miller filed a Demand for Arbitration before the American Arbitration Association ("AAA") in San Diego on June 7, 2023. *See* Doc No. 87-2. Her Demand related solely to the enforceability of Aya's Arbitration Agreement and asked the Arbitrator to find that the agreement is unenforceable because it (1) was procedurally and substantively unconscionable under California law and/or that (2) Aya fraudulently induced her to enter the purported Agreement. *Id*. at 18. Both parties signed a form agreeing to have AAA administer the dispute and to be bound by the AAA Employment Arbitration Rules. *See* Doc. No. 87-3 ("BY SIGNING BELOW, THE PARTIES AGREE TO SUBMIT THE ABOVE-REFERENCED DISPUTE TO ARBITRATION ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION UNDER ITS EMPLOYMENT ARBITRATION RULES.").

In accordance with the AAA arbitrator selection process, Arbitrator Gayle Eskridge was assigned as the Arbitrator. See Declaration of J. Austin Moore

("Moore Dec.") ¶ 8. Plaintiff Miller informed the Arbitrator that she only intended to pursue her claim that her Arbitration Agreement with Aya was procedurally and substantively unconscionable under California law. *See* Doc. No. 87-5, at 4. The parties agreed to a briefing and hearing schedule on Plaintiff Miller's unconscionability challenge. Moore Dec. ¶ 9. After briefing from the parties and a one-hour hearing, Arbitrator Eskridge rendered her decision on March 19, 2024. Moore Dec. ¶¶ 10-12. She found that Aya's Arbitration Agreement had three procedurally unconscionable provisions—the mediation cost provision, the arbitration cost provision, and the venue provision—but held those provisions could be severed and the remainder of the Agreement was enforceable. *See generally* Doc. No. 87-5, at 2-28 (Award).[2]

### C. Aya Fails to Pay Arbitration Costs Within 30 Days of Due Date, Triggering Cal. Code Civ. P. § 1281.98 and the AAA's Termination.

Two days later, on March 21, 2024, the AAA case manager for the arbitration sent correspondence to the parties stating as follows: "We have received the Arbitrator's final invoice and it exceeds the amount estimated and requested. Therefore, we are at this time, requesting an additional $11,525.00 to cover for the arbitrator's compensation for time incurred." *See* Doc. No. 87-6, at 5-6. The invoice further stated: "Payment is due upon receipt of this letter and attached invoice … As this arbitration is subject to ***California Code of Civil Procedure 1281.98***, payment must be paid by 30 days from the date of this letter. Pursuant to California Code of

---

[2] Aya has filed a Motion to Confirm Arbitration Decision and Maintain Stay of Court Action, Doc. No. 81, and Memorandum of Points and Authorities in Support, Doc. No. 81-1, which Plaintiff Miller opposes. Doc. No. 87. Plaintiff incorporates by reference the arguments asserted in that Opposition, Doc. No. 87, at 9-18, and in her Surreply, Doc. No. 103. Because Aya's Motion to Confirm and the present Motion involve related issues, and to avoid the potential for successive appeals, Plaintiff Miller respectfully requests that the Court issue final decisions on both motions in a single order or simultaneously issued orders.

Civil Procedure 1281.98, the AAA cannot grant any extensions to this payment deadline unless agreed upon by all parties." *Id*. at 5 (emphasis in original).

On May 16, 2024—56 days from the date of the Arbitrator's invoice—the AAA case administrator sent the parties another email stating: "This will confirm that we have not received the payment in the amount of $11,525.00 for Arbitrator's Compensation requested and invoiced in our letter dated March 21, 2024." Doc. No. 87-7, at 2-3. It continued: "Pursuant to CA CCP 1281.98, AAA requests Claimant to review the relevant section of the statute and provide a response on how they wish to proceed." *Id*. at 2. She did so that same day, informing the AAA that "pursuant to CCP § 1281.98(b)(1), Claimant Miller elects to withdraw the claim from arbitration and proceed in a court of appropriate jurisdiction." *Id*. Thereafter, the AAA issued a letter dated May 17, 2024 closing the matter. *See* Doc No. 87-8, at 3-4.

### D. Pending Motions Related to Plaintiff Miller's Claims.

On June 3, 2024, the parties jointly filed a Status Report updating the Court regarding the status of the Miller Arbitration. Doc. No. 77. It informed the Court that Aya had failed to pay its arbitration fees and that the AAA terminated the arbitration. The report noted that "Plaintiff Miller intends to move this Court or another court of competent jurisdiction to hear her claim on the basis that Aya materially breached the parties' agreement to arbitrate under the AAA Employment Rules and pursuant to California Code of Civil Procedure § 1281.98(b)(1)." *Id*.

On June 18, however, Aya filed a Motion to Confirm Miller Arbitration Decision and Maintain Stay of Court Action, Doc. No. 81, arguing that because the arbitration award had already been issued, Aya's payment of the outstanding invoice was not necessary to "continue the arbitration," thus rendering CCP § 1281.98 inapplicable. Doc. No. 81-1, at 7-10. Plaintiff Miller thereafter filed an opposition brief responding to and addressing the multiple flaws in Aya's motion. Doc. No. 87, at 9-17. Thus, Plaintiff Miller now files the instant affirmative Motion to Lift Stay, Award Fees and Costs, and Impose Sanctions.

6

## II.   ARGUMENT AND AUTHORITIES

### A.   Governing Statutes and Legal Standards

California Code of Civil Procedure Section 1281.98 was added to the California Arbitration Act in 2019. Its subdivision (a)(1) reads:

> In an employment or consumer arbitration that requires, either expressly or through application of state or federal law or the rules of the arbitration provider, that the drafting party pay certain fees and costs during the pendency of an arbitration proceeding, if the fees or costs required to continue the arbitration proceeding are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel the employee or consumer to proceed with that arbitration as a result of the material breach.

If "the drafting party materially breaches the arbitration agreement and is in default" per this provision of the statute, the employee may "unilaterally elect" any of several options. CCP § 1281.98(b); *De Leon v. Juanita's Foods*, 85 Cal. App. 5th 740, 751 (Cal. Ct. App. 2022). The first available statutory remedy is to: "[w]ithdraw the claim from arbitration and proceed in a court of appropriate jurisdiction...." *Id*. § (b)(1). If the employee elects to so proceed, the statute specifies that she "may bring a motion, or a separate action, to recover all attorney's fees and all costs associated with the abandoned arbitration proceeding," recovery of which "shall be without regard to any findings on the merits in the underlying action or arbitration." *Id*. § (c)(1). In addition, the "court *shall* impose sanctions on the drafting party in accordance with Section 1281.99." *Id*. § (c)(2) (emphasis added); *see De Leon*, 85 Cal. App. 5th at 751.

In turn, section 1281.99(a) directs that the court "shall impose a monetary sanction against a drafting party that materially breaches an arbitration agreement" by "ordering the drafting party to pay the reasonable expenses, including attorney's fees and costs, incurred by the employee" as a result of the material breach. Section 1281.99(b) further directs that, "[i]n addition to the monetary sanction," the court "may order" any of a variety of other sanctions against the drafting party, including

an evidentiary sanction; a contempt sanction; or a terminating sanction that "strik[es] out the pleadings or parts of the pleadings of the drafting party" or "render[s] a judgment by default against the drafting party." CCP §§ 1281.99(b)(1), (2) (A) & (B), (3).

### B. Aya Materially Breached the Arbitration Agreement and Her Claims are Properly in Court.

#### 1. Under CCP 1281.98, Failure to Timely Pay Required Costs of Arbitration Permits Plaintiff to Withdraw from Arbitration and Proceed in Court.

There is no dispute that Aya failed to pay the AAA invoice within 30 days after its due date, that the AAA terminated the arbitration as a result, and that Plaintiff Miller elected to withdraw her claim from arbitration as permitted by the CAA. As a result, Plaintiff Miller's claims are properly in court and the stay of her claims should be lifted. *See, e.g., Agerkop v. Sisyphian LLC*, 2021 WL 1940456, at *6 (C.D. Cal. April 13, 2021) (lifting stay of plaintiffs' claims after defendants defaulted on their payment obligations in their arbitrations); *Nyerges v. Pacific Sunwear of California*, 2022 WL 20717551, at * 3 (C.D. Cal. July 6, 2022) ("[T]he court GRANTS Plaintiff's motion to lift the stay in this case on a finding that Defendant materially breached the arbitration agreement and defaulted in the arbitration proceedings before AAA.").

#### 2. Aya's Arguments that the Statute Does not Apply are Unavailing

In the course of its Motion to Confirm Plaintiff Miller's Arbitration Award, Aya has argued that CCP § 1281.98 does not apply because the arbitration was not "continuing" at the time it defaulted on its payment obligations, and later, because the statute is preempted by the FAA. *See* Doc. No. 81, at 7-10; *see generally* Doc. No. 96. Neither of these arguments is persuasive.[3] For one, the arbitration was

---

[3] Plaintiff Miller has responded to these arguments in more depth in her Opposition and Surreply to Aya's Motion. *See* Doc. No. 87, 103.

"continuing" according to the AAA, and the Court must defer to the AAA's determination where the parties agreed to conduct the arbitration in accordance with the AAA rules.

Further, there are no exceptions for substantial compliance, lack of prejudice, or other purported justifications for untimely payment. *Espinoza v. Superior Court*, 83 Cal. App. 5th 761, 775–776 (Cal. Ct. App. 2022); *see also Hernandez v. Sohnen Enterprises, Inc.*, 102 Cal. App. 5th 222, 234-35 (Cal. Ct. App. 2024), *reh'g denied* (June 3, 2024), *review filed* (June 28, 2024). Indeed, California appellate courts "have uniformly rejected invitations to consider discretionary factors, *e.g.*, the intent of the employer or prejudice to the employee, in determining compliance with the statutes or materiality of the breach." *Doe v. Superior Ct.*, 95 Cal. App. 5th 346, 358-59 (Cal. Ct. App. 2023), *as modified* (Sept. 28, 2023) (collecting and discussing cases). Instead, the 30-day statutory deadline "establishes a clear-cut rule for determining if a drafting party is in material breach of an arbitration agreement." *De Leon*, 85 Cal. App. 5th at 755 (citations omitted); *see Cvejic v. Skyview Capital, LLC*, 92 Cal. App. 5th 1073, 1077 (Cal. Ct. App. 2023) ("As the legislative history and caselaw direct, we strictly enforce this statute.").

For example, in *Waters v. Vroom Inc*., 2023 WL 187577, at *2-4 (S.D. Cal. Jan. 13, 2023), a court in this District considered whether the statute was triggered even though the fee payment was late due to an error on the AAA's payment site and despite defendants' effort to make timely payment. The defendants argued that the statute should not apply because it "was AAA's clerical error, not their own, that resulted in AAA not receiving Defendants' attempted payment by the deadline." *Id.* at *4. The Court rejected this argument, noting that the statute was to be strictly construed and that defendants' argument amounted to a request for "equitable relief" from the Court—a request which "has no grounding in caselaw or other authority." *Id.* Here, Aya cannot even muster an excuse for why it failed to timely pay. Per the

unambiguous language of § 1281.98(a), Aya materially breached the Arbitration Agreement and waived its ability to enforce it against Plaintiff Miller.

### 3. The Court Must Enforce the Parties' Agreement by Deferring to the AAA's Application of its Own Rules.

Further, the parties expressly consented to the AAA's administration of their dispute under its Employment Rules—which permit the tribunal "to suspend or terminate the proceedings" if all fees or costs have not been paid (AAA Employment Rule 47). Because the proceeding was still active at the time Aya defaulted,[4] the AAA determined that Aya violated Cal. Code. Civ. Proc. § 1281.98 for non-payment of fees required to continue an arbitration and gave Plaintiff Miller the option to terminate the proceeding, which she elected to do. Because the parties expressly agreed to have the AAA administer the dispute under its Employment Rules, the Court must defer to the decisions of the AAA in administering its own proceeding. In *Waters v. Vroom*, the Court addressed this precise issue:

> Arbitration is a creature of contract law and, as such, the Court looks to the Parties' agreement to determine how the Parties agreed to proceed with arbitration. *See Greco v. Uber Techs., Inc.*, No. 4:20-cv-02698-YGR, 2020 WL 5628966, at *3 (N.D. Cal. Sept. 3, 2020). Here, the Parties agreed that any dispute would be resolved by binding arbitration in accordance with either JAMS' Comprehensive Arbitration Rules or AAA's Consumer Arbitration Rules, whichever one Plaintiff chose. (Ex. A at 6.) When the dispute arose, Plaintiff opted to arbitrate through AAA in accordance with AAA's Consumer Arbitration Rules.
>
> ***
>
> The rules they chose allow the arbitrator or arbitration administrator, in his or her discretion, to stop the administration of the arbitration and to

---

[4] Notably, there were still active deadlines when the unpaid invoice was issued. Under the AAA Rules, "[w]ithin 20 days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator to correct any clerical, typographical, technical, or computational errors in the award." AAA Employment Rule 40 (https://www.adr.org/sites/default/files/EmploymentRules_Web_2.pdf). In fact, Aya availed itself of this very procedure in both the Zimmerman and O'Dell arbitrations.

then allow the Parties to proceed in court. *See* Consumer Arbitration Rules 1(b), (d), & 55. That is exactly what happened in this case and, as a result, the arbitration has been had in accordance with the rules agreed to by the Parties. . . . Because Defendants expressly agreed to be bound by the AAA Consumer Arbitration Rules, they cannot now complain of their enforcement.

2023 WL 187577, at *3.

Here too, the AAA Employment Rules expressly permit the tribunal "to suspen[d] or terminat[e]" the proceedings if all fees or costs have not been paid. The day after the AAA informed the parties that Aya had defaulted and Plaintiff Miller elected to return to court, the AAA issued a letter terminating the arbitration. Doc. No. 87-8, at 3-4. Thus, because the arbitration was terminated in accordance with the rules and procedures agreed to by the parties, Aya cannot now complain to the Court about their enforcement. *See, e.g.*, *Waters*, 2023 WL 187577, at *4 ("That Defendants do not think 'the outcome fair because arbitration was terminated . . . based on innocent error is of no import—[Defendants] agreed to the rules that allow that outcome.'") (quoting *Greco*, 2020 WL 5628966, at *4); *Greco*, 2021 WL 134578, at *3 (N.D. Cal. Jan. 14, 2021) ("The parties therefore delegated the interpretation of the Rules to the AAA, and the AAA reasonably interpreted them, consistent with the agreement."); *Eliasieh v. Legally Mine, LLC*, 2020 WL 1929244, at *4 (N.D. Cal. Apr. 21, 2020) ("The bottom line is that AAA terminated the arbitration due to Defendant's conduct. Under well-settled caselaw and the AAA's own rules, the termination of the arbitration due to Defendant's non-payment of fees means that Plaintiff can pursue his claims in court.").

Further, the "AAA warned Defendant that it would give Plaintiff options on how to proceed if it did not timely receive Defendants' payment. And one of those options would be for AAA to close the case." *Waters*, 2023 WL 187577, at *5. Here, Aya agreed to the AAA's administration of the dispute, and consistent with its Rules and its warning to the parties, the AAA terminated the arbitration due to Aya's

payment default, triggering application of CCP § 1281.98. As per the statute, Plaintiff Miller elected to return to court, and the stay on her claims should be lifted.

**C.      Plaintiff Miller is Entitled to Statutory Sanctions due to Aya's Material Breach of the Arbitration Agreement it Stridently Sought to Enforce**

To further deter a drafting party that "strident[ly] insist[ed]" on arbitration—as Aya did here—from "failing to pay arbitration costs and fees in a timely manner," CCP § 1281.99 sets forth sanctions for a drafting party's payment default in arbitration. *See* Assembly Comm'ee on Judiciary, SB 707, Hrg. June 18, 2019, Comments p.8-9.[5] As explained below, due to Aya's reliance on the arbitration agreement it later breached to attempt to obstruct and delay her claims from being heard, Plaintiff Miller seeks both the mandatory costs and fees sanction along with a discretionary sanction of default judgment against Aya on her claims, or, in the alternative, an evidentiary sanction preventing Aya from taking discovery from Plaintiff Miller.

**1.      Plaintiff Miller is Entitled to an Award of Her Attorneys' Fees and Costs Related to Arbitration.**

CCP § 1281.99 provides that in the event of a drafting party's material breach under § 1281.98, the court "shall impose a monetary sanction . . . by ordering the drafting party to pay the reasonable expenses, including attorney's fees and costs, incurred by the employee or consumer as a result of the material breach." CCP § 1281.99(a). As the statutory language makes clear, "an award of fees is mandatory." *Costa v. Melikov*, 2022 WL 18228248, at *3 (C.D. Cal. Oct. 21, 2022); *see* CCP § 1281.98(c)(1) (employee "may bring a motion … to recover all attorney's fees and all costs associated with the abandoned arbitration proceeding," and

---

[5] The Comments are available on Westlaw at this embedded link. It is unnecessary to take judicial notice of legislative facts. *See Rodriguez v. Ford Motor Co*., 2024 WL 1223485, at *4 (S.D. Cal. Mar. 21, 2024) (collecting cases).

12

"recovery of arbitration fees, interest, and related attorney's fees shall be without regard to any findings on the merits in the underlying action or arbitration.").

As set forth and supported in the attached Declaration of J. Austin Moore, Plaintiff Miller seeks an award of $137,966.27, against Aya, which constitutes her reasonable attorneys' fees and the costs resulting from Aya's material breach of the Arbitration Agreement. Moore Dec. ¶¶ 18-36. The requested fees reflect 162 hours of work equaling $136,760 in lodestar committed by three attorneys to pursuing Plaintiff Miller's challenge to the arbitration agreement in arbitration, including filing the arbitration demand, participating in arbitrator selection, briefing her challenge, preparing for and arguing at the hearing, researching Aya's default and case law interpreting CCP § 1281.98 and 1281.99, and bringing this motion. As detailed in the supporting declaration, counsel's fee request is conservative, as it does not include any timekeepers who billed less than 15 hours on this matter or additional hours that would be fairly compensable, including, among other things, substantial time committed to responding to Aya's motion to Confirm Plaintiff Miller's arbitration award, which was premised in significant part on the application of CCP § 1281.98. *See* Moore Dec. ¶¶ 26-29. Plaintiff Miller also seeks $1,206.27 in unreimbursed costs, which includes the arbitration filing cost ($362.25), counsel arbitration admission costs ($51.25), transcript costs ($388.00), printing costs ($3.60), and online research fees ($401.17). *Id.*, ¶ 18.

Further, as explained in counsel's declaration, the rates utilized in calculating the requested fees are warranted by counsel's background and experience and are reasonable and consistent with those "prevailing in the community for similar work." *De La Riva Const., Inc. v. Marcon Eng'g, Inc.*, 2014 WL 794807, at *4 (S.D. Cal. Feb. 27, 2014). Counsel's rates, ranging from $775-$975, are well within ranges regularly approved in this District. *See, e.g., Scott v. Blackstone Consulting, Inc.*, 2024 WL 271439, at *10 (S.D. Cal. Jan. 24, 2024) ("Recently, courts in this District have awarded hourly rates for work performed in civil cases by attorneys with

significant experience anywhere in range of $550 per hour to more than $1000 per hour.") (collecting cases); *Watkins v. O'Malley*, 2024 WL 2702444, at *2 (S.D. Cal. May 24, 2024) (noting that while "counsel's de facto hourly rate of $1,566 is on the higher end, however, several cases have found rates of $1300-$1600 to be appropriate, including cases in this district."); *Lopez v. Mgmt. & Training Corp.*, 2020 WL 1911571, at *8-9 (S.D. Cal. Apr. 20, 2020) (finding rates of $500-$900 reasonable in wage and hour class action); *see also Spangler v. Nat'l Coll. of Tech. Instruction*, 2018 WL 846930, at *2 (S.D. Cal. Jan. 5, 2018) (finding "evidence supports the reasonableness of the requested billing rates for Plaintiffs' attorneys" at Stueve Siegel Hanson ranging from $825 for a partner to $595 for counsel).

### 2.   Sanction of Default Judgment, or, at a Minimum, Evidentiary Sanctions, is Warranted.

In addition to mandatory monetary sanctions, section (b) of 1281.99 sets forth an array of discretionary sanctions a court may impose on "a drafting party that materially breaches an arbitration agreement pursuant to" section 1281.98, "unless the court finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust." CCP § 1281.99(b). The sanctions the court may order include evidentiary sanctions "prohibiting the drafting party from conducting discovery in the civil action"; terminating sanctions, including via "[a]n order rendering a judgment by default against the drafting party"; and a "contempt sanction." *Id*. In the context of discovery sanctions, courts have "broad discretion to consider the totality of the circumstances in making the sanction fit the violation." *Siry Inv., L.P. v. Farkhondehpour*, 45 Cal. App. 5th 1098, 1120 (Cal. Ct. App. 2020) (cleaned up). Here, given that Aya has offered no justification—let alone a "substantial" one—for its payment default, and due to its reliance on the arbitration agreement to delay and obstruct the development of her case, Plaintiff Miller respectfully requests an entry of default judgment on her

claims against Aya as a fitting and just sanction. In the alternative, Plaintiff Miller requests evidentiary sanctions preventing Aya from taking discovery from her.

### a. Aya's Strident Insistence on Arbitration Substantially Delayed the Adjudication of Plaintiff Miller's Claims

Aya's strident insistence on enforcing an arbitration agreement that it then materially breached has delayed the adjudication of Plaintiff Miller's claims by nearly two years. Indeed, the record demonstrates that from the outset of this litigation, Aya aggressively relied on the arbitration agreement that it then later breached (and that two arbitrators found to be unenforceable under California law) to have the nurses' claims removed from court and to prevent them from being prosecuted and heard on their merits. Viewed in context, Aya's default on its payment obligations is just one example of a larger pattern of delay and obstruction in preventing the Plaintiffs' claims, including those of Plaintiff Miller, from being adjudicated.

For example, just weeks after Plaintiffs filed their Complaint before this Court, Aya's first communication with Plaintiffs was a letter styled as a "cease and desist" letter. *See* Doc. No. 31-2, at 2. The first paragraph of the letter stated:

> The purpose of this letter is to demand that your law firm ***immediately cease and desist*** from any further attempt to prosecute a class, collective, or representative action against Aya on behalf of your clients . . . Aya notes that your office failed to conduct any pre-litigation due diligence into the legitimacy of filing Plaintiffs' claims in civil court. If your office had even reviewed a copy of Plaintiffs' personnel files, it would have learned that Plaintiffs' court claims are barred by the arbitration agreements.

*Id*. (all emphases in original).

Aya then claimed that it had "successfully enforced these exact arbitration agreements in multiple courts and thus demands immediate dismissal of Plaintiffs' Complaint." *Id*.; *see also id*. at 4 ("Plaintiffs ***must*** voluntarily dismiss their class and collective action claims against Aya.") (all emphases in original).

But the right to proceed in court, even if there is an arbitration agreement in place, is constitutionally and statutorily protected under California law. *See Sargon Enterprises, Inc. v. Browne George Ross LLP*, 15 Cal. App. 5th 749, 766 (Cal. Ct. App. 2017) ("The constitutional right to petition . . . includes the basic act of filing litigation or otherwise seeking administrative action.") (cleaned up); *see also id*. at 767 ("The [CAA] thus recognizes that a party to an arbitration agreement may elect to initiate a civil action, rather than an arbitration proceeding, and it specifically protects the party's right to do so."). Plaintiffs pointed this out to Aya in a response letter, while also noting that Aya's arbitration agreements suffered from numerous fundamental flaws, including unfair fee-shifting and failing to even name an arbitrator or the applicable rules. *See generally* Doc. No. 31-3. Thus, despite Aya's insistence that Plaintiffs "***must***" dismiss their court action, Plaintiffs had legitimate and viable challenges to Aya's arbitration agreements—as borne out by two arbitrator's recent decisions—and did not agree to withdraw their federal complaint.

Then, in the visual embodiment of the word "strident," Aya filed a Motion to Compel Arbitration of the Plaintiffs' claims that began as follows: "***This Motion has been made necessary by Plaintiffs' repeated refusal to honor their Arbitration Agreements with Aya***." Doc. No. 21-1, at 6 (all emphases in original). Aya erroneously claimed that the Plaintiffs did not have "any factual or legal grounds to assert that the Arbitration Agreements are unenforceable" (*id*. at 6), even though Plaintiffs' counsel sent a letter detailing the numerous deficiencies in Aya's arbitration agreements. In other words, Aya vigorously argued that *Plaintiffs* had breached the terms of their arbitration agreements with the company by filing in court, even though California law protects their right to so proceed.

While its motion to compel arbitration was pending, Aya attempted to affirmatively weaponize its arbitration agreement to obstruct Plaintiffs' counsel from even communicating with any of Aya's travel nurses until its motion was heard. Specifically, on October 28, 2022, Aya filed an "Ex Parte Application for a

Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction" requesting that the Court "enjoin" Plaintiffs' counsel "from any further communication with current and former Aya employees that it does not currently represent without prior authorization from the Court" while its motion to compel arbitration was pending. *See* Doc. No. 29-1, at 8.

Throughout its motion, Aya cited the existence of its arbitration agreements as a basis for its request. For example, Aya complained that Plaintiffs' counsel had filed consents to join the case "despite its express knowledge of the existence of the *arbitration agreements* precluding this action." *Id*. (emphasis in original). Aya went so far as to claim Plaintiffs' counsel's website for intaking new clients was "materially misleading" because it did not "advise that the action may be dismissed because the named Plaintiffs signed arbitration agreements." *Id*. at 19. Doubling down on its assertion that "Plaintiffs do not have any legitimate factual or legal basis to contest the enforcement of their arbitration agreements", Aya asserted that Plaintiffs' counsel was "deceiving Aya's employees into disclosing critical evidence under cover of a *proposed* collective action which cannot proceed in court." *Id*. at 22. In fact, Aya's motion was replete with unfounded and outrageous accusations of ethical violations and misconduct, underpinned by its spurious assertion that Plaintiffs had no right to be in court. The relief Aya sought was especially extraordinary: enjoining Plaintiffs' counsel from even communicating with Aya's current and former employees.[6] Doc. No. 29, at 2.

---

[6] As Plaintiffs explained in their Opposition to Aya's motion, the FLSA provides that the limitations period on a plaintiff's claim runs until she "gives [her] consent in writing to become such a party and such consent is filed in the court in which such action is brought." *See* Doc. No. 31, at 24 (quoting 29 U.S.C. § 216(b)). As Aya knew, granting its TRO would mean that its former employees could not preserve their claims against it until the injunction was lifted. *See id*. ("These workers are actively losing workweeks of compensable time until they file a consent to join, which they cannot do if Plaintiffs' counsel cannot communicate with them.").

Further, Aya's requested communication injunction potentially spanned years: while Aya asked for a TRO that would be effective until the hearing on its motion to compel arbitration, it simultaneously asked the court to issue an order to show cause for a preliminary injunction that would enjoin communications "pending a decision on the enforcement of the arbitration agreements with respect to *every putative class member who has consented to join this case*." *Id*. at 2-3 (emphasis added). In other words, Aya sought an order enjoining Plaintiffs' counsel from communicating with any travel nurses they did not already represent—including potential clients and witnesses—until 101 individual arbitrations had resolved. *See* Doc. No. 25 (101 consents to join filed at the time of Aya's *ex parte* motion).

Plaintiffs' opposition brief forcefully challenged Aya's misleading narrative, including pointing out Aya's motion was premised on falsehoods resulting from an inadequate pre-filing investigation, Doc. No. 31, at 7-12, that the extreme limitation on speech sought by Aya contravened Supreme Court precedent, *id*. at 22-24, and that the true purpose of Aya's motion was to prevent more employees from pursuing claims against the company, while also interfering with the factual development of the Plaintiffs' (including Plaintiff Miller's) claims. *See* Doc. No. 31-1 (Declaration of J. Austin Moore), ¶¶ 30-35.[7] The tenor and sweep of Aya's reliance on and enforcement of its arbitration agreement—including in ways that contravene clear California precedent—is far beyond that seen in the normal course of an employer seeking to enforce an arbitration agreement with its employee.

Ultimately, this Court compelled Plaintiffs' challenge to the arbitration agreement into arbitration, finding that "[b]ased on the language of the Delegation Clause in the Arbitration Agreement, the Court cannot decide threshold issues of validity and enforceability and therefore, compels arbitration on the arbitration of Plaintiffs' claims." Doc. No. 64, at 7. Based on the Court's order, the four named

---

[7] Ultimately, the Court dismissed Aya's motion without prejudice when it granted Aya's motion to compel arbitration and stayed the litigation. Doc. No. 64, at 18-19.

plaintiffs in this action, including Plaintiff Miller, each brought an arbitration before the AAA challenging Aya's Arbitration Agreement as unenforceable.

### b. Aya has Refused to Accept the Results of the Arbitrations that it asked this Court to Order.

Once in arbitration, Aya's efforts to defend its arbitration agreement went beyond just stridence, with the company misrepresenting the import of multiple orders from California courts, including this Court, to four different arbitrators. Specifically, Aya told the arbitrators that "***multiple California and federal trial courts have enforced Aya's Arbitration Agreement***" while omitting that none of those courts actually considered arguments relating to unconscionability. *See, e.g.* Doc. No. 79-5, at 10 (emphasis in original). Aya even included this Court's order enforcing the delegation provision, which clearly held it was not addressing the merits of any arbitration defenses. *See, e.g.*, Doc. No. 79-5, at 14 (attaching this Court's order compelling arbitration as an exhibit); *see also* Doc. No. 85-4, at 6, n.1. Every arbitrator who reviewed Aya's citations deemed them, at the very least, irrelevant, if not outright "misleading."[8]

The four arbitrations that Plaintiffs initiated in accordance with the Court's order began to resolve about ten months after they were initiated. Two arbitrators found Aya's arbitration agreement to be procedurally and substantively

---

[8] *See* Doc. No. 80-11, at 9, n.11 (Arbitrator Klibanow finding in O'Dell Arbitration that Aya's "representation that several courts have enforced same or similar agreements involving Aya and travel nurses" to be "misleading, as no decision was made on point."); Doc. No. 81-6, at 10, n.3 (Arbitrator Eskridge finding in Miller Arbitration that "in none of the rules/orders/decisions did the courts actually address the issue of unconscionability, so they are not relevant to the issues at hand."); Doc. No. 79-7, at 8 (Arbitrator Huerta finding in Zimmerman Arbitration that "it appears none of the six cases AYA attaches considered whether the Agreement is unconscionable under California law. The lone federal case attached is the stayed federal court action underlying this arbitration. The other five orders or minute orders attached were from various California Superior courts, none of which involved the issue and challenge raised here over unconscionability.").

unconscionable and unenforceable under California law; one arbitrator (in the Miller arbitration) found it to contain three procedurally unconscionable provisions but found those clauses to be severable; and only one arbitrator, in a decision entirely ghostwritten by Aya, found that there were no unconscionable provisions.

But rather than accepting the results of the process that it insisted upon, Aya instead argued that any legal or factual finding that was not in its favor was in "manifest disregard" of the law or "completely irrational," while omitting any of Plaintiffs' briefs from the record. Doc. No. 79-1, at 5-6; Doc. No. 85, at 5-6; Doc. No. 80-1, at 7-8; Doc. No. 86, at 5-6. It also strenuously renewed its argument that this Court's order finding that challenges to the arbitration agreement were delegated to the arbitrator was a tacit endorsement of the agreement's enforceability, *see* Doc. No. 79-1, at 21; Doc. No. 85, at 20-21; Doc. No. 80-1, at 21-22; Doc. No. 86, at 21-22, and made multiple claims that are flatly inconsistent with and belied by the arbitration record.[9] *See, e.g*., Doc. No. 85, at 14-15, 16 at n. 5, 6, 17-18, 18, n.7, 19, 22; Doc. No. 86, at 9-10, 16-17, 19-20. Aya's decision to selectively accept the results of the arbitration process—depending on whether the results were favorable to it—has now further delayed Plaintiffs' claims from being heard on their merits.

### 3. Under these Circumstances, a Default Judgment is Warranted.

Under these unusual circumstances, a default judgment against Aya on Plaintiff Miller's claims is warranted. In *Nyerges v. Pac. Sunwear of California, LLC*, 2022 WL 20717551 (C.D. Cal. July 6, 2022), Defendant Pacific Sunwear, like Aya, had successfully compelled arbitration, but failed to make timely payment of arbitration fees. *Id*. at *1. Pursuant to CCP § 1281.98, the court lifted the stay on the

---

[9] For example, Aya argued that an arbitrator's use of the phrase "in terrorem" was "unfathomable" when even nominal research into the meaning of the phrase would demonstrate that its use was contextually appropriate. *See* Doc. No. 89, at 11; Doc. No. 93, at 4-5.

underlying litigation, permitting Plaintiff's case to proceed in court, and awarded Plaintiff's fees and costs as mandated by 1281.99. *Id*. at \*\*1-3. But the *Nyerges* court declined Nyerges's request to impose a discretionary sanction, finding that delayed payment, which was just *one day* past the 30-day grace period, was "inadvertent," that Pacific Sunwear had since then "been making an effort to push the case forward," while Nygeres waited seven months after the AAA closed the arbitration to file the motion for sanction, which, among other circumstances, suggested that Nygeres (rather than Pacific Sunwear) was "driving the great majority of delay" in the case. *Id*., at \*3.

By contrast, Aya has willfully relied on its arbitration agreements to delay and obstruct at every stage of the case.[10] And now, due to its material breach of the Agreement, Plaintiff Miller is back in court, in precisely the same position as she was two years ago. Given Aya's attempted weaponization of its arbitration agreement at every stage of this litigation, a sanction of default judgment against Aya is "tailored to the particular abuse.'" *Lang v. Hochman*, 77 Cal. App. 4th 1225, 1245–46 (Cal. Ct. App. 2000) (cleaned up); *see also id*. at 1246 (noting that trial courts have imposed terminating sanctions "after considering the totality of the circumstances," including whether the conduct was "willful"); *Koninklijke Philips Elecs., N.V. v. KXD Tech., Inc.*, 347 F. App'x 275, 276 (9th Cir. 2009) (holding district court did not abuse discretion in imposing case-dispositive sanction, in form of entry of default judgment against defendants on trademark owner's Lanham Act

_____

[10] While section 1281.99 does not include a requirement that the violation have been willful for sanctions to be imposed, here, the record demonstrates that Aya's aggressive reliance on the arbitration agreement that it later breached was willful. S*ee, e.g*., *Kohan v. Cohan*, 229 Cal. App. 3d 967 (Cal. Ct. App. 2000) (noting that while willfulness was no longer a requirement for the imposition of discovery sanctions under the CCP, the record was nonetheless "replete with evidence" of willful misconduct and terminating sanctions were justified).

claims, for defendants' deliberate destruction of electronic records that trademark owner sought in support of its claim).

In the alternative, Plaintiff Miller requests evidentiary sanctions preventing Aya from taking discovery on her claims. CCP § 1281.99(b)(1). Under the circumstances, the requested sanction would serve the purpose of the public interest in expeditious resolution of this litigation, which has been held up for two years by Aya's insistence on arbitration, as well as assist in efficient management of a docket Aya clogged by moving to vacate the unfavorable results of arbitrations upon which it insisted. Additionally, the risk of prejudice to Aya would be low, and the policy favoring disposition of cases on their merits served, given that much information relevant to Plaintiff Miller's claims are already in Aya's possession, and Aya will be able to take discovery from other plaintiffs. Finally, Aya was on notice, as it was repeatedly warned that defaulting on payment would result in triggering of 1281.98, which specifically provides for such sanctions. *See* CCP § 1281.98(c)(2); *Carson Cheng v. AIM Sports, Inc.,* 2011 WL 13175663, at * 11 (C.D. Cal. 2011) (evaluating factors for imposing discovery sanctions under FRCP 37).

Ultimately, the requested sanctions would further the purposes of both the FAA and the CAA, which are to "ensure the quick, inexpensive, and conclusive resolution to a dispute." *See Gallo v. Wood Ranch, Inc.,* 81 Cal. App. 5th 621, 640 (Cal. Ct. App. 2022) (cleaned up); *Sink v. Aden Enterprises,* 352 F.3d 1197, 1201 (9th Cir. 2003) ("One purpose of the FAA's liberal approach to arbitration is the efficient and expeditious resolution of claims."). Aya's post-arbitration motions demonstrate the extent to which it treated its arbitration agreements as tools for obstruction and delay, not for streamlined and efficient dispute resolution. Imposing the terminating sanction (or, at a minimum, the evidentiary sanction) contemplated by the statute would further the very purpose of arbitration in the first place—

namely, more "efficient and speedy dispute resolution." *Gallo*, 81 Cal. App. 5th at 639 (citation omitted).[11]

### D. Court Should Require Aya to Produce Documentary Discovery Necessary to Enter Award of Damages.

Finally, in order to fix the value of the relief Plaintiff Miller prays for in the Complaint and enable the Court to enter a judgment of default in accord with CCP § 1281.99(b), Plaintiff Miller respectfully requests that the Court require Aya to produce discovery relevant to Plaintiff Miller's allegations of damages, including discovery relevant for punitive damages relating to her fraud claims. *See* Cal. Civ. Code § 3294(a) ("[W]here it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."); *see also Benson v. S. California Auto Sales, Inc.*, 239 Cal. App. 4th 1198, 1208–09 (Cal. Ct. App. 2015) ("If the deception was intentional, punitive damages are available.").

Thus, to demonstrate the full extent of available damages, Plaintiff seeks an order compelling production of the following documents: (1) payroll records relevant to her May 16, 2022 to August 13, 2022 travel assignment with Aya sufficient to calculate the "difference between the value of the original agreement and the unilateral pay reduction" and the extent of underpayment of overtime; (2) documents reflecting every instance that Aya cut a nurse's pay mid-contract prior to

---

[11] In addition, default judgment here, as to a single Plaintiff's claim among many others that remain ongoing and poised for consideration on their merits, would serve its deterrent effect well while avoiding the "severe" case-dispositive result that default judgment would have in a typical action, which precludes a party's ability to litigate the claims on their merits. *See Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096–97 (9th Cir. 2007) (noting court's Rule 37 sanction of default for discovery violations was "severe," but affirming where record "amply support[ed] sanctions").

entering into a contract with Ms. Miller;[12] and (3) all internal communications discussing Aya's practice of making mid-contract pay reductions. This discovery will enable Plaintiff Miller to request the Court enter of an award on the default judgment consistent with the relief sought in the Complaint.

## CONCLUSION

For the reasons set forth herein, Plaintiff Miller respectfully requests the Court grant her motion and enter an order awarding the following relief: (1) lift the stay as to her claims; (2) award her attorneys' fees of $136,760 and costs of $1,206.27, totaling $137,966.27; (3) enter a default judgment against Defendant Aya on Plaintiff Miller's claims, or, in the alternative, order evidentiary sanctions preventing it from taking discovery from Plaintiff Miller; (4) order Defendant Aya, within 14 days, to produce the payroll records and other discovery set forth above; and (5) order Defendant Aya to respond to Plaintiff Miller's requests for discovery necessary relevant to establishing punitive damages within 14 days of their service.

Dated: August 19, 2024

Respectfully submitted,

*/s/ J. Austin Moore*
George A. Hanson (*pro hac vice*)
J. Austin Moore (*pro hac vice*)
Alexander T. Ricke (*pro hac vice*)
K. Ross Merrill (*pro hac vice*)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: 816-714-7100
hanson@stuevesiegel.com
moore@stuevesiegel.com

---

[12] *See, e.g., Fashion Nova LLC v. Citizens Ins. Co. of Am.*, 2023 WL 8872092, at *5 (C.D. Cal. Nov. 8, 2023) (noting bad faith can be established "by showing *either* that the acts that harmed [the plaintiff] were knowingly committed or were engaged in with such frequency as to indicate a general business practice.") (citation omitted) (emphasis in original).

24

ricke@stuevesiegel.com
merrill@stuevesiegel.com

Jason S. Hartley
Jason M. Lindner
**HARTLEY LLP**
101 West Broadway, Suite 820
San Diego, California 92101
Tel: 619-400-5822
hartley@hartleyllp.com
lindner@hartleyllp.com

*Attorneys for Plaintiffs and the Putative*
*Classes and Collective*