Jason S. Hartley (SBN# 192514)
Jason M. Lindner (SBN# 211451)
**HARTLEY LLP**
101 West Broadway, Suite 820
San Diego, CA 92101
Telephone: 619-400-5822
hartley@hartleyllp.com
lindner@hartleyllp.com

George A. Hanson (*pro hac vice*)
J. Austin Moore (*pro hac vice*)
Alexander T. Ricke (*pro hac vice*)
Yasmin Zainulbhai (*pro hac vice*)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: 816-714-7100
hanson@stuevesiegel.com
moore@stuevesiegel.com
ricke@stuevesiegel.com
merrill@stuevesiegel.com
zainulbhai@stuevesiegel.com

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA O'DELL, HOLLY ZIMMERMAN, and LAUREN MILLER, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>AYA HEALTHCARE, INC.,<br><br>                    Defendant. | Case No. 3:22-cv-1151-CAB-MMP<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE CLASS AND COLLECTIVE ALLEGATIONS**<br><br>Hearing Date: November 29, 2024<br><br>PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT<br><br>Courtroom: 15A<br><br>Judge: Hon. Cathy Ann Bencivengo<br><br>Complaint Filed: August 4, 2022<br><br>Trial Date: January 12, 2026 |

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES....................................................................................... ii

I.     INTRODUCTION.......................................................................................... 1

II.    BACKGROUND.............................................................................................. 3

       A.    Plaintiffs' "Regular Rate" and "Bait-and-Switch" Allegations ................... 3

       B.    The Court's Scheduling Order Sets an Efficient Path Forward ................... 5

III.   ARGUMENT .................................................................................................. 5

       A.    Dismissing Any Claims on Standing Grounds Would Be
             Premature ........................................................................................... 5

       B.    Aya's Motion to Strike the Class and Collective Allegations is
             Procedurally Deficient and Premature ........................................... 10

             1.    Plaintiffs' Well-Pled Class and Collective Claims
                   should not be Struck based on the Purported Presence of
                   Arbitration Agreements................................................... 10

             2.    Aya's Motion to Strike Class Allegations Based on Rule
                   23 Requirements is Premature and Inadequate. .............. 13

             3.    Aya's Motion to Strike Plaintiffs' Collective
                   Allegations Should Be Denied ........................................ 23

IV.    CONCLUSION ......................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Abboud v. Circle K Stores Inc.*,
    2024 WL 1765659 (D. Ariz. Apr. 24, 2024) ................................................ 14

*Abernathy v. DoorDash, Inc.*,
    438 F. Supp. 3d 1062 (N.D. Cal 2020) ....................................................... 15

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) ....................................................................................... 6

*Avilez v. Pinkerton Gov't Servs., Inc.*,
    596 Fed. App'x. 579 (9th Cir. 2015) ......................................................... 15

*Ayala v. U.S. Xpress Enters, Inc.*,
    2016 WL 7586910 (C.D. Cal. Dec. 22, 2016) ............................................ 21

*Barrera v. Samsung Elecs. Am., Inc.*,
    2018 WL 10759180 (C.D. Cal. Dec. 7, 2018) ......................................... 6, 9

*Birdsong v. AT&T Corp.*,
    2013 WL 1120783 (N.D. Cal. Mar. 8, 2013) ............................................. 12

*Blair v. CBE Group Inc.*,
    2013 WL 2029155 (S.D. Cal. 2013) ........................................................... 22

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) ................................................................... 17

*Bryant v. Serv. Corp. Intern.*,
    2011 WL 855815 (N.D. Cal. Mar. 9, 201) ................................................. 21

*Cal. Dep't of Toxic Substances Control v. Alco Pacific, Inc.*,
    217 F. Supp. 2d 1028 (C.D. Cal. 2002) ................................................ 10, 20

*Campbell v. City of Los Angeles*,
    903 F.3d 1090 (9th Cir. 2018) ........................................................ 23, 24, 25

*Carlino v. CHG Med. Staffing, Inc.*,
    2019 WL 1005070 (E.D. Cal. Feb. 28, 2019) ........................................... 24

*Carranza v. Terminix Int'l Co. Ltd. P'ship*,
    529 F. Supp. 3d 1139 (S.D. Cal. 2021) ...................................................... 14

*Cholakyan v. Mercedes-Benz USA, LLC*,
    796 F. Supp. 2d 1220 (C.D. Cal. 2011) ................................................ 11, 19

*Clancy v. Bromley Tea Co.*,
    308 F.R.D. 564 (N.D. Cal. 2013) ............................................................... 18

*Dalchau v. Fastaff, LLC*,
    2018 WL 452112 (N.D. Cal. Jan. 17, 2018) .............................................. 24

*Davison v. Kia Motors, Inc.*,
2015 WL 3970502 (C.D. Cal. June 29, 2015) ............................................. 19

*Deane v. Fastenal Co.*,
2013 WL 675462 (N.D. Cal. 2013) ............................................................. 23

*Delux Cab, LLC v. Uber Techs., Inc.*,
2017 WL 1354791 (S.D. Cal. Apr. 13, 2017) ............................................... 14

*Erica P. John Fund, Inc., v. Halliburton, Co.*,
563 U.S. 804 (2011) ..................................................................................... 20

*Fernandez v. CoreLogic Credco*,
593 F. Supp. 3d 974 (S.D. Cal. 2022) ................................................... 22, 23

*Graves v. Sw. & Pac. Specialty Fin., Inc.*,
2013 WL 5945851 (N.D. Cal. Nov. 4, 2013) ......................................... 11, 12

*Gustafson v. BAC Home Loans Servicing, LP*,
294 F.R.D. 529 (C.D. Cal. 2013) ................................................................. 19

*Hamilton v. NuWest Group Holdings*,
2023 WL 3582939 (W.D. Wash. May 22, 2023) .......................................... 24

*Heckman v. Live Nation Entm't Inc.*,
*et al.*, 2024 WL 4586971 ............................................................................. 13

*Howell v. Advantage RN, LLC*,
2018 WL 3437123 (S.D. Cal. July 17, 2018) ............................................... 24

*In re Target Corp. Data Sec. Breach Litig.*,
66 F. Supp. 3d 1154 (D. Minn. 2014) ....................................................... 8, 9

*In re Toyota RAV4 Hybrid Fuel Tank Litig.*,
534 F. Supp. 3d 1067 (N.D. Cal. 2021) ......................................................... 6

*In re Visa Check/MasterMoney Antitrust Litig.*,
280 F.3d 124 (2d Cir. 2001) ......................................................................... 17

*In re Vizio, Inc., Consumer Priv. Litig.*,
2017 WL 11420284 (C.D. Cal. July 25, 2017) ....................................... 10, 11

*In re Wal-Mart Stores, Inc. Wage & Hour Litig.*,
505 F. Supp. 2d 609 (N.D. Cal. 2007) ......................................................... 14

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
571 F.3d 953 (9th Cir. 2008) ................................................................. 20, 21

*Jessop v. Giggle, Inc.*,
2015 WL 11622421 (S.D. Cal. Feb. 2, 2015) ......................................... 14, 21

*Junhan Jeong v. Nexo Cap. Inc.*,
2022 WL 3590239 (N.D. Cal. Aug. 22, 2022) ............................................. 12

iii

*Keifer v. HOSOPO Corp.*,
   2018 WL 5295011 (S.D. Cal. Oct. 25, 2018) ............................................... 19

*Lacour v. Marshalls of CA, LLC*,
   2021 WL 1700204 (N.D. Cal. Apr. 29, 2021) .............................................. 12

*Lu v. AT&T Servs.*,
   2011 WL 2470268 (N.D. Cal. June 21, 2011) ............................................. 12

*Mazza v. Am. Honda Motor Co. Inc.*,
   666 F.3d 581 (9th Cir. 2012) ............................................................. 17, 18

*Melendres v. Arpaio*,
   784 F.3d 1254 (9th Cir. 2015) .............................................................. 7, 9

*Nitsch v. Dreamworks Animation SKG Inc.*,
   315 F.R.D. 270 (N.D. Cal. 2016) ............................................................. 16

*Ortiz v. CVS Caremark Corp.*,
   2013 WL 6236743 (N.D. Cal. Dec. 2, 2013) .............................................. 21

*Ortiz v. Fibreboard*,
   527 U.S. 815 (1999) ............................................................................. 6

*Perez v. Nidek Co., Ltd.*,
   711 F.3d 1109 (9th Cir. 2013) ................................................................. 6

*Phan v. Sargento Foods, Inc.*,
   2021 WL 2224260 (N.D. Cal. June 2, 2021) ............................................. 18

*Quinlan v. Macy's Corp. Servs., Inc.*,
   2013 WL 11091572 (C.D. Cal. Aug. 22, 2013) .......................................... 15

*Rejuso v. Brookdale Senior Living Communities, Inc.*,
   2019 WL 6735124 (C.D. Cal. May 22, 2019) ............................................ 12

*Rennick v. NPAS*,
   *Sols.*, 2020 WL 244170 (C.D. Cal. Jan. 16, 2020) ...................................... 21

*Rosales v. FitFlop USA*,
   882 F. Supp. 2d 1168 (S.D. Cal. 2012) .................................................... 21

*Salberg v. Massage Green Int'l Franchise Corp.*,
   2016 WL 3667154 (S.D. Cal. July 11, 2016) ............................................ 11

*Stearns v. Select Comfort Retail Corp.*,
   763 F. Supp. 2d 1128 (N.D. Cal. 2010) ................................................... 20

*Tan v. Grubhub Inc.*,
   2016 WL 4721439 (N.D. Cal. July 19, 2016) ............................................ 15

*Tietsworth v. Sears*,
   720 F.Supp.2d 1123 (N.D. Cal. 2010) ..................................................... 25

iv

*Tschudy v. J.C. Penney Corp., Inc.*,
    2015 WL 8484530 (S.D. Cal. Dec. 9, 2015) ............................................................ 15

*Vinole v. Countrywide Home Loans, Inc.*,
    571 F.3d 935 (9th Cir. Cal. 2009)............................................................................. 21

*Woodburn v. City of Henderson*,
    2020 WL 5805503 (D. Nev. Sept. 29, 2020) ............................................................ 12

*Yaffe v. Powers*,
    454 F.2d 1362 (1st Cir. 1972) ................................................................................... 17

**<u>Statutes</u>**

43 Pa. Stat. Ann. § 260.3 ............................................................................................. 7

820 Ill. Comp. Stat. Ann. 105/4a ................................................................................ 7

Ariz. Rev. Stat. Ann. § 23–351 ................................................................................... 7

Mich. Comp. Laws Ann. § 408.414a ........................................................................... 7

Mont. Code Ann. § 39–3–204 ..................................................................................... 7

N.Y. Comp. Codes R. & Regs. tit. 12, § 142-3.2 ....................................................... 7

**<u>Rules</u>**

Federal Rule of Civil Procedure 23(c) ...................................................................... 17

**<u>Other Authorities</u>**

5C Fed. Prac. & Proc. Civ. § 1380 (3d ed. 2017)..................................................... 11

7AA Charles Alan Wright, et al., Federal Practice & Procedure § 1785.1
    (3d ed.) ....................................................................................................................... 9

v

# I.    INTRODUCTION

Over two years ago, Plaintiffs O'Dell and Zimmerman filed a complaint against Aya alleging claims arising out of two sets of practices by the company. The first is Aya's "bait and switch" pay practices, where the company presents travel clinicians with a take-it-or-leave-it ultimatum in the middle of their contracts: accept a lower pay rate than originally promised or face termination. This alleged practice gives rise to claims under state common and labor laws. The second is Aya's practice of treating stipends as compensation but then failing to include their significant value in the travel clinicians' regular rate of pay, resulting in underpaid overtime. This practice gives rise to claims under the Fair Labor Standards Act and state labor laws. Given that these practices affect a broad group of Aya's travel employees, Plaintiffs have brought these claims on a class and collective basis.

Aya now moves to strike all of Plaintiffs' class and collective claims, despite acknowledging that it is a nationwide employer with over 300,000 travel employees who would likely fall within the class and collective definitions. But there is no viable ground for granting the highly disfavored remedy of striking Plaintiffs' well-pled class and collective allegations. Aya's primary argument is predictable: it claims that "99.9% of the proposed class and collective members remain bound by their arbitration agreements." This argument fails for multiple reasons. First, it relies on material beyond the pleadings, which is improper at this stage of the case. Second, Aya is not entitled to a presumption of enforceability when its form arbitration agreement has already been found unconscionable by two independent arbitrators and, in a third instance, the agreement was deemed unenforceable due to Aya's own material breach. Further, Aya seeks to undercut this Court's scheduling order, which sets a timeline and process for assessing the enforceability of Aya's agreement.

Aya next argues that the Plaintiffs cannot meet either the Rule 23 class action or FLSA collective action requirements. These arguments are premature and improper at the pleading stage. Aya has yet to respond substantively to any of the

1

class or collective allegations in the Complaint, discovery has just begun, and the Court's scheduling order provides that class certification will be briefed early in 2025. Striking Plaintiffs' class and collective allegations now would obstruct the natural development of this case through discovery, which is essential for both parties to develop the factual and legal bases of their claims and defenses. Further, as the facts and legal claims develop, the parties and this Court have multiple tools at their disposal to help manage the putative class action. If, as Aya claims, there are relevant differences in underlying state law—a point Aya has yet to substantiate—Plaintiffs can propose subclasses to address those differences. Indeed, Plaintiffs have already taken this approach by proposing a separate California Labor Code Class for employees who worked in California.

Far from showing that Plaintiffs' class and collective allegations could never succeed—an extremely high threshold required to justify striking such claims—Aya's own admissions underscore the practicality of pursuing these claims on a class and collective basis. Aya concedes that it is a nationwide employer and that the potential class and collective could encompass hundreds of thousands of travel clinicians, making class and collective action the most efficient and superior method for resolving these claims. In contrast, Aya's approach—insisting on over 300,000 individual arbitrations addressing enforceability and merits—would be exceedingly inefficient and impose an impractical and undue burden on everyone involved.

Aya also raises a standing argument, arguing that the two named plaintiffs cannot bring claims under the laws of states other than those in which they worked, New Jersey and California. Given the unique posture of this case, Plaintiffs submit that this Court should exercise its discretion to assess standing at the class certification stage. That is because there is a strong likelihood that, following the notice period of conditional certification, additional plaintiffs will join the case and be available to assert claims under the laws of states where they worked. It would thus be premature to dismiss any claims due to standing at this stage of the case.

Aya's Motion to Dismiss and Strike Class and Collective Allegations should be denied in full.

## II.    BACKGROUND

### A.    Plaintiffs' "Regular Rate" and "Bait-and-Switch" Allegations

Plaintiffs' First Amended Complaint, filed over two years ago, asserts claims arising out of two alleged practices by Aya. *See* First Amended Complaint ("FAC"), Doc No. 15. The first is Aya's "bait-and-switch" pay practices, where Plaintiffs allege that Aya has a practice of offering contracts to travel clinicians for a fixed-term assignment and at an-agreed upon pay rate. *Id*. ¶ 2. After the nurse accepts the position and starts the assignment, Aya makes a "take-it-or-leave-it" demand to accept less pay or be terminated. *Id*. Because they have already incurred travel expenses, secured short-term housing, and uprooted their lives to accept the assignment, most clinicians have no choice but to continue working the assignment at the lower rate of pay. *Id*.

Plaintiffs O'Dell and Zimmerman were each subjected to these predatory pay practices. For example, Aya offered Plaintiff O'Dell a position at Sutter Santa Rosa Regional Hospital at a base hourly rate of pay of $51.00 with a minimum of 36 scheduled hours per week. *Id*. ¶ 45. Plaintiff O'Dell accepted the offer, moved from her home in Indiana to California, secured short-term living arrangements, and forewent other employment opportunities. *Id*. ¶ 46.  About seven weeks into her 13-week assignment, however, Aya made her a "take-it-or-leave it" demand to accept a more than 50% reduction in her rate of pay or be terminated. *Id*. ¶ 47. She had no choice but to do so, having already spent substantial time and money securing the assignment and taking other necessary steps, and unable to find comparable employment in such a short period of time. *Id*. ¶ 48.

Plaintiff Zimmerman had a strikingly similar experience. She accepted Aya's offer of employment at Jersey City Medical Center Rapid Response in Jersey City, New Jersey for a 13-week assignment at a base rate of hourly pay of $85. *Id*. ¶ 60.

1    She moved from her home in Florida to New Jersey, secured short-term living
2    arrangements, and forewent other employment opportunities. *Id*. ¶¶ 61-62. About
3    six weeks into her assignment, Aya demanded that she accept a nearly 35% reduction
4    in her base hourly pay rate (and corresponding cuts to her overtime and other pay
5    rates) or be terminated. *Id*. ¶ 62.

6         These practices give rise to claims under common law—specifically, breach
7    of contract, promissory estoppel, fraud, and negligent misrepresentation—as well as
8    under state wage statutes that all require employers to pay all wages due or owed.
9    *Id*. ¶¶ 109-178, 194-204, 218-239. Given the widespread scope of these practices,
10   Plaintiffs bring these claims on behalf of a class of individuals subject to Aya's
11   alleged bait-and-switch practices. Additionally, the state wage violations are pursued
12   on behalf of a "State Wage Payment Laws Class," representing employees who
13   worked across multiple states, excluding California. *See id*. ¶ 98. Recognizing
14   California's distinct labor laws, Plaintiff O'Dell brought separate claims on behalf
15   of a "California Labor Code Class," a California § 970 Class, and a California Unfair
16   Competition Law (UCL) Class, representing employees who worked in California
17   and experienced one or more of these alleged violations. *See id*. In its Answer, while
18   declining to respond to any class or collective-wide allegations, Aya described itself
19   as a nationwide employer. *See* Doc. No. 135, ¶ 100 (admitting that Aya "employs
20   thousands of individuals across the United States.").

21        Plaintiffs' second set of claims arises from Aya's practice regarding the
22   payment of stipends, which Plaintiffs contend violates the Fair Labor Standards Act
23   (FLSA) and similar state overtime laws. *See id*. ¶¶ 78-97. Specifically, Plaintiffs
24   allege that Aya categorized housing and meal stipends, among other allowances, as
25   compensation but then improperly excluded their substantial value from the "regular
26   rate" of pay when calculating overtime. *Id*. Because these allegations stem from a
27   uniform policy applied by Aya, Plaintiffs assert their FLSA claim on a collective
28   basis on behalf of all "similarly situated" employees. *See id*. ¶¶ 107-108. Plaintiffs

also assert state overtime claims on behalf of a proposed "State Unpaid Overtime Class," which includes employees covered under the alleged state overtime statutes. *Id.* ¶¶ 189-139. Plaintiff O'Dell brings a separate claim under California law on behalf of the "California Labor Code Class." *See id.* ¶¶ 205-217.

## B.   The Court's Scheduling Order Sets an Efficient Path Forward

This Court is familiar with the winding path this case has traveled over the last two years, so Plaintiffs will not recount that history and instead start from the point when this Court lifted the litigation stay and charted an efficient path forward for this case.

On September 24, 2024, the parties participated in a Case Management Conference with Magistrate Judge Pettit. Three days later, Judge Pettit issued a scheduling order that set out numerous deadlines in this case, through trial. Doc. No. 132. According to the Scheduling Order, fact discovery has now commenced and is to be completed by March 21, 2025. *Id.* ¶ 8. The order also sets several key dates in the next few months: the Court will set a deadline for joining additional parties or amending the pleadings following its ruling on Plaintiffs' fully briefed Motion for Conditional Certification of the FLSA Collective Action. *Id.* ¶ 3. Additionally, Aya is to file any motion to compel arbitration of current opt-in plaintiffs by November 15, 2024, *id.* ¶ 4, and Plaintiffs are to file their motion for class certification by February 21, 2025. *Id.* ¶ 5.

## III.   ARGUMENT

### A.   Dismissing Any Claims on Standing Grounds Would Be Premature

Aya argues that Plaintiffs Zimmerman and O'Dell only have standing to bring claims under the laws of states in which they worked, California and New Jersey, and that the Court should thus dismiss all claims brought under the laws of any other state. Doc. No. 134-1 ("Mot."), at 18-20.

5

While standing is typically a threshold issue to be determined at the outset of a case, the Supreme Court has twice affirmed that in the class action context, class certification may be "logically antecedent to the existence of any Article III issues." *Amchem Prods. v. Windsor*, 521 U.S. 591, 612 (1997); *Ortiz v. Fibreboard*, 527 U.S. 815, 831 (1999) (finding class certification issues to be "logically antecedent" to standing issues); *see also Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1113-14 (9th Cir. 2013) (declining to reach the "difficult chicken-and-egg question of whether class certification should be decided before standing"). Surveying these cases, district courts in this Circuit have concluded that "there is no hard and fast rule to apply" when addressing issues of standing in the context of a putative class action. *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1124 (N.D. Cal. 2021); *see also id.* ("[A] strict categorical requirement that the standing analysis must precede class certification is unwarranted") (cleaned up).

Thus, as one court explained, "district courts have the discretion to defer questions of standing until after class certification, but may nonetheless opt, as a matter of case management, to address standing in advance of class certification." *Id.* at 1124 (cleaned up). Here, Plaintiffs acknowledge that courts within the Ninth Circuit have, at times, opted to dismiss claims brought under the laws of states that do not have a class representative at the pleading stage. Such a dismissal, however, is discretionary, not mandatory. And notably, while claiming that Plaintiffs O'Dell and Zimmerman do not have standing to bring claims under the laws of states where they did not work, Aya has not put forth any analysis of "how the states' law differ or why Plaintiffs cannot represent a nationwide class." *Barrera v. Samsung Elecs. Am., Inc.*, 2018 WL 10759180, at *11 (C.D. Cal. Dec. 7, 2018); *see also In re Toyota*, 534 F. Supp. 3d at 1125 (concluding that the standing determination "would be better addressed [at] a later juncture, such as class certification," and that the analysis "might well depend, for example, on the degree of variation among the state laws under which Plaintiffs ultimately state claims.").

1    Nor can Aya make such a showing, as each of the state wage payment statutes

2    listed in the Seventh Cause of Action shares a critical commonality: the mandate to

3    pay earned wages to employees.[1] Aya violated this fundamental requirement when

4    it unilaterally reduced nurses' pay mid-contract—the precise fact pattern underlying

5    Plaintiffs' claims. Where the laws of multiple states are sufficiently similar, a

6    Plaintiff who meets the criteria may act as an adequate representative for employees

7    who worked in those states and bring claims on their behalf. *See Melendres v.*

8    *Arpaio*, 784 F.3d 1254, 1263 (9th Cir. 2015) ("Under the class certification

9    approach, or the standing approach for that matter, the named plaintiffs in this case

10    . . . are adequate representatives because the named plaintiffs' claims do not

11    implicate a significantly different set of concerns than the unnamed plaintiffs'

12    claims.") (cleaned up). The same reasoning applies to the state overtime violations,

13    which are based on the same underlying facts that give rise to Plaintiffs' FLSA

14    claims. FAC ¶¶ 189-93. These statutes uniformly give rise to a claim for Aya's

15    failure to pay all overtime wages owed.[2]

16    ――――――――――――――――

17    [1] *See, e.g.*, Ariz. Rev. Stat. Ann. § 23–351 ("Each employer, on each of the regular paydays,
shall pay to the employees all wages due the employees up to that date"); Mont. Code Ann.

18    § 39–3–204 ("[E]very employer of labor in the state of Montana shall pay to each employee

19    the wages earned by the employee in lawful money of the United States . . .and a person
for whom labor has been performed may not withhold from any employee any wages

20    earned or unpaid for a longer period than 10 days after the wages are due and payable");

21    43 Pa. Stat. Ann. § 260.3 ("Every employer shall pay all wages . . . due to his employees
on regular paydays designated in advance by the employer.").

22    [2] *See, e.g.*, 820 Ill. Comp. Stat. Ann. 105/4a ("[N]o employer shall employ any of his

23    employees for a workweek of more than 40 hours unless such employee receives

24    compensation for his employment in excess of the hours above specified at a rate not less
than 1 1/2 times the regular rate at which he is employed."); Mich. Comp. Laws Ann.

25    § 408.414a ("Except as otherwise provided in this act, an employee shall receive

26    compensation at not less than 1-1/2 times the regular rate at which the employee is
employed for employment in a workweek in excess of 40 hours."); N.Y. Comp. Codes R.

27    & Regs. tit. 12, § 142-3.2 ("An employer shall pay an employee for overtime at a wage

28    rate of one and one-half times the employee's regular rate in the manner and methods
provided in and subject to the exemptions of sections 7 and 13 of 29 U.S.C. 201 et seq., the
Fair Labor Standards Act of 1938.").

Even if state-specific representatives are ultimately required to pursue state law claims, the Court need not dismiss those claims at this stage. In multidistrict litigation involving the Target data breach, the district court faced the same question regarding whether to address standing at the pleading stage where plaintiffs alleged violations of 50 state consumer protection laws without representatives from every state. Acknowledging the split of authority on this issue, the court concluded that, under the specific facts of that case, it was more appropriate to defer the analysis until the class certification stage. The court reasoned that, "[a]s Target undoubtedly knows, there are consumers in Delaware, Maine, Rhode Island, Wyoming, and the District of Columbia whose personal financial information was stolen in the 2013 breach. To force Plaintiffs' attorneys to search out those individuals at this stage serves no useful purpose. In this case, and under the specific facts presented here, the Article III standing analysis is best left to after the class-certification stage. Should a class be certified, and should that class as certified contain no members from certain states, Target may renew its arguments regarding standing." *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1160 (D. Minn. 2014).

The same conclusion is warranted here. For one, Aya acknowledges that it is a nationwide employer, stating that it employed travel clinicians who worked in "approximately tens of thousands of healthcare facilities or campuses *nationwide*." Doc. No. 134-3, M. Moore Dec. ¶ 3 (emphasis added); *see also id*. ¶ 5 ("The clinicians could have been placed at tens of thousands of facilities or facility locations *across the nation* by various recruiters.") (emphasis added); Doc. No. 135, Aya Answer, ¶ 100 ("Aya admits only that it employs thousands of individuals across the United States"). Thus, Aya is well aware there will be clinicians nationwide whose work for Aya gave rise to the claims asserted in the Complaint.

Moreover, there is already a process in place that will allow Plaintiffs to identify class representatives who worked in additional states throughout the nation. If conditional certification of the FLSA collective is granted, notice will be issued to

hundreds of thousands of employees who worked for Aya. Through the opt-in and vetting process, it is likely that individuals from many states will volunteer to serve as class representatives for both overtime and state wage payment violations that occurred in their respective states. And consistent with the scheduling order for this case, the deadline for parties to amend the pleadings will be set after the Court rules on the Plaintiffs' Motion for Collective Certification. Doc. No. 132, ¶ 3.

Accordingly, this issue should be deferred until after Plaintiffs file an amended complaint and move for class certification, at which point Aya will have the opportunity to raise this issue in the context of addressing the adequacy and typicality of the class representatives. As the Ninth Circuit has explained, "[r]epresentative parties who have a direct and substantial interest have standing; the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation." *Melendres*, 784 F.3d at 1263 (quoting 7AA Charles Alan Wright, et al., Federal Practice & Procedure § 1785.1 (3d ed.)); *see also Barrera*, 2018 WL 10759180, at *11 (declining to dismiss claims on standing ground because "the Court can more adequately address this issue when fully briefed at the class certification stage.").

The incorporation of an early, nationwide notice process distinguishes this case from those cited by Aya. As noted above, dismissing claims under the laws of states where no current named representative worked "serves no useful purpose" at this stage, especially given that Aya has not provided any explanation as to how these states' laws differ in ways that would prevent Plaintiffs from adequately serving as representatives for such claims. *In re Target*, 66 F. Supp. 3d at 1160. Accordingly, this Court should defer its determination of whether the named representatives may appropriately represent all individuals in the proposed class until the class certification stage, when the parties will have developed a more complete record to inform that assessment.

## B.    Aya's Motion to Strike the Class and Collective Allegations is Procedurally Deficient and Premature

Next, Aya moves to strike Plaintiffs' class and collective allegations pursuant to Rule 12(f), which permits a court to strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Mot. at 20-34. As a threshold matter, "[m]otions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Cal. Dep't of Toxic Substances Control v. Alco Pacific, Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002) (citation omitted). "'Motions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation.'" *In re Vizio, Inc., Consumer Priv. Litig.*, 2017 WL 11420284, at *3 (C.D. Cal. July 25, 2017) (citation omitted). And while whether to grant a motion to strike lies within the district court's discretion, the court must "view[] the pleadings in the light most favorable to the non-moving party." *California Dep't of Toxic Substances Control*, 217 F. Supp. 2d at 1033. As explained below, Aya's motion to strike Plaintiffs' class and collective claims is both procedurally defective and premature.

### 1.    Plaintiffs' Well-Pled Class and Collective Claims should not be Struck based on the Purported Presence of Arbitration Agreements.

Once again relying on the purported existence of arbitration agreements, Aya asks the Court to strike Plaintiffs' class and collective allegations. But this argument fails for multiple reasons.

The first is a threshold, procedural one. Aya submits a declaration contending that "99.9%" of the proposed class and collective members are bound by arbitration agreements that purport to waive participation in a class or collective action. Mot. at 20-21; M. Moore Dec. ¶ 11. This declaration forms the entire basis for its argument that the class and collective claims should be struck due to arbitration. But the

"obvious flaw" with such a declaration is that "[m]atter outside the pleadings normally is not considered on a Rule 12(f) motion." *In re Vizio*, 2017 WL 11420284, at \*7 (quoting Charles Alan Wright et al., 5C Fed. Prac. & Proc. Civ. § 1380 (3d ed. 2017)). As a result, "affidavits in support of . . . the motion typically may not be used." *Id*. (quoting *Wright*, at § 1380); *see also id*. at \*7 (declining to consider declaration attesting that defendant had required consumers to enter mandatory arbitration agreements on a motion to strike). The declaration that forms the basis of Aya's motion to strike based on arbitration is not appropriate for consideration, and Aya's request should be denied on that basis alone. *Graves v. Sw. & Pac. Specialty Fin., Inc*., 2013 WL 5945851, at \*4 (N.D. Cal. Nov. 4, 2013) (denying motion to strike based on declaration regarding arbitration "because it is predicated on extrinsic evidence that cannot be considered by the Court in ruling on the motion").

Beyond that threshold—and determinative—issue, in moving to strike Plaintiffs' class and collective allegations, Aya implicitly asks the Court to presume that its arbitration agreement (and its delegation clause) is enforceable. Aya provides no support for that position—especially when, on a motion to strike, it is *plaintiffs* who are entitled to all inferences in their favor. *See Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1244–45 (C.D. Cal. 2011) ("In ruling on a motion to strike under Rule 12(f), the court must view the pleading in the light most favorable to the non-moving party."). Further, Aya is not entitled to a presumption of enforceability when its form arbitration agreement has already been found unconscionable by two independent arbitrators and, in a third instance, the agreement was deemed unenforceable due to Aya's own material breach. Aya's motion simply turns a blind eye to the procedural history of this case.

Nor do the cases Aya cites support its request. In some of those cases, the enforceability of the at-issue arbitration agreements was uncontested by the plaintiff alleging class claims. *See, e.g., Salberg v. Massage Green Int'l Franchise Corp*., 2016 WL 3667154, at \*3 (S.D. Cal. July 11, 2016) (granting "Defendant's

*unopposed* motion to compel individual arbitration" and strike class allegations) (emphasis added); *Lacour v. Marshalls of CA, LLC*, 2021 WL 1700204, at *7 (N.D. Cal. Apr. 29, 2021) (motion to strike granted where plaintiffs did not argue that class waiver was invalid). That is plainly not the case here, where plaintiffs assert Aya's form arbitration agreement is unenforceable for everyone. Similarly, in other cases Aya cites, the question of enforceability had already been resolved by the Court. *See Junhan Jeong v. Nexo Cap. Inc.*, 2022 WL 3590239, at *14-16 (N.D. Cal. Aug. 22, 2022) (court granted motion to strike class allegations after rejecting plaintiffs' challenge to class action waiver); *Rejuso v. Brookdale Senior Living Communities, Inc.*, 2019 WL 6735124, at *5 (C.D. Cal. May 22, 2019) (granting motion to strike *after* finding that arbitration agreement was enforceable). And in both *Birdsong v. AT&T Corp.*, 2013 WL 1120783, at *4-6 (N.D. Cal. Mar. 8, 2013) and *Lu v. AT&T Servs.*, 2011 WL 2470268, at *3-5 (N.D. Cal. June 21, 2011), the court dismissed class and collective claims because a release signed by the named plaintiff prohibited participation in a class action. That is not the case here, as neither Plaintiff O'Dell nor Plaintiff Zimmerman are bound by an arbitration agreement or class waiver.

But Aya does not cite any case in which a court struck class or collective allegations at the pleading stage based solely on a defendant's unilateral claim that it had enforceable arbitration agreements with putative class members. To the contrary, "numerous district courts have declined to strike class allegations on the basis that some or all absent class members are bound by arbitration provisions." *Woodburn v. City of Henderson*, 2020 WL 5805503, at *4 (D. Nev. Sept. 29, 2020) (collecting cases); *Graves*, 2013 WL 5945851, at *3–4 (defendant's motion to strike class allegations regarding arbitrability of absent class-member claims was "premature," given that defendant "has not filed an answer to the complaint, discovery has not yet commenced, and no motion for class certification has been filed").

In any event, as Plaintiffs have already previewed for the Court, the enforceability of those agreements can be efficiently resolved by this Court for all class members through standard motion practice. *See* Doc. No. 140 at 11. Plaintiffs will argue that: (1) Aya's form arbitration agreements are unconscionable for all travel nurse employees who signed them; and (2) the Court, not the arbitrator, has the authority to decide the enforceability of the agreements for everyone because the delegation clause is independently unconscionable. *See, e.g., Heckman v. Live Nation Entm't Inc., et al.*, 2024 WL 4586971, -- F.4th --, at *11 (9th Cir. Oct. 28, 2024) ("The provisions of the arbitration agreement and New Era's Rules that make the delegation clause unconscionable also serve to make the entire agreement unconscionable, both procedurally and substantively."). This process has already been incorporated into the Court's scheduling order, with Aya's Motion to Compel Arbitration of the opt-in plaintiffs to be filed November 15. In other words, by the time the parties reach the class certification stage of this case, the issue of whether the arbitration agreement is enforceable will already be significantly developed.

Thus, to strike Plaintiffs' class and collective claims due to the purported arbitration agreements would require improper reliance on material outside the pleadings, would afford Aya the benefit of a presumption to which it is not entitled based on the litigation history, and circumvent a structured process for evaluating the enforceability of Aya's form arbitration agreement (and its embedded delegation clause) already established in this Court's scheduling order. Aya's motion to preemptively strike Plaintiffs' class and collective allegations due to the purported presence of arbitration agreements should be denied.

### 2.      Aya's Motion to Strike Class Allegations Based on Rule 23 Requirements is Premature and Inadequate.

Aya also moves to strike the class claims pursuant to Rule 12(f) for a different reason: that Plaintiffs "cannot satisfy the requirements of Rule 23." Mot. at 22. Once again, however, both the procedural mechanism and the timing are inapt. As this

Court has explained, "[a]lthough it is not *per se* improper for a defendant to move to strike class allegations before the motion for class certification, most courts decline to grant such motions because the shape and form of a class action evolves only through the process of discovery." *Jessop v. Giggle, Inc.*, 2015 WL 11622421, at *1–2 (S.D. Cal. Feb. 2, 2015) (Bencivengo, J.); *Carranza v. Terminix Int'l Co. Ltd. P'ship*, 529 F. Supp. 3d 1139, 1143 (S.D. Cal. 2021) ("Motions to strike class allegations are generally disfavored because 'a motion for class certification is a more appropriate vehicle'" for testing those claims) (citation omitted); *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 614–15 (N.D. Cal. 2007) ("Generally, courts review class allegations through a motion for class certification.").

Further, as one court has explained, "the limited categories of information that may be struck pursuant to Rule 12(f)"—which includes redundant, immaterial, impertinent, or scandalous matter—"do not map neatly onto a class allegation." *Abboud v. Circle K Stores Inc.*, 2024 WL 1765659, at *9 (D. Ariz. Apr. 24, 2024); *see also Delux Cab, LLC v. Uber Techs., Inc*., 2017 WL 1354791, at *8 (S.D. Cal. Apr. 13, 2017) (Bencivengo, J.) ("Rule 12(f) is not the proper procedural vehicle for challenging class claims."). Here, too, Plaintiffs' class allegations are well-pled, discovery has just begun, and Aya's arguments are best addressed through the class certification process, scheduled to begin next year.

Nonetheless, Plaintiffs will address each of Aya's premature concerns regarding the Rule 23 requirements in turn. Before doing so, however, Plaintiffs note the underlying dissonance in Aya's argument: while Aya contends that Plaintiffs' class claims are "unmanageable" and "impractical—if not impossible" to try on a class-wide basis (Mot. at 12, 26), the alternative Aya proposes would require hundreds of thousands of individual arbitrations solely to determine the enforceability of the arbitration agreement, potentially followed by hundreds of thousands of additional arbitrations to resolve the merits. Any purported challenges

in managing this case as a class action pale in comparison to the logistical and practical burdens imposed by Aya's proposed alternative.[3]

> ### a. Plaintiffs have properly alleged typicality and adequacy.

Aya first argues that Plaintiffs O'Dell and Zimmerman cannot satisfy Rule 23(a)'s typicality and adequacy requirements because they have already defeated their arbitration agreements, while the other putative class members have not yet done so. Mot. at 23-24. The cases Aya cites, however, stand for the proposition that a plaintiff who did not sign a class waiver or arbitration agreement is not an adequate representative of class members who did sign one. For example, in *Avilez v. Pinkerton Gov't Servs., Inc*., 596 Fed. App'x. 579 (9th Cir. 2015), the Court found that the district court abused its discretion by certifying classes that included employees who signed class action waivers, where the named plaintiff had not signed one. *Id*. at 579. The Court noted that "Avilez's arbitration agreement does not contain a class action waiver and counsel did not dispute that those who signed such waivers would have potential defenses that Avilez would be unable to argue on their behalf." *Id*.; *see also Tan v. Grubhub Inc.*, 2016 WL 4721439, at *3 (N.D. Cal. July 19, 2016) (plaintiff who opted out of class waiver not adequate representative of those who had not opted out); *Tschudy v. J.C. Penney Corp., Inc*., 2015 WL 8484530, at *3 (S.D. Cal. Dec. 9, 2015) (named plaintiffs who did not enter arbitration agreements were not typical or adequate representatives of other class members who did); *Quinlan v. Macy's Corp. Servs., Inc.,* 2013 WL 11091572, at *3

---

[3] *See, e.g., Abernathy v. DoorDash, Inc.,* 438 F. Supp. 3d 1062, 1067-68 (N.D. Cal 2020) ("The employer here, DoorDash, faced with having to actually honor its side of the bargain, now blanches at the cost of the filing fees it agreed to pay in the arbitration clause. No doubt, DoorDash never expected that so many would actually seek arbitration. Indeed, in irony upon irony, DoorDash now wishes to resort to a class-wide lawsuit, the very device it denied to the workers, to avoid its duty to arbitrate. This hypocrisy will not be blessed, at least by this order.").

(C.D. Cal. Aug. 22, 2013) ("As a union employee, Quinlan himself was not subject to arbitration procedures. Approximately 94.5% of the 84,000 employees Quinlan seeks to represent, however, agreed to arbitrate 'all employment-related legal disputes.'").

That is not the circumstance here. Just like "over 99.9%" of the "proposed class members" (according to Aya), Mot. at 23, Plaintiffs O'Dell and Zimmerman did sign arbitration agreements. And they defeated those agreements. It is difficult to imagine who would be better suited to lead the charge of challenging an arbitration agreement than two named plaintiffs who have already successfully done so.[4] And in any event, "a named plaintiff is not rendered inadequate merely because he or she is not subject to every affirmative defense that a defendant may assert against particular class members," including arbitration. *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 285 (N.D. Cal. 2016). Aya's typicality and adequacy arguments are misplaced.

### b. Plaintiffs have adequately alleged commonality and predominance.

Aya next argues that Plaintiffs could not satisfy Rule 23's predominance or commonality requirements on various grounds. Mot. at 24-30. Aya's first argument is based on purported variances in Plaintiffs' state law claims, claiming that it would be "impractical—if not impossible—to try these class claims under that many distinct bodies of law." *Id.* at 25-26. In other words, Aya's primary concern is one of manageability. *See id.* at 12 (asserting that class case would be "unmanageable").

---

[4] To the extent that Aya's argument is that because Plaintiffs have already defeated arbitration, they do not have an incentive to challenge it on behalf of others, that relies on an untenable Catch-22. Plaintiffs Zimmerman and O'Dell would have had to defeat arbitration to lift the stay of their claims and proceed in court, but by doing so—according to Aya—they would simultaneously give up their ability to represent a class. That makes little sense and would effectively afford Aya the benefit of a class action waiver in agreements that were found to be unenforceable.

The Ninth Circuit has explained, however, that "there is a well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017) (citation omitted). This "makes ample sense given the variety of procedural tools courts can use to manage the administrative burdens of class litigation. For example, Rule 23(c) enables district courts to divide classes into subclasses or certify a class as to only particular issues." *Id.* (citing FRCP 23(c)(4), (5); *see also In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001) (listing "management tools available" to a district court, including creating subclasses, or altering or amending the class); *Yaffe v. Powers*, 454 F.2d 1362, 1365 (1st Cir. 1972) ("[F]or a court to refuse to certify a class . . . because of vaguely-perceived management problems . . . discount[s] too much the power of the court to deal with a class suit flexibly, in response to difficulties as they arise."). For this reason, courts decline to deny class certification based on purported management difficulties, let alone strike class claims at the pleading stage.

Even the cases on which Aya relies demonstrate that striking Plaintiffs' class claims would be premature. For example, Aya relies on *Mazza v. Am. Honda Motor Co. Inc.*, 666 F.3d 581 (9th Cir. 2012), a putative class action that the Ninth Circuit decertified based on a finding that "variances in state law overwhelm common issues and preclude predominance." *Id.* at 596. As a preliminary matter, that consumer case was decided at the certification stage—not the pleading stage. *Id.* at 597. Further, in remanding to the district court, the Ninth Circuit stated:

> We express no view whether on remand it would be correct to certify a smaller class containing only those who purchased or leased [cars] in California, or to certify a class with members more broadly but with subclasses for class members in different states, with different jury instruction for materially different bodies of state law.

*Id.* at 594.

Thus, while the Court found that the class as certified did not satisfy Rule 23's requirements, it acknowledged that the district court had various tools at its disposal to manage the identified variances in state law. All those mechanisms remain available here, at the pleading stage of Plaintiff Zimmerman and O'Dell's claims. Discovery has just commenced, the Court's scheduling order accounts for the possibility of an amendment to the pleadings, and class certification will be briefed in early 2025. If, eventually, it becomes clear that there are material differences in state law—which, as explained below, Aya's motion does not demonstrate—subclasses, or smaller classes, can be created to manage those differences. It is thus unsurprising that Aya relies primarily on cases decided at the class certification stage of litigation after a discovery record was created.[5]

Further, unlike in *Mazza*—and the other primarily consumer class cases that Aya cites—Aya has not identified the supposed variances in underlying state law that would render Plaintiffs claims "impossible to try." For example, Aya argues that Counts 1-6 of Plaintiffs' complaint—which are the common law claims—"*could require (based on California's choice of law rules) the application of the laws of every state.*" Mot. at 26 (emphasis added). But Aya does not even attempt to conduct the fact-intensive choice-of-law analysis necessary to demonstrate "that foreign law, rather than California law, should apply to class claims." *Mazza*, 666 F.3d at 590 (citation omitted); *see also Clancy v. Bromley Tea Co*., 308 F.R.D. 564, 572-73 (N.D. Cal. 2013) ("Such a detailed choice-of-law analysis is not appropriate at this stage of the litigation. Rather, such a fact-heavy inquiry should occur during the class certification stage, after discovery."). This type of speculative, unsupported assertion

---

[5] Aya cites only one case in which a court struck class claims at the pleading stage due to differences in state law: *Phan v. Sargento Foods, Inc*., 2021 WL 2224260, at *8, *10 (N.D. Cal. June 2, 2021). Mot. at 26. This case was decided in the consumer class action context, in which differences among state consumer laws are well-established. And in striking the nationwide claims, the court permitted amendment to assert narrower classes, *id*. at *14, a process that is already accounted for in this case by the Court's scheduling order.

is insufficient to support the extreme and disfavored remedy of striking plaintiffs' class allegations. *See, e.g.*, *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1244–45 (C.D. Cal. 2011) (to grant a motion to strike, "the court must be satisfied that there are no questions of fact, that the claim or defense is insufficient as a matter of law, and that under no circumstance could it succeed.") (cleaned up).

Nor has Aya made any effort to support its claim that the wage laws of various states materially differ. Indeed, where it is plain that there are material differences in state law, Plaintiffs have already proposed relevant subclasses, with Plaintiff O'Dell asserting claims on behalf of classes of employees who worked only in California. *See* FAC ¶ 98 (alleging California Labor Code Class, California § 970 Class, and California UCL Class). Instead, Aya relies on cases involving *consumer* class actions, in which courts have already found there to be significant variations among state consumer protection laws. *See, e.g.*, *Gustafson v. BAC Home Loans Servicing, LP*, 294 F.R.D. 529, 538-39 (C.D. Cal. 2013); *Davison v. Kia Motors, Inc.*, 2015 WL 3970502, at *2 (C.D. Cal. June 29, 2015) ("Courts in this circuit, in assessing the propriety of nationwide class actions, have held that California's consumer protection statutes are materially different from those in other states.").

Finally, to preemptively strike Plaintiffs' claims at the pleading stage would impede the natural development of this case, already accounted for by the Court's scheduling order. Discovery has just begun, new class representatives may be brought in, the pleadings may be amended, and further subclasses may be proposed at the class certification stage. At this point, all Aya has done is point to a collection of primarily consumer class cases for the proposition that differences in state law prevent certification of a nationwide consumer class action. It has made no effort to identify how purported differences in state law, on the facts and circumstances raised in this action, would defeat predominance. This is plainly insufficient to support a motion to strike plaintiffs' class allegations. *Keifer v. HOSOPO Corp.*, 2018 WL 5295011, at *6 (S.D. Cal. Oct. 25, 2018) (Bencivengo, J.) ("As this stage of the

proceedings, the Court cannot say that the class claims are unsuitable for class treatment. Accordingly, the Defendant's motion to strike the class allegations in the FAC is DENIED.") (caps in original).

### c.    Aya's claimed individualized inquires do not defeat predominance.

Next, Aya vaguely asserts that there will have to be "individualized inquiries" down the road, pointing out that employees worked at different facilities, for different hours, and at different rates. Mot. at 27-29. But Aya does not connect any of those underlying facts to any element of Plaintiffs' bait-and-switch or regular rate claims, let alone explain why assessing those facts would overwhelm the questions common to these claims. *See Erica P. John Fund, Inc*., *v. Halliburton, Co*., 563 U.S. 804, 809 (2011) ("Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action.") (citation omitted); *Stearns v. Select Comfort Retail Corp*., 763 F. Supp. 2d 1128, 1153 (N.D. Cal. 2010) (striking class claims at pleading stage because "[t]he express warranty claims involve elements that are individual to each purported class member, such as the provision of notice, an opportunity to cure, and reliance.").

By contrast, Plaintiffs' complaint identifies multiple common questions of fact and law relevant to their claims arising out of Aya's alleged bait-and-switch and regular rate practices. FAC ¶ 102; *see also California Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002) (court must "view[] the pleadings in the light most favorable to the non-moving party."). Notably, Plaintiffs have also alleged that Aya used uniform contract language across states and facilities and have raised claims arising out of its use of that language. FAC ¶ 20 ("Aya utilizes form employment agreements for its traveling employees."); *see In re Wells Fargo Home Mortg. Overtime Pay Litig*., 571 F.3d 953, 958 (9th Cir. 2008) ("Of course, uniform corporate policies will often bear heavily on questions of predominance and superiority.").

Aya does not acknowledge any of Plaintiffs' alleged commonalities; indeed, it has refused to answer the Amended Complaint as to any class-wide allegations. *See e.g.*, Doc. No. 135, ¶ 139 ("To the extent that paragraph 139 of the Complaint incorporates claims asserted by . . . any putative class members by reference, Aya makes no answer to said allegations."). Aya's conclusory assertions regarding purported "individualized inquires" thus do not address the "main concern" of the predominance inquiry, which is the "*balance* between individual and common issues." *In re Wells Fargo*, 571 F.3d at 958 (emphasis added).

This is unsurprising, as this analysis requires development of the record, both through discovery and through focused briefing that addresses the elements of the claims alleged, at the class certification stage. *Jessop v. Giggle, Inc.*, 2015 WL 11622421, at *1 (S.D. Cal. Feb. 2, 2015) (Bencivengo, J.) ("[T]he shape and form of a class action evolves only through the process of discovery.").[6] Aya's request to strike Plaintiffs' claims on predominance grounds is premature and should be denied. *See Rosales v. FitFlop USA,* 882 F. Supp. 2d 1168, 1179 (S.D. Cal. 2012) (declining to strike class allegations based on claim that individualized inquiries would be required); *Rennick v. NPAS Sols.,* 2020 WL 244170, at *3 (C.D. Cal. Jan. 16, 2020) (denying motion to strike class allegations—including based on argument that individualized inquiries would predominate—as it was "premature at this early stage, and is more properly decided on a motion for class certification after the parties have had an opportunity to conduct discovery, develop a record, and brief the issues.").

---

[6] Thus, the majority of the cases Aya cites on this issue were decided at the class certification, not the pleading stage. Mot. at 27-28; *see Ayala v. U.S. Xpress Enters, Inc*., 2016 WL 7586910, at *8 (C.D. Cal. Dec. 22, 2016) (tentative decision on class certification (adopted in 2016 WL 7638165); *Ortiz v. CVS Caremark Corp*., 2013 WL 6236743, at *11 (N.D. Cal. Dec. 2, 2013) (finding at the class certification stage that common issues did not predominate); *Bryant v. Serv. Corp. Intern*., 2011 WL 855815, at *10 (N.D. Cal. Mar. 9, 201) (denying class certification due to individualized inquiries); *Vinole v. Countrywide Home Loans, Inc*., 571 F.3d 935, 944 (9th Cir. Cal. 2009) (denying class certification).

### d.    Arbitration agreements do not defeat any Rule 23 requirement.

Finally, Aya predictably argues that its purportedly enforceable arbitration agreement defeats multiple elements of Rule 23's requirements, including commonality, predominance and superiority. Mot. at 29-31. This argument fails, for all the reasons explained above. *See supra* III(B)(1). Further, Aya claims that a "significant portion" of the litigation "would be devoted to discovering which class members signed such agreements and enforcing those agreements." Mot. at 31. By the terms of its own declaration, however, Aya already did that assessment in support of this motion, alleging that "99.9%" of class and collective members would have signed arbitration agreements with class waivers. M. Moore Dec. ¶ 11.

And finally, while Aya claims that the presence of arbitration agreements defeats superiority of the class action vehicle, that argument ignores Plaintiffs' contention that the Court can assess the enforceability of Aya's form arbitration agreement for all employees through standard motion practice. In any event, Aya's proposed process would necessitate hundreds of thousands of individual arbitrations solely to address the issue of enforceability—an incredibly burdensome and illogical approach that reveals Aya's true intent: to use arbitration not as a fair alternative to litigation but as a mechanism to suppress employee claims.

In sum, the highly disfavored remedy of striking class claims from the pleadings is unwarranted and "amounts to a premature effort to defeat class certification." *Blair v. CBE Group Inc.*, 2013 WL 2029155, at *5 (S.D. Cal. 2013); *see Fernandez v. CoreLogic Credco,* 593 F. Supp. 3d 974, 994–95 (S.D. Cal. 2022) ("Dismissal of a class at the pleading stage is rare because 'the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.") (citation omitted).

### 3.    Aya's Motion to Strike Plaintiffs' Collective Allegations Should Be Denied

Aya's motion to strike Plaintiffs' collective allegations fares no better. First, Aya again claims that the named plaintiffs cannot be similarly situated to those who have not yet challenged their arbitration agreements. Mot. at 32. And once again, each of the cases it cites involves circumstances in which the named plaintiffs did not sign arbitration agreements, but the proposed collective members did, or vice versa. *See id.* Unlike in those cases, Aya asserts that Plaintiffs Zimmerman and O'Dell are in precisely the same position as the putative collective members: they all signed arbitration agreements. *See id.* at 32 ("[I]t is estimated that **over 99.9% of the proposed collective has waived their right to participate in this litigation.**") (all emphases in original). That they already defeated arbitration does not preclude them from asserting that defense on behalf of others; to the contrary, it demonstrates why they are in the best position to do so.

Next, Aya contends that collective claims should be stricken because the plaintiffs do not have the "ability to satisfy Rule 23's requirements." Mot. at 33. Aya's sole authority for this position is *Deane v. Fastenal Co.*, 2013 WL 675462, at *3 (N.D. Cal. 2013), a 2013 case whose approach the Ninth Circuit later rejected as part of a "minority approach" among district courts that treated an FLSA collective action as "an opt-in analogue to a Rule 23(b)(3) class." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1111 (9th Cir. 2018). In doing so, the court noted that the language of section 216(b) of the FLSA "reflects an affirmative congressional choice 'not to have the Rule 23 standards apply to [collective] actions.'" *Id.* at 1113 (cleaned up). The Court concluded: "[M]imicking the Rule 23 standards in evaluating section 216(b) collective actions is not appropriate." *Id.*

Instead, *Campbell* is clear that the sole requirement for certifying a collective action is that the proposed collective be "similarly situated," which means that the party plaintiffs "must be alike with regard to some *material* aspect of their

litigation." *Id*. at 1114 (emphasis in original). Aya does not claim that its policy for treatment of stipends varied depending on the pay rate, or from facility-to-facility, recruiter-to recruiter, or state-to-state. Mot. at 33. Indeed—Plaintiffs have alleged (and the record demonstrates) the opposite: that Aya had a uniform policy of treating stipends as a form of compensation and improperly excluding them from employees' regular rate of pay for purposes of calculating overtime. FAC ¶¶ 78-97; *see also* Doc. No. 121, at 18-23. In any event, "[i]f the party plaintiffs' factual or legal similarities *are* material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment." *Campbell*, 903 F.3d at 1115 (emphasis in original). Plaintiffs have adequately alleged (and, through their motion for collective certification, evidenced), the sole requirement for collective treatment: that they were victims of Aya's uniform policy.

Aya next argues that handling Plaintiffs' FLSA claim collectively would be "wholly unmanageable" and akin to "a monster that no one can deal with," yet does not identify any factors that would make it so. Mot. at 33. In reality, the FLSA claim presents a straightforward certification issue, evidenced by the fact that multiple district courts have conditionally certified similarly-defined collectives. *See, e.g.*, *Hamilton v. NuWest Group Holdings*, 2023 WL 3582939 (W.D. Wash. May 22, 2023) (conditionally certifying a nationwide collective of travel employees asserting same FLSA claims); *Carlino v. CHG Med. Staffing, Inc.*, 2019 WL 1005070, at *1 (E.D. Cal. Feb. 28, 2019) (granting class and conditional collective certification of travel nurse stipend regular rate claims in part because "[i]f a traveler fails to satisfy her weekly hours requirement, the per diem is reduced in proportion to the shortfall."); *Dalchau v. Fastaff, LLC*, 2018 WL 452112, at *4 (N.D. Cal. Jan. 17, 2018) (conditionally certifying a collective of travel healthcare professionals where plaintiffs had alleged and submitted evidence that "they were all subject to Fastaff's policy of excluding the value of housing benefits from the overtime pay rate"); *Howell v. Advantage RN, LLC*, 2018 WL 3437123, at *10 (S.D. Cal. July 17, 2018)

(granting class and conditional collective certification of nationwide travel nurse regular rate claims where nurses alleged staffing company subjected them to "common unlawful policies excluding the value of the per diem stipend and bonuses.").

In sum, it is apparent that Aya's true complaint is that too many individuals would be members of the proposed collective, and that it prefers not to have to face the force of their collective claim. But the size of the collective is not a basis for denying Plaintiffs their right to proceed collectively. To the contrary, it counsels in favor of them: the purpose of the FLSA collective mechanism is to allow "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources." *Campbell*, 903 F.3d at 1114 (cleaned up). Accordingly, Plaintiffs' proposed collective should not be stricken; rather, it should be conditionally certified, and notice should promptly issue to ensure that all eligible individuals are informed of their right to participate in this action.[7]

## IV.    CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that Aya's motion be denied in full.

Dated: November 8, 2024                Respectfully submitted,

                                       */s/ J. Austin Moore*
                                       George A. Hanson (*pro hac vice*)
                                       J. Austin Moore (*pro hac vice*)
                                       Alexander T. Ricke (*pro hac vice*)
                                       Yasmin Zainulbhai (*pro hac vice*)
                                       **STUEVE SIEGEL HANSON LLP**
                                       460 Nichols Road, Suite 200
                                       Kansas City, Missouri 64112
                                       Telephone: 816-714-7100
                                       hanson@stuevesiegel.com

---

[7] If, however, the Court were included to strike any of Plaintiffs' claims, it should do so without prejudice. *See Tietsworth v. Sears*, 720 F.Supp.2d 1123, 1146 (N.D. Cal. 2010).

25

moore@stuevesiegel.com
ricke@stuevesiegel.com
zainulbhai@stuevesiegel.com

Jason S. Hartley
Jason M. Lindner
**HARTLEY LLP**
101 West Broadway, Suite 820
San Diego, California 92101
Tel: 619-400-5822
hartley@hartleyllp.com
lindner@hartleyllp.com

*Attorneys for Plaintiffs and the Putative
Classes and Collective*