UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

LAURA O'DELL, HANNAH BAILEY, HOLLY ZIMMERMAN, and LAUREN MILLER, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

AYA HEALTHCARE, INC.,

Defendant.

Case No.:  3:22-cv-1151-CAB-MMP

**ORDER: (1) PRECLUDING DEFENDANT FROM ENFORCING ARBITRATIONS AGREEMENTS AGAINST OPT-IN PLAINTIFFS; (2) DENYING MOTION TO COMPEL INDIVIDUAL ARBITRATIONS OF OPT-IN PLAINTIFFS' CLAIMS ON THE GROUNDS OF COLLATERAL ESTOPPEL/NONMUTUAL ISSUE PRECLUSION [Doc. No. 143]; and (3) SETTING STATUS HEARING ON OTHER PENDING MOTIONS**

Currently pending before the Court are the following motions:

(1) Plaintiffs' Motion for Conditional Certification of FLSA Collective Action [Doc. No. 121];

(2) Defendant's Motion to Dismiss and Strike Class and Collective Allegations [Doc. No. 134]; and

(3) Defendant's Motion to Compel Individual Arbitrations of Opt-In Plaintiffs' Claims [Doc. No. 143].

1

Upon review of the pending motions, on January 3, 2025, the Court *sua sponte* raised the question of whether collateral estoppel bars Defendant from enforcing the arbitration agreements against the Opt-in Plaintiffs, and requested further briefing on that issue. [Doc. No. 154.][1]  On January 17, 2025, the parties provided supplemental briefs on the collateral estoppel issue.  [Doc. Nos. 156 and 157.]  On January 24, 2025, the parties filed replies to the supplemental briefs.  [Doc. Nos. 159 and 160.]  After reviewing the supplemental briefs and replies, and for the reasons set forth below, the Court: (1) **PRECLUDES** Defendant from enforcing the arbitration agreements against the Opt-in Plaintiffs in this case, (2) **DENIES** the motion to compel individual arbitrations of Opt-In Plaintiffs' claims on the grounds of collateral estoppel/nonmutual issue preclusion; (3) and **SETS A STATUS HEARING** on the other pending motions.

## I.    RELEVANT PROCEDURAL HISTORY

In April 2023, the Court compelled the four named Plaintiffs to arbitrate their enforceability challenge.  [Doc. No. 64 at 12.]  The Named Plaintiffs challenged Defendant's arbitration agreement on the grounds that it was procedurally and substantively unconscionable under California law. [Doc. No. 76-2, at 2, ¶ 6; Doc. No. 78-2, at 2, ¶ 5; Doc. No. 82-2, at 2-3, ¶ 5; Doc. No. 113-1, at 2-3, ¶ 5.]  The arbitration challenges were considered by four different arbitrators.  [Doc. No. 76-2, at 2-3, ¶¶ 7-8; Doc. No. 78-2, at 2-3, ¶¶ 6-7; Doc. No. 82-2, at 3, ¶ 7; Doc. No. 113-1, at 3, ¶ 7.]  Two arbitrators, those in the *O'Dell* and *Zimmerman* arbitrations, requested supplemental briefing on the effect of the "savings" clauses. [Doc. Nos. 76-2, at 3, ¶ 8; 85-5, at 2-10;

---

[1]*See Arizona v. California*, 530 U.S. 392, 413 (2000) ("If a court is on notice that it has previously decided the issue presented, the court may dismiss the action *sua sponte*, even though the defense has not been raised. This result is fully consistent with the policies underlying res judicata: it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit; but is also based on the avoidance of unnecessary judicial waste."). *See also Doe v. Pfrommer*, 148F.3d 73, 80 (2nd Cir. 1998)(court may *sua sponte* raise collateral estoppel based on "strong public policy" to economize use of judicial resources).

79-6, at 4-7; 78-2, at 3, ¶ 7; 80-8, at 3-8; 86-1, at ¶¶ 7-10; 86-6, at 6-13; 86-7, at 2-5; 86-8, at 5-8.] Those two arbitrators ultimately concluded that Defendant's arbitration agreement was procedurally and substantively unconscionable, the unconscionable provisions were not "saved" by any qualifying language, and the agreements were unenforceable in full. [Doc. No. 76-7, at 1-29; Doc. No. 78-3, at 40-54.] Two other arbitrators, those in the *Bailey* and *Miller* arbitrations, did not request or consider supplemental briefing on the issue of the "savings" clause. The arbitrators in *Miller* and *Bailey* found that the agreement included three procedurally unconscionable provisions, but that the agreements were enforceable. [Doc. No. 81-6, at 2-28. *See* Doc. No. 82-6, at 8-9.]

On August 26, 2024, the Court granted motions to confirm the *O'Dell, Zimmerman,* and *Bailey* arbitration awards. [Doc. Nos. 115, 116.] On October 15, 2024, the Court denied the motion to confirm the *Miller* arbitration award pursuant to California Code of Civil Procedure Section 1281.98(a) on the grounds that Defendant materially breached the arbitration agreement. [Doc. No. 136 at 7.]

## II.    DISCUSSION

In the pending motion to compel individual arbitrations of Opt-In Plaintiffs' claims, Defendant essentially asks the Court to delay this action indefinitely while more than two hundred Opt-In Plaintiffs are forced to individually arbitrate the issue of whether Defendant's arbitration agreement is enforceable, when the same issue was decided against Defendant by two arbitrators in this action, and those arbitration awards have been confirmed by this Court.[2]

Defendant's arbitration agreement provides that the arbitration will be governed by both the CAA *and* the FAA. *See* Doc. No. 143-4, at 2. The FAA specifies that a confirmed arbitration judgment "shall have the same force and effect, in all respects, as . . . a judgment

---

[2] Defendant agrees that the arbitration agreements signed by the Opt-In Plaintiffs are identical or nearly identical to the one already found to be unenforceable. [Doc. No. 143-1 at 9.]

in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered."  9 U.S.C. § 13; *see also NTCH-WA, Inc. v. ZTE Corp.*, 921 F.3d 1175, 1180 (9th Cir. 2019) ("A federal-court order confirming an arbitration award has 'the same force and effect' as a final judgment on the merits, 9 U.S.C. § 13, including the same preclusive effect.").  This Court specifically confirmed the *Zimmerman* and *O'Dell* arbitration awards under the FAA. [Doc. No. 116 at 2.]

Moreover, because this case was filed in federal court and raises federal questions [Doc. No. 15, at 4, ¶¶ 11, 13], if the *Odell* and *Zimmerman* arbitration awards meet the requirements for collateral estoppel, they can be afforded preclusive effect. *See Hansen v. Musk*, 122 F.4th 1162, 1168–69 n.2 (9th Cir. 2024) ("Because this case concerns the preclusive effect of an arbitral award confirmed by a federal court exercising federal question jurisdiction and because it concerns federal statutory claims, we apply federal law to determine the preclusive effect of the award.").[3]  Thus, assuming the *Odell* and *Zimmerman* arbitration awards meet the requirements of nonmutual offensive issue preclusion (see below), they can be given preclusive effect in this case.

Nonmutual offensive issue preclusion "prevents 'a defendant from relitigating the issues which a defendant previously litigated and lost against another plaintiff.'" *Syverson v. Int'l Bus. Machines Corp.*, 472 F.3d 1072, 1078 (9th Cir. 2007) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979)).  Its application is appropriate only if: (1) there was a full and fair opportunity to litigate the identical issue in the prior action; (2) the issue was actually litigated in the prior action; (3) the issue was decided in a final judgment; and (4) the party against whom issue preclusion is asserted was a party or in privity with a

---

[3] Defendant argues the Court only had diversity jurisdiction at the time of the confirmation of the arbitration awards.  [Doc. No. 157 at 11.]  However Plaintiffs assert claims under the FLSA, which gives the Court federal question jurisdiction.  Nevertheless, even under diversity jurisdiction, federal law applies.  "Under California law, the preclusive effect of a prior federal court judgment is resolved according to federal law." *Greenwich Ins. Co. v. Media Breakaway, LLC*, 2009 WL 2231678, at *5 (C.D. Cal. July 22, 2009), *aff'd*, 417 F. App'x 642 (9th Cir. 2011). And "an arbitration award confirmed by a federal district court qualifies as a federal judgment." *Id.* (citation omitted).

party to the prior action. *Syverson*, 472 F.3d at 1078. A district court then has "'broad discretion'" to "take potential shortcomings or indices of unfairness into account" even when the standard requirements are met. *Id*. (quoting *Parklane Hosiery*, 439 U.S. at 331).

Here, all four factors necessary for the application of issue preclusion are met. First, Defendant was afforded "a full and fair opportunity to litigate the identical issue." *Syverson*, 472 F.3d at 1078. The procedures in the *O'Dell* and *Zimmerman* arbitrations were substantially similar to those available to the parties in this litigation. As Defendant did in its current motion to compel individual arbitrations of the Opt-in Plaintiffs' claims [Doc. No. 143-1 at 8-14], in the arbitration proceedings Defendant (as well as O'Dell and Zimmerman) fully briefed the issue of unconscionability (including supplemental briefing addressing Defendant's "savings clause" defense). It was only after considering argument and briefing on all the issues that the arbitrators rendered their decisions. [Doc. No. 76-7 at 2-29; Doc. No. 78-3 at 40-54.] Thus, there is no reason to doubt "the quality, extensiveness, or fairness of procedures followed" in these arbitrations. *Montana v. United States*, 440 U.S. 147, 164 n.11 (1979). Moreover, Defendant also had the same "incentives to litigate in the two actions." *Maciel v. C.I.R.*, 489 F.3d 1018, 1023 (9th Cir. 2007). At the time of the arbitrations, Plaintiffs had fully laid out their claims in the federal complaint, including that the claims were being asserted on a class and collective basis. [Doc. No. 15 at ¶¶ 98-108.] It was foreseeable that if Defendant lost in any of the arbitrations, the federal case would continue. Thus, Defendant had "every incentive to litigate" the *O'Dell* and *Zimmerman* arbitrations "fully and vigorously." *Parklane Hosiery*, 439 U.S. at 332.

Second, the issue of whether Defendant's form arbitration agreement is unconscionable under California law was "actually litigated" in both the *O'Dell* and *Zimmerman* arbitrations. *Syverson*, 472 F.3d at 1078. The issue was explicitly raised in each of Plaintiff O'Dell and Zimmerman's demands, thoroughly briefed by the parties, and decided by the arbitrators in thorough, reasoned rulings. Third, the judgments rendered in the *O'Dell* and *Zimmerman* arbitrations were "final" under the AAA employment rules and confirmed by this Court. *Id*. Finally, Defendant is a party in both the arbitrations and this

federal litigation, and therefore, "the party against whom issue preclusion is asserted" is the same. *Id.* Accordingly, the four requirements for the application of collateral estoppel are satisfied.

Nevertheless, in exercising its "broad discretion," this Court must consider whether precluding Defendant from relitigating the issue would nonetheless be unfair. *Id.* at 1078–79 (citing *Parklane Hosiery,* 439 U.S. at 331). Of particular concern is the fact that there are prior inconsistent judgments, in that the *Bailey* and *Miller* arbitration decisions were in Defendant's favor. *Syverson,* 472 F.3d at 1079 (citing *Parklane Hosiery,* 439 U.S. at 330–31). However, the concern about the unfairness of applying collateral estoppel when there are inconsistent judgments arises only where "the outcomes [of the judgments] may have been based on *equally reasonable resolutions* of doubt as to the probative strength of the evidence or the appropriate application of a legal rule to the evidence." *Syverson*, 472 F.3d at 1079–80 (alteration and emphasis in original) (citing Restatement (Second) of Judgments § 29 cmt. F).

Here, two arbitrators found Defendant's arbitration agreement unenforceable in its entirety, while two did not.[4] Nevertheless, all four arbitrators found that Defendant's arbitration agreement contained three unconscionable provisions. [*See* Doc. No. 82-6, at 26 (*Bailey*); Doc. No. 81-6, at 27 (*Miller*).] The pivotal factor, therefore, was whether the arbitrators found that Defendant's qualifying language "saved" those provisions from substantive unconscionability. This critical issue was fully briefed *only* in the *Zimmerman* and *O'Dell* arbitrations, which resulted in thorough and well-reasoned decisions concluding that the "savings" clauses failed to cure the substantive unconscionability of the provisions. [Doc. No. 76-7 at 22-25; Doc. No. 78-3 at 50, 53, 54.] Thus, the four arbitrations did not all reflect "equally reasonable resolutions of doubt" as to the effect of the savings clause because only two of the arbitrations briefed and resolved that issue.

---

[4] The *Miller* decision was not confirmed by the Court due to Defendant's material breach of its own agreement and, therefore, will not be considered a final judgment for purposes of collateral estoppel.

The doctrine of collateral estoppel serves to promote "efficiency in the judicial system." *Gilbert v. Ben-Asher*, 900 F.2d 1407, 1410 (9th Cir. 1990).  For this reason, even state court judgments are given preclusive effect in federal courts.  *See, e.g., Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380–81 (1985).  The underlying principles of arbitration law are in harmony.  This circuit has recognized the "strong federal policy encouraging arbitration as a prompt, economical and adequate method of dispute resolution for those who agree to it.'" *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1404 n.2 (9th Cir. 1992) (internal quotation marks omitted).  Against this backdrop, it is not unfair to hold Defendant to the results of the *O'Dell* and *Zimmerman* arbitrations.  The arbitrators in those proceedings were the only ones that accepted briefing on the pivotal "savings" clause issue and thereby rendered more reasoned and thorough decisions.

### III.    CONCLUSION

For the reasons set forth above, the Court finds that all four factors necessary for the application of nonmutual issue preclusion are met and that it would not be unfair to hold Defendant to the results of the *O'Dell* and *Zimmerman* arbitrations.  What would be extremely unfair is to compel more than two hundred Opt-in Plaintiffs to undergo more than two hundred individual arbitrations to determine the enforceability of Defendant's arbitration agreement, thus delaying this action indefinitely, when that issue has been fully, fairly and reasonably determined against Defendant.  The Court cannot imagine another scenario more worthy of the application of collateral estoppel to further the interests of judicial economy.

Accordingly, Defendant is **HEREBY PRECLUDED** from enforcing the arbitration agreements against the Opt-In Plaintiffs in this action, and the motion to compel individual arbitrations of Opt-In Plaintiffs' claims [Doc. No. 143] is **DENIED** on the grounds of collateral estoppel/nonmutual issue preclusion.[5]

---

[5] The Court declines to reach the other issues raised by Plaintiff in opposition to the motion.

1    The Court recognizes this ruling may affect the arguments set forth in the other

2    pending motions [Doc. Nos. 121 and 134]. Accordingly, the Court **HEREBY SETS** a

3    Status Hearing for **March 11, 2025** at **10:00 a.m.**, in Courtroom 15A, to discuss

4    procedural options for going forward with the other pending motions.

5        **IT IS SO ORDERED.**

6    Dated: February 25, 2025

7                                            _____

8                                            Hon. Cathy Ann Bencivengo
                                             United States District Judge